# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KARLOS HARRIS,

              Plaintiff,

v.

CARVANA, LLC; BRIDGECREST
ACCEPTANCE CORPORATION;
SILVERROCK, INC.; AND
DRIVETIME  AUTOMOTIVE
GROUP, INC.

              Defendants.

Case No. 2:25-cv-11990
(State Court Case No. 25-008472-CZ)

Hon. _____

## <u>NOTICE OF REMOVAL BY DEFENDANTS</u>

Pursuant to 28 U.S.C. § 1446(a), 28 U.S.C. § 1441(a), and 28 U.S.C. § 1331,

Defendants Carvana, LLC, Bridgecrest Credit Company, LLC (improperly named

in the Complaint as Bridgecrest Acceptance Corporation), SilverRock Automotive,

Inc. (improperly named in the Complaint as SilverRock, Inc.), and DriveTime

Automotive Group, Inc. (collectively "Defendants"), by and through their

undersigned counsel, hereby remove this case from the Third Judicial Circuit Court,

Wayne County, State of Michigan (the "State Court Action"), in which it is now

pending, to the United States District Court for the Eastern District of Michigan,

Southern Division.  Copies of all process, pleadings, and other documents served

upon Defendants and/or filed in the State Court Action are attached hereto as

**Exhibit A.**[1]

## I.    This Court Has Federal Question Jurisdiction Over Plaintiff's Claims Arising Under Federal Law.

1.      On June 3, 2025, Plaintiff Karlos Harris ("Plaintiff") initiated the State

Court Action against Defendants by filing the Complaint.  [*See* Compl., Ex. A at 12–

19.]

2.      In the Complaint, Plaintiff alleges that Defendants violated the Truth in

Lending Act ("TILA"), the Racketeer Influenced and Corrupt Organizations Act

("RICO"), the Fair Credit Reporting Act ("FCRA"), and the Magnuson-Moss

Warranty Act ("MMWA") (collectively, the "Federal Claims").  [*Id.* ¶¶ 13–15, 21–

26, 33–34.]

3.      Pursuant to 18 U.S.C. § 1331, "district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States."

4.      TILA is a federal statute and thus claims alleging violations of TILA

arise under federal law.  *See Maddox v. Kentucky Fin. Co.*, 736 F.2d 380, 382 (6th

Cir. 1984) (holding that claims under TILA "present[] a federal question").

---

[1] Defendants expressly reserve and do not waive the right to object to the validity of Plaintiff's service of any documents on Defendants in the State Court Action.

5.     RICO is a federal statute and thus claims alleging violations of RICO arise under federal law.  *See Abraham v. Am. Res. Co., LLC*, 2021 WL 5180230, at *2 (E.D. Mich. July 28, 2021) ("[T]his Court may exercise federal-question jurisdiction over Plaintiff's RICO claim.").

6.     The FCRA is a federal statute and thus claims alleging violations of the FCRA arise under federal law.  *See* 15 U.S.C. § 1681p ("An action to enforce any liability created under [the FCRA] may be brought in any appropriate United States district court, without regard to the amount in controversy[]").

7.     Federal courts have jurisdiction over MMWA claims so long as the amount in controversy "computed on the basis of all claims to be determined in [the] suit" exceed $50,000, and the "amount in controversy of any individual claim" is greater than $25.  15 U.S.C. § 2310(d)(3).

8.     These requirements are satisfied, as Plaintiff claims that his compensatory damages arising from all claims in the Complaint allegedly exceed $300,000, and the amount in controversy with respect to each of Plaintiff's claims exceeds $25.  [*See* Compl., Ex. A at 27.]

9.     Accordingly, this Court has federal question jurisdiction over Plaintiff's TILA, RICO, FCRA, and MMWA claims.

## II. This Court Has Supplemental Jurisdiction Over Plaintiff's State Law Claims.

10.  Supplemental jurisdiction exists over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).

11.  "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts,'" or "revolve around a central fact pattern."  *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002).

12.  Moreover, "if there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims."  *Campanella v. Com. Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998).

13.  Here, in addition to the TILA, RICO, FCRA, and MMWA claims, Plaintiff's Complaint also asserts claims against Defendants for unjust enrichment, violation of the Michigan Consumer Protection Act, violation of the Michigan Retail Installment Sales Act, fraudulent misrepresentation, fraud in the factum, and deceptive practices.  (collectively, the "State Law Claims").  [Compl. ¶¶ 10–12, 16–20, 27–32.]

14.  Plaintiff's State Law Claims and Federal Law Claims arise from the same transaction—Plaintiff's purchase and finance of a used 2017 Cadillac Escalade (the "Vehicle") from Carvana.

15.    Stemming from this purchase, Plaintiff asserts claims against Defendants related to the contracts Plaintiff signed in connection with his purchase, credit reporting related to Plaintiff's finance of the vehicle, the condition of the Vehicle at the time of sale, the Vehicle's limited warranty, and Defendants representations related to the Vehicle and in the parties' contracts. [*See, e.g.*, *id.* ¶ 13 (alleging that Defendants violated TILA because the Contract "fail[ed] to disclose" certain information); ¶ 25 (asserting FCRA claim arising from Defendants' "furnishing of . . . loan data"); ¶ 27 (asserting claim related to the condition of the Vehicle's engine); ¶ 33 (alleging that Defendants "breached the CarvanaCare warranty and implied warranties of merchantability").]

16.    Because Plaintiff's State Law Claims and Federal Law Claims "revolve around a central fact pattern"—Plaintiff's purchase and finance of the Vehicle—this Court has supplemental jurisdiction over the State Law Claims. *E.g.*, *Castleberry v. Daimler Chrysler Truck Fin*., 2011 WL 7168923, at *3 (E.D. Mich. Nov. 17, 2011) (exercising supplemental jurisdiction over state and federal claims "revolving around" the purchase and finance of a vehicle).

## III.    The Procedural Requirements for Removal Are Satisfied.

17.    Removal is timely pursuant to 28 U.S.C. § 1446(b)(1) because this Notice was filed within 30 days of service of the Complaint on Defendant, which

occurred, at the earliest, on June 4, 2025.[2]   [Proof of Service, Ex. A at 174–78.]

18.     All Defendants consent to the removal of this action to this Court.  28 U.S.C. § 1446(b)(2)(A).

19.     Venue is proper in this Court because this District and Division embrace Wayne County, the place where the State Court Action is pending.  28 U.S.C. §§ 1441(a), 1446(a).

20.     Written notice of the filing of this Notice has been served on Plaintiff. 28 U.S.C. § 1446(d).

21.     Defendants will also file a copy of this Notice with the Clerk of the Third Judicial Circuit in Wayne County.  *Id.*

## Conclusion

WHEREFORE, Defendants hereby remove this action from the Third Judicial Circuit in Wayne County to this Court.

---

[2] Plaintiff's Proof of Service filed in the State Court Action contains conflicting information as to when Defendants were served with the Complaint.  Plaintiff's Proof of Service first states that Defendants were served with the Complaint on June 4, 2025.  [Pl's Proof of Service at 2, Ex. A at 175.]  The return receipts attached to Plaintiff's Proof of Service, however, reflect that Defendants were not served with the Complaint until June 9, 2025 and June 10, 2025.  [*Id.* at 178 (providing that Carvana, Bridgecrest, and DriveTime were served on June 9, 2025, and that SilverRock was served on June 10, 2025).]  Even if Defendants were served with the Complaint on June 4, 2025 Defendants' Notice of Removal is timely.  28 U.S.C. § 1446(b)(1).

Dated:  July 1, 2025                    Respectfully submitted,

                                     **SQUIRE PATTON BOGGS (US) LLP**

                                     By:  */s/ Erik D. Lange*
                                          Erik D. Lange
                                          Michigan Bar No. P79166
                                          1000 Key Tower
                                          127 Public Square
                                          Cleveland, Ohio 44114
                                          Telephone: +1 216 479 8040
                                          Erik.Lange@squirepb.com
                                          *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2025, the foregoing Notice of Removal was filed with the clerk of this Court via the CM/ECF system, and was also sent by U.S. Mail, postage prepaid, to:

> Karlos Harris
> 8524 Spinnaker Way
> Ypsilanti, MI 48197
> *Pro Se Plaintiff*

**SQUIRE PATTON BOGGS (US) LLP**

By: */s/ Erik D. Lange*
    Erik D. Lange

*Attorney for Defendants*

# EXHIBIT A

Original Court
1st Copy- Defendant
2nd Copy- Plaintiff
3rd Copy -Return

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS | CASE NO. 25-008472-CZ Hon.Qiana Denise Lillard |
|---|---|---|

Court telephone no.: 313-224-2240

| Plaintiff's name(s), address(es), and telephone no(s) HARRIS, KARLOS | v | Defendant's name(s), address(es), and telephone no(s). CARVANA, LLC |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no KARLOS HARRIS 8524 Spinnaker Way YPSILANTI, MI 48197 | | 300 E. Rio Salado Parkway, Building 1 Tempe, AZ 85281 |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in ☐ this court, ☐_____ Court, where it was given case number _____ and assigned to Judge _____.
The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.   **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.  You are being sued.

2.  **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).

3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

4.  If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 6/3/2025 | Expiration date* 9/2/2025 | Court clerk Nadine Neal |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01 (3/23)**   **SUMMONS**   MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



MCL 600.1910, MCR 2.104, MCR 2.105

Karlos Harris
8524 Spinnaker Way
Ypsilanti, MI 48197
Phone Number: 734-271-2793
Email Address: karloslharris@gmail.com

Date: June 4, 2025


CARVANA, LLC
300 E. Rio Salado Parkway, Building 1
Tempe, AZ 85281

BRIDGECREST ACCEPTANCE CORPORATION
1720 W. Rio Salado Parkway
Tempe, AZ 85281

SILVERROCK, INC.
PO Box 29087
Phoenix, AZ 85038-9087


DRIVE TIME AUTOMOTIVE GROUP, INC.
1720 West Rio Salado Parkway
Tempe, AZ 85281


To Whom It May Concern:

Please be advised that I, Karlos Harris, have filed a civil action against
Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and
DriveTime Automotive Group, Inc. in the 3rd Judicial Circuit Court of Wayne
County, Michigan, under Case No. 25- 008472-CZ, assigned to the
Honorable Qiana Denise Lillard. The action, titled Karlos Harris v. Carvana,
LLC, et al., alleges fraudulent misrepresentation, unauthorized

securitization, identity theft, deceptive practices, breach of warranty, and inaccurate credit reporting arising from the purchase of a 2017 Cadillac Escalade ESV on September 27, 2024. Enclosed with this letter, you will find the following documents for each defendant:

1. Summons, issued June 3, 2025, expiring September 2, 2025.
2. Complaint for Declaratory Judgment, Fraud, Identity Theft, Breach of Warranty, and Rescission, filed June 2, 2025.

Pursuant to Michigan Court Rule (MCR) 2.102(B), each defendant is required to file a written answer with the court and serve a copy on me within 21 days of receiving this summons and complaint, or 28 days if served by mail or outside the State of Michigan. Failure to respond within the specified time may result in a default judgment against you for the relief demanded in the complaint, as outlined in MCR 2.108.

This service is being effectuated by registered or certified mail, return receipt requested, with delivery restricted to the addressee, in accordance with MCR 2.105(A)(2). Proof of service will be filed with the court clerk. If you require special accommodations due to a disability or a foreign language interpreter to participate in court proceedings, please contact the court immediately at 313-224-2240.

For further information, you may contact the Wayne County Circuit Court Clerk at 313- 224-2240, referencing Case No. 25-008472-CZ. All correspondence regarding this case should be directed to me at the address above or via email at karloslharris@gmail.com.

Sincerely,

Karlos Harris
Plaintiff, in Pro se

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

---

KARLOS HARRIS, an individual,
                Plaintiff

                         Case No: 25-008472-CZ
                         Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281

3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                  Defendants.

---/

**CIVIL COVER SHEET**

## I. Case Type

☑ General Civil

☐ Landlord/Tenant

☐ Probate

☐ Family Division

☐ Other: _____

Case Code (from MCR 8.117 and SCAO): *Other Civil Complaint –*
"OT"

## II. Parties Involved

Plaintiff:

- Karlos Harris is an individual residing in Wayne County,
  Michigan.

Defendants:

- Carvana, LLC is an Arizona-based online vehicle retailer
  operating in Michigan, advertising a 150-point inspection and
  7-day return policy.

2

- Bridgecrest Acceptance Corporation, an Arizona corporation, is a vehicle finance company affiliated with Carvana, providing financing and engaging in Contract securitization.

- SilverRock, Inc., an Arizona corporation, is a warranty provider partnering with Carvana to offer extended service contracts.

- DriveTime Automotive Group, Inc., an Arizona corporation headquartered at 1720 W. Rio Salado Parkway, Tempe, AZ 85281, is the parent company of Bridgecrest and SilverRock, engaging in related-party transactions with Carvana.

## III. Nature of Action (Check all that apply)

☑ UNJUST ENRICHMENT

☑ VIOLATION OF THE TRUTH IN LENDING ACT (15 U.S.C. §§ 1601–1667f)

☑ VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT (MCL 445.901 et seq.)

☑ VIOLATION OF MICHIGAN RETAIL INSTALLMENT SALES ACT (MCL 445.851 et seq.)

☑ VIOLATION OF THE RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962(c))

☑ VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C.
§§ 1681–1681x)

☑ FRAUDULENT MISREPRESENTATION

☑ FRAUD IN THE FACTUM

☑ DECEPTIVE PRACTICES AND OBSTRUCTION OF 7-DAY
RETURN POLICY (MCL 445.901 et seq.)

☑ VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15
U.S.C. §§ 2301–2312)

## IV. Jury Demand

☑ Jury trial requested

☐ Non-jury

## V. Related Cases

Are there related cases?

☐ Yes

☑ No

4

## VI. Relief Sought:

- A declaratory judgment declaring the Retail Installment Contract void ab initio due to fraud in the factum;

- A declaratory judgment

- Rescission of the Contract and related agreements;

- An order compelling Defendants to remove inaccurate loan information from credit agencies and cease unauthorized use;

- Compensatory damages of approximately $152,500, including $80,405.92 (vehicle cost), $7,500 (repairs), $50,000 (credit damage), and $14,094 (incidental losses);

- Statutory damages under the Michigan Identity Theft Protection Act, Michigan Consumer Protection Act, Michigan Retail Installment Sales Act, Truth in Lending Act, Fair Credit Reporting Act, and Magnuson-Moss Warranty Act;

- Treble damages under the Racketeer Influenced and Corrupt Organizations Act for Defendants' fraudulent enterprise;

- Exemplary damages for Defendants' intentional fraud, including misrepresentation and fraud in the factum, causing emotional distress, with total damages, including compensatory, statutory,

5

treble, and exemplary damages, potentially exceeding

$1,000,000;

- Attorneys' fees, expert fees, and costs;

- Injunctive relief to prevent further deceptive practices;

- Other relief as the Court deems just.

**Respectfully submitted,**

/s/ _____

Karlos Harris
in Pro se

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

KARLOS HARRIS, an individual,
                              Plaintiff

                              Case No: 25-008472-CZ
                              Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281

3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                              Defendants.
_____/

## RELATED PROCEEDINGS DISCLOSURE

There are no known related proceedings currently pending in any court or
administrative body involving the same parties or subject matter.

## COMPLAINT FOR DECLARATORY JUDGMENT, FRAUD, IDENTITY THEFT, BREACH OF WARRANTY, AND RESCISSION

## INTRODUCTION

Plaintiff Karlos Harris, in Pro se, brings this Complaint against Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc. for fraudulent misrepresentation, unauthorized use of Plaintiff's identity, deceptive practices, and breach of warranty arising from the purchase of a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105) on September 27, 2024. Defendants engaged in a coordinated scheme to profit through undisclosed securitization of the Retail Installment Contract, misrepresenting it as a standard loan when it was an investor asset sold to third-party investors, concealment of a known engine defect, obstruction of the 7-day return policy, denial and delay of warranty repairs, and a deceptive exchange process. On October 9–22, 2024, Carvana rescinded the Contract to facilitate an exchange, induced Plaintiff to pay $1,790.00 (later refunded), rejected Plaintiff's previously

2

accepted income source, and unilaterally reinstated the original Contract without evidencing that it had been rescinded. The January 2025 Hindenburg Research report exposes Defendants' systemic misconduct, including $15.4 billion in subprime asset-backed securities (ABS). Plaintiff seeks a declaratory judgment declaring the Contract void ab initio due to fraud in the factum, rescission, removal of inaccurate loan information from credit agencies, compensatory damages of approximately $152,500, statutory damages, treble damages, and exemplary damages for Defendants' intentional fraud, which may exceed $1,000,000 in total.

## NATURE OF THE ACTION

This action arises from Defendants' fraudulent and deceptive conduct in connection with Plaintiff's purchase of a defective 2017 Cadillac Escalade ESV from Carvana, financed by Bridgecrest, warranted by SilverRock, and facilitated by DriveTime's related-party dealings, under a Retail Installment Contract executed on September 27, 2024. Defendants misrepresented the Contract's nature, concealed a pre-existing engine defect, engaged in a bait-and-switch exchange, breached warranty obligations, and inaccurately reported loan data, causing a 100+ point credit score drop. Plaintiff seeks

3

relief under the Michigan Identity Theft Protection Act (MCL 445.61), Michigan Consumer Protection Act (MCL 445.901), Michigan Retail Installment Sales Act (MCL 445.851), Truth in Lending Act, Fair Credit Reporting Act, Magnuson-Moss Warranty Act, and Racketeer Influenced and Corrupt Organizations Act.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to MCL 600.705, as the events occurred in Wayne County, Michigan, where Plaintiff resides, and Defendants conduct business in Michigan. Venue is proper in the 3rd Judicial Circuit Court of Wayne County under MCL 600.1605, as the harm occurred in Wayne County.

## PARTIES

1. Plaintiff Karlos Harris is an individual residing in Wayne County, Michigan.

4

2. Defendant Carvana, LLC is an Arizona-based online vehicle retailer operating in Michigan, advertising a 150-point inspection and 7-day return policy.

3. Defendant Bridgecrest Acceptance Corporation, an Arizona corporation, is a vehicle finance company affiliated with Carvana, providing financing and engaging in Contract securitization.

4. Defendant SilverRock, Inc., an Arizona corporation, is a warranty provider partnering with Carvana to offer extended service contracts.

5. Defendant DriveTime Automotive Group, Inc., an Arizona corporation headquartered at 1720 W. Rio Salado Parkway, Tempe, AZ 85281, is the parent company of Bridgecrest and SilverRock, engaging in related-party transactions with Carvana.

## FACTUAL BACKGROUND

1. On September 27, 2024, Plaintiff purchased a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105) from Carvana for $80,405.92, financed through Bridgecrest under a Retail Installment Contract with monthly payments of $1,037.00 at a 25% APR, totaling $38,477.40 financed, a

5

finance charge of $36,138.52 and a down payment of $5,790.00, including a Guaranteed Asset Protection Addendum. (Exhibit "A")

2. Upon delivery, Plaintiff noticed a ticking engine noise, indicating a mechanical defect. Carvana assured Plaintiff the vehicle was covered by a 100-day/4,189-mile CarvanaCare warranty administered by SilverRock and eligible for a 7-day Vehicle Return Program. (Exhibit "B")

3. Unbeknownst to Plaintiff, the vehicle had a pre-existing engine misfire documented on November 12, 2022, by Lockhart Cadillac, per AutoCheck and Carfax reports, which Carvana concealed, misrepresenting the vehicle as passing a 150-point inspection.

4. The engine's performance worsened, exhibiting persistent misfiring, power loss, and illuminated engine lights. Plaintiff sought repairs at Campus Auto Repair Center, a SilverRock authorized facility, which confirmed a serious engine misfire requiring replacement. SilverRock denied full engine replacement, approving only temporary fixes:

A. October 1, 2024: Ticking noise diagnosed, valve lifters replaced, issue persisted. (Exhibit C)

B. November 5, 2024: Oxygen sensor and fuel injector replaced, issue persisted. (Exhibit D)

C. November 21, 2024: Fuel pump and ignition coil replaced, issue unresolved. (Exhibit E)

D. December 4, 2024: Check engine light and reduced power, throttle body and oil cooler line replaced, issue continued. (Exhibit F)

E. December 13, 2024: Rough idling and engine light, temporary fixes approved. (Exhibit G)

F. December 30, 2024: Misfire in Cylinder #5, ignition coil and fuel injector replaced. (Exhibit H)

G. January 2025: Continual misfiring. (Exhibit H)

H. February 2025: Continual misfiring. (Exhibit H)

I. March 24, 2025: Engine light, rough idling, traction control light, spark plugs replaced, issue persisted. (Exhibit K)

5. On October 9, 2024, Plaintiff requested an exchange due to SilverRock's delays in approving repairs. Carvana rescinded the Contract, required Plaintiff to pay $1,790.00 (later refunded) for a 2019 Cadillac Escalade ESV, then rejected Plaintiff's previously accepted income source and fraudulently reinstated the original Contract on October 22, 2024, without evidencing that it had been rescinded. (Exhibit L & M)

6. In December 2024, Plaintiff learned that without his consent, Defendants had securitized the Contract as an investor asset, which was misrepresented to him as a standard loan, as alleged in Plaintiff's CFPB complaint (#241217- 17490966) and supported by the January 2025 Hindenburg Research report documenting Carvana's $15.4 billion in subprime ABS with 8.67% delinquency rates. It is because of their elicit scheme to defraud that Plaintiff alleges that Defendants lack possession of the Contract, which impairs their enforcement rights.

7. Bridgecrest inaccurately reported loan data to Experian, Equifax, and TransUnion, listing a fraudulent loan balance, causing a 100+ point credit score drop and numerous denied loan and apartment rental applications.

8. Carvana's Executive Resolution Team refused resolution in January and April 2025, leaving Plaintiff with a defective vehicle and financial losses. (Exhibit K)

9. Compensatory damages include $80,405.92 (vehicle cost), $7,500 (repair expenses), $50,000 (credit damage from 100+ point score drop, denied loans and apartment rentals), and $14,094 (incidental losses from vehicle downtime and exchange process), totaling approximately $152,500.

Plaintiff suffered emotional distress, including stress and humiliation from Defendants' fraud, justifying exemplary damages.

## CAUSES OF ACTION

### COUNT I: UNJUST ENRICHMENT

10. In the alternative, if the Retail Installment Contract is void due to fraud in the factum (Count VIII), Defendants unjustly enriched themselves by exploiting Plaintiff's personal information and payments for the 2017 Cadillac Escalade ESV.

11. Carvana received $80,405.92, Bridgecrest profited from servicing fees and securitization, SilverRock preserved warranty profits by denying repairs, and DriveTime benefited from related-party revenue, per the Hindenburg report. (Exhibit "A")

12. Plaintiff suffered $152,500 in losses, entitling Plaintiff to restitution, compensatory damages, and equitable relief.

## COUNT II: VIOLATION OF THE TRUTH IN LENDING ACT (15 U.S.C. §§ 1601–1667f)

13. Defendants Carvana and Bridgecrest violated the Truth in Lending Act by failing to disclose that the Contract was securitized, omitting material terms affecting repayment obligations, such as the transfer of repayment risks to third-party investors.  Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998)

14. The Hindenburg report confirms Carvana's $15.4 billion ABS, and Bridgecrest's February 17, 2025, response omits securitization details. (Exhibits "I")

15. Plaintiff suffered financial risks and credit damage, entitling Plaintiff to actual damages ($152,500), statutory damages, attorneys' fees, and costs.

## COUNT III: VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT (MCL 445.901 et seq.)

16. Defendants violated the Michigan Consumer Protection Act by: (1) misrepresenting the Contract as a standard loan; (2) concealing the engine misfire; (3) obstructing the 7-day return policy; and (4) engaging in a bait-and-switch exchange, inducing $1,790.00 payments and unilaterally

reinstating the original Contract without evidencing that it had been rescinded.

17. The Hindenburg report and CFPB complaint confirm systemic deception. (Exhibits "I")

18. Plaintiff suffered $152,500 in damages and emotional distress, entitling Plaintiff to compensatory damages, exemplary damages for fraud, injunctive relief, attorneys' fees, and costs.

## COUNT IV: VIOLATION OF MICHIGAN RETAIL INSTALLMENT SALES ACT (MCL 445.851 et seq.)

19. Defendants Carvana and Bridgecrest violated the Michigan Retail Installment Sales Act by failing to disclose the Contract's securitization.

20. Plaintiff suffered $152,500 in damages, entitling Plaintiff to compensatory damages, rescission, attorneys' fees, and costs.

## COUNT V: VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962(c))

21. Defendants formed an enterprise to profit through fraudulent

securitization, identity theft, and warranty fraud, conducted through
Carvana's sales, Bridgecrest's financing, SilverRock's warranty denials,
and DriveTime's oversight, distinct from their ordinary business.

22. Predicate acts include:

a. Identity Theft: On or about September 27, 2024, Defendants used
Plaintiff's personal information without consent to securitize the Contract,
intending to defraud investors, violating the Michigan Identity Theft
Protection Act ([MCL 445.65). (Exhibit "A")

b. Wire Fraud: On or about September 27, 2024, Bridgecrest emailed
a falsified payment link, concealing securitization.

c. Mail Fraud: On or about October 5, 2024, Carvana mailed Plaintiff
a Contract package misrepresenting it as a standard loan.

23. These acts, ongoing from September 2024 to May 2025, form a pattern
with a threat of continuation, as Defendants' $15.4 billion ABS scheme
persists.

24. Plaintiff suffered $152,500 in damages, entitling Plaintiff to treble
damages, attorneys' fees, and costs. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S.
229, 239 (1989), Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985).

## COUNT VI: VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. §§ 1681–1681x)

25. Bridgecrest violated the Fair Credit Reporting Act by furnishing inaccurate loan data to Experian, Equifax, and TransUnion, knowing or that they should have known of the Contract's fraudulent nature, causing a 100+ point credit score drop, denied loans and apartment rental.

26. Plaintiff suffered $50,000 in credit damage, entitling Plaintiff to actual and statutory damages, attorneys' fees, and costs.

## COUNT VII: FRAUDULENT MISREPRESENTATION

27. Defendants misrepresented the Contract as a standard loan, concealed the engine misfire, obstructed the return policy, and engaged in a bait-and-switch exchange, with intent to induce reliance. Cancellieri v. Ford Motor Co., 2016 WL 6645771 (E.D. Mich. 2016)

28. Plaintiff relied on these misrepresentations, suffering $152,500 in damages and emotional distress, entitling Plaintiff to compensatory damages, exemplary damages for intentional fraud, injunctive relief, and costs.

## COUNT VIII: FRAUD IN THE FACTUM

29. Defendants committed fraud in the factum by misrepresenting the Contract as a standard loan when securitized, rendering it void ab initio under MCL 440.9610.

30. Plaintiff suffered $152,500 in damages and emotional distress, entitling Plaintiff to rescission, compensatory damages, exemplary damages for intentional fraud, and costs. Rood v. Gen. Dynamics Corp., 444 Mich. 107, 118–19, 507 N.W.2d 591 (1993), Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998)

## COUNT IX: DECEPTIVE PRACTICES AND OBSTRUCTION OF 7-DAY RETURN POLICY (MCL 445.901 et seq.)

31. Plaintiff Karlos Harris alleges that Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc. violated the Michigan Consumer Protection Act (MCL 445.901 et seq.) by engaging in deceptive practices under MCL 445.903, including:

(1) misrepresenting the Retail Installment Contract as a standard loan when it was an investor asset securitized without consent (Paragraph 6);

(2) obstructing the 7-day return policy with arbitrary demands
(Paragraph 5, Exhibit "B"); and

(3) engaging in a bait-and-switch on or about October 9–22, 2024, by
rescinding the Contract, inducing temporary $1,790.00 payments ($490.00
and $1,300.00, later refunded) for a 2019 Cadillac Escalade ESV, rejecting
Plaintiff's income source and unilaterally reinstating the original Contract
without evidencing that it had been rescinded.

32. The January 2025 Hindenburg Research report documents Carvana's
$15.4 billion subprime ABS and DriveTime's $145 million revenue
(Paragraph 20). Plaintiff's CFPB complaint (Exhibit "I"), Bridgecrest's
response (Exhibit "J"), and return terms (Exhibit "B") align with BBB
complaints. The Contract is void due to fraud in the factum (Count VIII).
Plaintiff suffered $80,405.92 in vehicle costs, repair expenses, credit
damage, and incidental losses, entitling Plaintiff to compensatory damages,
statutory damages, injunctive relief, attorneys' fees, costs, and equitable
relief, contributing to damages exceeding $1,000,000 across all counts.[^1]

## COUNT X: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301–2312)

33. Defendants Carvana, SilverRock, and DriveTime breached the CarvanaCare warranty and implied warranties of merchantability by denying engine replacement. (¶ 4, Exhibits "C"–"H")

34. Plaintiff suffered $7,500 in repair costs and $14,094 in downtime losses, entitling Plaintiff to damages, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karlos Harris requests judgment against Defendants, jointly and severally, for:

(A) A declaratory judgment declaring the Retail Installment Contract void ab initio due to fraud in the factum;

(B) A declaratory judgment

(C) Rescission of the Contract and related agreements;

(D) An order compelling Defendants to remove inaccurate loan information from credit agencies and cease unauthorized use;

(E) Compensatory damages of approximately $152,500, including $80,405.92 (vehicle cost), $7,500 (repairs), $50,000 (credit damage), and $14,094 (incidental losses);

(F) Statutory damages under the Michigan Identity Theft Protection Act, Michigan Consumer Protection Act, Michigan Retail Installment Sales Act, Truth in Lending Act, Fair Credit Reporting Act, and Magnuson-Moss Warranty Act;

(G) Treble damages under the Racketeer Influenced and Corrupt Organizations Act for Defendants' fraudulent enterprise;

(H) Exemplary damages for Defendants' intentional fraud, including misrepresentation and fraud in the factum, causing emotional distress, with total damages, including compensatory, statutory, treble, and exemplary damages, potentially exceeding $1,000,000;

(I) Attorneys' fees, expert fees, and costs; (J) Injunctive relief to prevent further deceptive practices;

(K) Other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Michigan Court Rules and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to amend this Complaint to assert additional claims or name additional parties as discovery progresses or facts develop.

## VERIFICATION

I, Karlos Harris, being duly sworn under penalty of perjury, affirm that I am the Plaintiff in the above-captioned action and that I have personal knowledge of the facts set forth in the foregoing Complaint for Declaratory Judgment, Fraud, Identity Theft, Breach of Warranty, and Rescission. I have reviewed the Complaint and the supporting documentation referenced therein, and to the best of my knowledge, information, and belief, the allegations contained therein are true and correct.

Executed pursuant to MCR 1.109(D)(3)(b) on this 2nd day of June, 2025.

**Respectfully submitted,**

/s/ _Karlos L. Harris_

Karlos L. Harris
in Pro se

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

This is a copy view of the Authoritative Copy held by the designated custodian

# Exhibit "A"

## Notice of
## Unrepaired Safety Recalls and Service Campaigns

Year: 2017    Make: Cadillac                    Model: Escalade ESV

Body Type: Sport Utility                    VIN: ███████████1105

We requested information about any unrepaired safety recalls and manufacturer service campaigns for this vehicle from our data provider. As part of our commitment to transparency, we are passing the results of that request onto you in the report below. Please note that we can't guarantee the accuracy or completeness of this report and we encourage you to seek additional information from the manufacturer and the National Highway Transport Safety Administration website at nhtsa.gov/recalls. Additional safety recalls and service campaigns may be issued for this vehicle at any time.

**We recommend that you contact your local Cadillac dealer to have the vehicle inspected.** Inspections and repairs for safety recalls and service campaigns are often provided free of charge.

Please sign below to acknowledge your receipt of this information.

_____          09/27/2024
B55CD05F208A480...                                  _____
Karlos Latwian Harris                              Date

---

**1. Steering Wheel Chrome Rough Edge**

**Risk:** Vehicles may have a steering wheel in which the plating on the chrome trim bezel is separated from the plastic substrate. Separation of the chrome plating may create a rough edge.

**Remedy:** Dealers are to replace the steering wheel chrome trim bezel with an improved chrome trim bezel.

**2. Brake Assist Decreased Due to Vacuum Loss**

**Risk:** The condition is more prevalent at low speed when softly applying the brakes. The engine mounted mechanical vacuum pump output may decrease over time decreasing the amount of vacuum or power brake assist. Failure to follow recommended oil change intervals could contribute to this condition. The Drivers Information Center, Service brake assist alert will activate 2 to 5 minutes after the vacuum level drops, and a Diagnostic Trouble Code will also be set. Even where this condition occurs, the hydraulic brake system remains functional but may require additional pedal force.

**Remedy:** Dealers are to replace the vacuum pump and vacuum pump belt. The repairs will be made at no charge to the customer.

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

This is a copy view of the Authoritative Copy held
by the designated custodian



## Upfront Nonrefundable Shipping Acknowledgment

By signing below:

1. I acknowledge that I agreed to pay Carvana a one-time, Upfront Payment of $290.00 in consideration for performing duties to prepare my Vehicle for my possession, including shipping the vehicle from its original location to the nearest Carvana location in my area.

2. I understand that the above Payment:

   a. Is reflected in my contracts as a portion of the cash payment made towards my vehicle purchase.

   b. Is **nonrefundable** whether I keep the Vehicle or complete a return or exchange within Carvana's 7-Day Money Back Guarantee.

Signature: 
┌─ Signed by:
│
└─ B55CD05F208A460...

Date: 9/24/2024

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

This is a copy view of the Authoritative Copy held
by the designated custodian

THIS IS A COPY

# Retail Purchase Agreement

| BUYER | Karlos Latwian Harris | | |
|---|---|---|---|
| ADDRESS LINE 1 | 8524 SPINNAKER WAY | | |
| ADDRESS LINE 2 | N/A | | |
| CITY, STATE, ZIP | YPSILANTI MI 48197-7100 | | |
| PHONE(S) | RES. ▇▇▇▇ | BUS. N/A | |

## VEHICLE BEING PURCHASED ("VEHICLE")

| Year 2017 | Make Cadillac | Model Escalade ESV | | Body Sport Utility |
|---|---|---|---|---|
| Lic. Plate # | License Tab # | Expires | Mileage 74,372 | Color Black |
| VIN # ▇▇▇▇▇1105 | | | | |

Dealership provides an express limited warranty ("Limited Warranty"). Buyer has a copy of the Limited Warranty. No other express or implied warranties are made by the Dealership and there will be no implied warranties of merchantability or fitness for a particular purpose unless required by applicable law. Dealership does not have to make any repairs on the Vehicle, except as required under the Limited Warranty and applicable state law. Buyer(s) may also have other rights that vary from state to state.

Buyer(s) ("You") and Dealership ("We" or "Us") agree that this Retail Purchase Agreement (this "Agreement") is governed by federal law and the law of the state of the Dealership Address. We are agreeing to sell to You and You are agreeing to buy from Us the Vehicle at our Dealership Address, subject to the terms and conditions of this Agreement (the "Transaction"). We agree to transfer to You and You agree to accept title and ownership of the Vehicle in the state of the Dealership Address. You may take delivery of the Vehicle from Us at our Dealership Address, or You may request the Vehicle be made available for pick-up and/or delivery at another location approved by Us.

## TRADE IN VEHICLE #1

| Year N/A | Make N/A | Model N/A | | Body N/A |
|---|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |
| VIN # N/A | | | | |

## TRADE IN VEHICLE #2

| Year N/A | Make N/A | Model N/A | | Body N/A |
|---|---|---|---|---|
| Lic. Plate # N/A | License Tab # | Expires | Mileage N/A | Color N/A |
| VIN # N/A | | | | |

Initial

Buyer's Initials

---

| | |
|---|---|
| Date 09/27/2024 | Phone 1-800-333-4554 |
| Dealership CARVANA, LLC | |
| Dealership Address 600 S 94th AVE | |
| City, State, Zip TOLLESON, AZ 85353-2820 | |
| Stock Number 2003064371 | |

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

LA INFORMACION QUE VE ADHERIDA EN LA VENTANILLA FORMA PARTE DE ESTE CONTRATO. LA INFORMACION CONTENIDA EN ELLA PREVALECE POR SOBRE TODA OTRA DISPOSICION INCLUIDA EN EL CONTRATO DE COMPRAVENTA.

| | |
|---|---|
| Selling price | $39,990.00 |
| Sales Tax | $2,399.40 |
| MI Registration Fee | $477.00 |
| Title Fee | $15.00 |
| Lien Filing Fee | $1.00 |
| Gap Coverage (Optional) | $1,095.00 |
| (Upfront Nonrefundable) Shipping | $290.00 |
| Subtotal (Selling Price + Fees + Taxes) | $44,267.40 |
| Cash Down Payment | $5,500.00 |
| Total Down Payment (Cash Down Payment + Nonrefundable Shipping) | $5,790.00 |
| Balance Due (Subtotal - Total Down Payment) | $38,477.40 |
| TOTAL BALANCE DUE (BALANCE DUE + TRADE IN BALANCE) | $38,477.40 |

### FINANCE CHARGE
The dollar amount of credit will cost You

$ 36,138.52

If financed, interest charged on the principal amount. See Retail Installment Contract for more information.

---

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

This is a copy view of the Authoritative Copy held
by the designated custodian

**NOTICE TO THE BUYER(S):** THE PAYOFF BALANCE REFERRED TO IN ESTIMATED PAY-OFF AND THE FEES REFERRED TO IN THE ABOVE LINE ITEMS ARE ESTIMATES, AT THE TIME THE BALANCES AND FEES ARE VERIFIED AND CONTRACT DETERMINED, APPROPRIATE ADJUSTMENTS, IF NECESSARY, WILL BE MADE. ANY DIFFERENCE IN THE PAYOFF AMOUNT IS THE RESPONSIBILITY OF THE BUYER(S).

**Carvana Vehicle Return Program**

We will give You the ability to return the Vehicle to Carvana and terminate this Agreement and any retail installment contract executed in connection herewith so long as:

1. You have not returned, exchanged, or swapped more than two (2) prior vehicles to Carvana in connection with any retail purchase agreements or retail installment contracts associated with this Transaction.
   i. If You have returned, exchanged, or swapped two (2) prior vehicles in connection with this Transaction, then You will be given a one-time opportunity to decline or accept the third and final vehicle during the delivery or pickup appointment unless otherwise approved by Carvana.

2. You alert Carvana by phone, text, email, or chat prior to 8 pm EST on the 7th calendar day after You take delivery of the Vehicle. The day your Vehicle is delivered, regardless of delivery time, will count as the first day of your seven (7) day test own;

3. You return the Vehicle in one of two ways:
   i. Within a Carvana service area: You make the Vehicle available for pick up by a Carvana representative at a predetermined time and location the following business day. Service area is designated by zip code and subject to change without prior notice.
   ii. Outside of a Carvana service area: Carvana will arrange for transport of the Vehicle. The cost will be paid by You. Service area is designated by zip code and subject to change without prior notice.

4. The Vehicle is free of all liens and encumbrances other than the lien created by any retail installment contract or other finance agreement executed by you in connection with this Agreement and/or Transaction.

5. The Vehicle is in the same condition You received it except for reasonable wear and tear (evidence of smoking in the Vehicle is not considered reasonable wear and tear);

6. You have not driven it more than 400 miles;

7. The Vehicle is without damage or having been in an accident or collision that occurred after You took delivery of the Vehicle.

**Mileage Fees:** If Carvana elects to accept the return of the Vehicle despite that it has been driven more than 400 miles, then at Carvana's election, You will pay $1.00 per mile for each mile the Vehicle was driven over 400 miles ("Mileage Fees"). Mileage Fees may not be paid by personal check. Mileage Fees will be deducted from Your down payment refund. If You paid Your down payment via ACH transaction, We will pay You only after You provide evidence satisfactory to Us that the ACH transaction was cleared.

**Upfront Nonrefundable Shipping:** In consideration for performing duties to prepare your Vehicle for your possession, including the cost of transport, You agree to pay Carvana a one-time, initial payment $290.00 ("Upfront Shipping"). The Upfront Shipping payment is a **nonrefundable charge** that will be credited against your Vehicle price (and upon any other sums payable by You to Carvana under this Agreement) upon completion of sale of this Vehicle. The Upfront Shipping charge is nonrefundable whether you keep the vehicle or complete a return or exchange within Carvana's 7-Day Money Back Guarantee. Notwithstanding any other terms set forth in this Agreement, Carvana's ability to retain the Upfront Shipping charge survives termination of this Agreement.

**Trade-In Vehicles:** Your and Our rights and obligations regarding any trade-in vehicles are more fully set forth in a separate agreement (the "Vehicle Purchase Agreement") executed in connection with this Transaction. That Vehicle Purchase Agreement is incorporated by reference into, and is part of, this Agreement. In the event of any conflict or inconsistency between this Agreement and the Vehicle Purchase Agreement, the Vehicle Purchase Agreement shall prevail. In addition to Your and Our rights and obligations set forth in the Vehicle Purchase Agreement, You and We agree to the following regarding any trade-in vehicles referenced in this Agreement:
   1. You agree that the Estimated Pay-off, Net Trade Allowance, and Trade-In Balance outlined in this Agreement are all estimates only, which are subject to the After-Sale Review and Verification Process described below. You acknowledge that if any errors are identified during the After-Sale Review and Verification Process, these figures may change, and that as a result, the Total Balance Due, Finance Charge, and other finance terms may also change. If these figures are changed as a result of errors identified during the After-Sale Review and Verification Process, You agree, if requested by Dealership, to either execute a corrected Agreement and/or any retail installment contract executed in connection herewith, or rescind the Agreement and/or any related retail installment contract and unwind the Transaction.

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

This is a copy view of the Authoritative Copy held by the designated custodian

2. You represent and warrant that the trade-in vehicle described in the Agreement, if any, has not been misrepresented, and all emissions control and/or other equipment or features regulated by the EPA, CARB, NHTSA or other regulators is present and functioning. You also agree to provide to Us a Certificate of Title (or documents that allow Us to obtain it), free of any lien(s) or encumbrance(s), (i.e. titling issues, child support or amounts due to government titling or registration agency) and that You have the right to sell the trade-in.

3. If You reject the Vehicle and terminate your purchase subject to the terms of the Carvana Vehicle Return Program, then Carvana, in its sole discretion, may elect to keep and/or sell to a third-party any trade-in vehicles You provided in connection with this Transaction. In that circumstance, Carvana will pay you the Net Trade Allowance (less any Upfront Shipping charge) if any, and You will pay Carvana the Trade-In Balance if any.

**General:** At time of delivery, or at any time during Your 7 day return policy period, You may reject Your Vehicle and terminate your Vehicle financing and purchase for any reason, subject to the terms of the Carvana Vehicle Return Program, including Carvana's ability to retain the Upfront Shipping charge.

In certain states, dealers may not place any insignia that advertises the dealer's name on a vehicle unless the Buyer consents thereto in the purchase contract for such vehicle. Unless Buyer notifies Dealership otherwise in writing, Buyer hereby expressly consents to the placement of Carvana's name on the Vehicle's license plate cover. Buyer expressly waives any compensation for the placement of Dealership's name on the Vehicle.

**Default:** You will be in default if any of the following occurs (except as may be prohibited by law): 1. You gave Us false or misleading information in this Agreement, on carvana.com, or on the telephone, via email, or text message, in person, or any other communication medium in connection with the purchase of the Vehicle, Agreement, and/or Transaction; 2. If We cannot verify any information that You have provided us; 3. If We discover a material adverse change in any information You provided Us during our review process; 4. If You do not satisfy Your After-Sale Review and Verification Process obligations described below; 5. You fail to keep any other agreement or promise You made in connection with this Transaction.

**Assignment:** You may not assign your rights under this Agreement and/or any retail installment contract executed in connection herewith without our permission.

**After-Sale Review and Verification Process:** This Transaction is subject to an after-sale review and verification of the information and documents You have provided to us. You agree to cooperate with the after-sale review and verification process, including by, among other things, (a) providing documents requested by Dealership, (b) signing corrected documents and agreements requested by Dealership necessary to address errors/inconsistencies/omissions in this Agreement, any related retail installment contract, and/or any other documentation executed in connection with this Agreement or the Transaction, (c) paying amounts due in connection with the Transaction and providing verification thereof in the form of bank statements, canceled checks, wire receipts, or any other documentation requested by Dealership, and (d) cooperating with Dealership to take all reasonable actions (including executing and/or notarizing documents requested by Dealership) to effectuate the Transaction, including those necessary to properly title and register, or correct issues concerning the title and registration of, the Vehicle or any trade-in vehicle.

**Remedies:** If You have failed to perform any of the terms set forth in this Agreement or any other agreement related to this Transaction, then We have all the remedies provided by law, equity, and this Agreement, to the extent not prohibited by law. Those remedies include, among other things:
a) We may cease all performance under the Agreement or any other agreement entered into in connection with the Transaction.
b) We may recover any and all damages We have incurred, including by setting off and applying, with or without notice, any amounts owed to You against amounts You owe to Carvana under this Agreement or any other agreement related to this Transaction.
c) We may, but need not, recover the Vehicle with or without notice.
d) We may rescind the Agreement or any other agreement entered into in connection with the Transaction.

**Waiver of Damages:** Unless prohibited by law, You shall not be entitled to recover from Us any consequential, incidental, or punitive damages, damages to property, or damages for loss of use, loss of time, loss of profits or income, or any other similar damages (collectively, "Indirect Damages"). Your waiver of Indirect Damages survives termination or rescission of this Agreement.

**References:** To the extent You are financing Your purchase with Us, We may contact Your employer or Your references to verify the information You provided to Us in connection with this Agreement.

**Odometer (mileage):** Each of your and our representations regarding odometer readings are subject to information provided by others, including government agencies. We each understand that this information is not always accurate. As permitted by applicable law, neither us is responsible for any inaccuracies in this information to the extent it is not the party's fault.

**Delivery:** Any Vehicle delivery date provided to You is an estimate only. You agree that You are not entitled to any compensation, and Carvana is not liable for any direct or indirect damages or claims related to any delays concerning any estimated delivery date provided to You. You further agree that if the Vehicle has not been delivered within 30 calendar days of the original estimated delivery date, then You or We may unilaterally rescind the Agreement with no further obligation and without any liability.

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**Disclosure on Airbags:** Unless otherwise required by law: (1)We disclaim any knowledge of, and make no representation or warranty as to the condition or operability of, the airbag(s) on the Vehicle unless otherwise disclosed to You on the CarFax or AutoCheck Vehicle History Report; (2) You acknowledge that We have not made any representations, oral or in writing, as to the condition or operability of the airbag(s), and You accept the Vehicle without representation or warranty from us; and (3) You further acknowledge that You had the opportunity to have the airbag(s) checked by someone of Your choice prior to the expiration of Your 7 day return policy period.

**Liability Insurance:** You understand that state law requires You to purchase and maintain liability insurance. You must obtain liability insurance covering the Vehicle prior to taking possession of the Vehicle, and provide proof of such insurance upon request by Dealership. We do not provide liability insurance for You and it is not included in Your Agreement. Your choice of insurance providers will not affect our decision to sell You the Vehicle.

**Record Retention:** You agree that We may maintain documents and records related to the Vehicle, Agreement, and/or Transaction electronically, including, but not limited to, documents and record images, and that We may dispose of original documents. You agree that a copy of any such electronic records may be used and shall be deemed to be the same as an original in any arbitration, judicial, non-judicial, or regulatory proceeding related to the Vehicle, Agreement, and/or Transaction.

**Arbitration Agreement:** The arbitration agreement entered into between You and Dealership, including any arbitration provision in any retail installment contract or other finance agreement executed in connection with this Agreement is incorporated by reference into, and is part of, this Agreement. Notwithstanding anything in this agreement to the contrary, Your agreement to arbitrate survives termination or rescission of this Agreement.

**Optional Products and Services:** The purchase of GAP coverage, service contracts, cosmetic protection agreements, road hazard agreements, or maintenance agreements are not required to purchase the Vehicle or to obtain financing.

**Payment:** You agree to satisfy all amounts outlined in this Agreement subject to the terms contained herein, and subject to any retail installment contract or other finance agreement executed in connection with this Agreement. Your right to retain possession of the Vehicle is conditioned upon Us receiving successful payment of the amounts outlined in this Agreement and in any retail installment contract or other finance agreement executed in connection with this Agreement. The Total Balance Due outlined in this Agreement is not necessarily a reflection of You having paid, or Us having received, any funds.

**CarFax/AutoCheck:** You acknowledge that You have reviewed a CarFax or AutoCheck Vehicle History Report for the Vehicle.

**Prior Use:** This Vehicle may have previously been used as a government owned vehicle, police car, taxi, demonstrator, leased vehicle, or daily rental vehicle. Please consult the CarFax or AutoCheck Vehicle History Report for the Vehicle.

**NOTICE:** Carvana, LLC allows You to finance applicable sales/use taxes assessed on ancillary products (vehicle service contract, GPS, GAP Coverage). Whether You finance Your Vehicle purchase or pay cash, if Your Vehicle is registered in the state of the Dealership Address, then Carvana will remit the applicable sales/use tax on ancillary products to that state on Your behalf. Unless required by state law, if Your Vehicle is registered in a state that is not the state of the Dealership Address, then Carvana will not collect or remit to the state of Vehicle registration any applicable sales/use tax on ancillary products on Your behalf unless You live in Kansas, Louisiana, or Pennsylvania.

**Buyer(s) acknowledges receipt of a copy of this Agreement. No oral agreements or understandings apply. This Agreement is not binding until accepted by an authorized representative of Carvana.**

Buyer _____
Karlos Latwian Harris

Accepted By _____
Carvana

This is a copy view of the Authoritative Copy held
by the designated custodian

**NOTICE. This document must be printed using a color printer. Under Michigan law certain provisions within a Motor Vehicle Retail Installment Sales Contract must appear in red. Failure to print this document with a color printer may result in liability on your part. The Reynolds and Reynolds Company is not responsible for any losses resulting from the failure to print this document with a color printer.**

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZMI 11/1/2018
Bankers Systems®
cover page

This is a copy view of the Authoritative Copy held

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | | Summary | |
|---|---|---|---|---|
| CARVANA, LLC | Karlos Latwian Harris | N/A | No. | 2003064371 |
| 600 S 94th AVE | 8524 Spinnaker Way | | Date | 09/27/2024 |
| TOLLESON, AZ 85353-2820 | Ypsilanti MI 48197-7100 | | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| 25.00 % | $ 36,138.52 | $ 38,477.40 | $ 74,615.92 | $ 5,790.00 $ 80,405.92 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 1,037.00 | Monthly Beginning 10/28/24 |
| 1 | $ 988.92 | 09/28/30 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of the greater of 5% of the unpaid amount of the payment due or $15.00.

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year 2017 | Make Cadillac | Model Escalade ESV | Style Sport Utility | Vehicle Identification Number ▮▮▮▮1105 | Odometer Mileage 74,372 |
|---|---|---|---|---|---|

☐ New
☒ Used
☐ Demo

Other:
N/A

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 38,477.40 plus finance charges accruing on the unpaid balance at the rate of 25.00 % per year from the date of this Contract until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-in-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ **Minimum Finance Charge.** You agree to pay a minimum finance charge of $ N/A if you pay this Contract in full before we have earned that much in finance charges.

*[This area intentionally left blank.]*

Initial

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZMI 11/1/2018
Bankers Systems®
Page 1 of 6

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| a. | Price of Vehicle, etc. (incl. sales tax of $ 2,399.40 ) | $ | 42,389.40 |
| b. | Service Contract, paid to: N/A | $ | N/A |
| c. | Documentary Preparation Fee, paid to Seller | $ | 0.00 |
| d. | | $ | 0.00 |
| e. | | $ | 0.00 |
| f. | **Cash Price** (a+b+c+d+e) | $ | 42,389.40 |
| g. | Trade-in allowance | | N/A |
| | Trade-in Description N/A N/A | | |
| | N/A N/A | | |
| | N/A | | |
| | N/A | | |
| h. | Less: Amount owing, paid to (includes n): N/A | $ | N/A |
| i. | Net trade-in (g–h; if negative, enter $0 here and enter the amount on line o) | $ | N/A |
| j. | Cash payment | $ | 5,500.00 |
| k. | Clean Vehicle Tax Credit | $ | |
| l. | Other down payment (describe) (Upfront Nonrefundable) Shipping | $ | 290.00 |
| m. | **Down Payment** (i+j+k+l) | $ | 5,790.00 |
| n. | **Unpaid balance of Cash Price** (f–m) | $ | 36,599.40 |
| o. | Financed trade-in balance (see line i) | $ | 0.00 |
| p. | Paid to public officials, including filing fees | $ | 493.00 |
| q. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| r. | To: Gap Coverage (Optional) | $ | 1,095.00 |
| s. | To: (Upfront Nonrefundable) Shipping | $ | 290.00 |
| t. | To: N/A | $ | N/A |
| u. | To: N/A | $ | N/A |
| v. | To: N/A | $ | N/A |
| w. | To: N/A | $ | N/A |
| x. | To: N/A | $ | N/A |
| y. | To: N/A | $ | N/A |
| z. | To: N/A | $ | N/A |
| aa. | To: N/A | $ | N/A |
| bb. | **Total Other Charges/Amts Paid** (o thru aa) | $ | 1,878.00 |
| cc. | **Prepaid Finance Charge** | $ | 0.00 |
| dd. | **Amount Financed** (n+bb–cc) | $ | 38,477.40 |

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A                    Term N/A

Insured N/A

**Credit Disability**

☐ Single   ☐ Joint   ☒ None

Premium $ N/A                    Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A                                              N/A

By: _____   DOB

N/A                                              N/A

By: _____   DOB

N/A                                              N/A

By: _____   DOB

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company you choose that is authorized to sell insurance in Michigan. The collision coverage deductible may not exceed

$ 1,000 _____. If you get insurance from or through us you will

pay $ N/A for N/A

of coverage.

This premium is calculated as follows:

| | | | | | |
|---|---|---|---|---|---|
| ☐ | $ | N/A | Deductible, Collision Cov. | $ | N/A |
| ☐ | $ | N/A | Deductible, Comprehensive | $ | N/A |
| ☐ | Fire-Theft and Combined Additional Cov. | | | $ | N/A |
| ☐ | | N/A | | $ | N/A |

☐ **Single-Interest Insurance.** Insurance for your and our dual protection could not be obtained. As a result, you must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay

$ N/A for N/A

of coverage.

[This area intentionally left blank.]

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Initial

RSSIMVLFLZMI 11/1/2018
Bankers Systems®
Page 2 of 6

This is a copy view of the Authoritative Copy held by DocuSign, Inc.

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**

| Term | | N/A |
|---|---|---|
| Price | $ | N/A |
| Coverage | | N/A |

☒ **Gap Waiver or Gap Coverage**

| Term | | 72 Months |
|---|---|---|
| Price | $ | 1,095.00 |
| Coverage | | Gap Coverage |

☐ **Cosmetic Protection**

| Term | | N/A |
|---|---|---|
| Price | $ | N/A |
| Coverage | | N/A |

Signed by:

B55CD05E208A460                                    09/27/2024

By: Karlos Latwian Harris                          Date

| N/A | N/A |
|---|---|
By: N/A                                            Date

| N/A | N/A |
|---|---|
By:                                                Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we", "us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance, and when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Application of Payments.** We can apply your payments to any amounts you owe under this Contract, including the Finance Charge, Amount Financed, or any other amounts you owe, in whatever order we decide.

**Prepayment.** You may prepay the outstanding balance of this Contract in full or in part at any time. We will rebate to you the unearned portion of the finance charge, to the extent required by law. See *Minimum Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Your Right to Refinance a Balloon Payment.** A balloon payment is a scheduled payment that is larger than any of the substantially equal prior scheduled payments. If your final scheduled payment is a balloon payment, you have the right to enter into a new written contract when it is due (refinance). You may refinance a balloon payment in equal installments over a reasonable period of time. During this period, you will also pay a finance charge on the unpaid balance computed using the Annual Percentage Rate stated in the *Truth-In-Lending Disclosure*.

**Returned Payment Charge.** You agree to pay a charge of $25 if any check or other payment instrument you give us is dishonored.

**Governing Law and Interpretation.** This Contract is governed by the law of Michigan and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default if you fail to perform any obligation that you have undertaken in this Contract, (except as prohibited by law).

If you default, you agree to pay our court costs, attorneys' fees, and expenses of retaking, repairing, and storing a repossessed Vehicle securing this Contract.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

♦ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.

♦ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate provided in the *Payment* section until paid in full.

♦ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

♦ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.

♦ We may then sell the Property and apply what we receive as provided by law to your reasonable expenses and then toward what you owe us.

♦ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing one or more of these remedies, we do not give up our right to use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You can prepay all of your debt and get a refund of the unearned portion of the Finance Charge. If you default and we repossess the Vehicle, we may, at our option, allow you to get the Vehicle back before we sell it by paying all past due payments, late charges, and expenses.

Initial

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZMI 11/1/2018
Bankers Systems®
Page 3 of 6

This is a copy view of the Authoritative Copy held by the designated custodian.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover your property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- ◆ You must pay this Contract even if someone else has also signed it.
- ◆ We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- ◆ We may release any security and you will still be obligated to pay this Contract.
- ◆ If we give up any of our rights, it will not affect your duty to pay this Contract.
- ◆ If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in the following collateral security: proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- ◆ You will defend our interests in the Property against claims made by anyone else. You will keep your claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- ◆ You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- ◆ You agree not to remove the Property from the U.S. without our prior written consent.
- ◆ You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- ◆ You will pay all taxes and assessments on the Property as they become due.
- ◆ You will notify us with reasonable promptness of any loss or damage to the Property.
- ◆ You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. Before we obtain insurance we will give you any notices required by law and credit for any refund we receive of prepaid, unearned premiums for cancelled dual-protection insurance. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

**Creditor-Placed Insurance Notice.** You are giving us a security interest in the Property described in the *Security Agreement* section. You are required to maintain insurance on the Property to protect our interest until all debts secured by this Contract are paid. If you fail to provide evidence of insurance on the Property to us, we may place insurance on the Property and you will be responsible to pay for the costs of that creditor-placed insurance after we give you notice and wait any time period required by law. The method of billing for creditor-placed insurance charges may create a balloon payment or extend the maturity date of the debts secured by this Contract, if you and we agree to do so when the charge is added to what you owe us under this Contract.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Notices

**Note.** If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Sí compra un vehículo usado:** La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| **By:** | **Date** |
| Signature of Third Party Owner (NOT the Buyer) | |

*[This area intentionally left blank.]*

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Initial 

RSSIMVLFLZMI 11/1/2018
Bankers Systems®
Page 4 of 6

This is a copy view of the Authoritative Copy held by the designated custodian.

## Signature Notices

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.***

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

Signed by:

_____
B55CD05F208A460...
By: Karlos Latwian Harris     09/27/2024
       Date

_____
N/A     N/A
By: N/A     Date

_____
09/27/2024
By: CARVANA, LLC     Date

*[This area intentionally left blank.]*

---

By signing below you agree to the terms of this Contract and acknowledge a copy of this Contract and had a chance to read and review it before you signed it.

> **Warning:** The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others unless so indicated hereon.

**Notice to Buyer. Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.**

**Buyer**

Signed by:

_____
B55CD05F208A460...
By: Karlos Latwian Harris     09/27/2024
       Date

_____
N/A     N/A
By: N/A     Date

_____
N/A     N/A
By:     Date

**Seller**

_____
09/27/2024
By: CARVANA, LLC     Date

Buyer acknowledges delivery of a copy of this Retail Installment Contract and Security Agreement.

Signed by:

_____
B55CD05F208A460...
By: Karlos Latwian Harris     09/27/2024
       Date

_____
N/A     N/A
By: N/A     Date

_____
N/A     N/A
By:     Date

Initial

_____

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
RSSIMVLFLZMI 11/1/2018
Bankers Systems®
Page 5 of 6

This is a copy view of the Authoritative Copy held by the designated custodian

**Assignment.** This Contract and Security Agreement is assigned to

N/A

the Assignee, located at ___N/A___

_____ , phone ___N/A___ .

This assignment is made under the terms of a separate agreement made between the Seller and Assignee. ☐ This Assignment is made with recourse.

**Seller**

N/A                                             N/A

**By:**                                          **Date**

Retail Installment Contract-MI Not for use in transactions secured by a dwelling.
©2018 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

RSSIMVLFLZMI 11/1/2018
Bankers Systems®
Page 6 of 6

Initial



I certify that:
- I am not in the process of filing a Bankruptcy nor am I in an active Bankruptcy
  **OR**
- I have provided Carvana with appropriate documentation regarding a Bankruptcy filing to proceed with the transaction

Signed by:

x
B55CD05F208A460...
Karlos Latwian Harris

x
N/A

# BUYERS GUIDE

**IMPORTANT:** Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| Cadillac | Escalade ESV | 2017 | ████████ 1105 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VEHICLE IDENTIFICATION NUMBER (VIN) |

## WARRANTIES FOR THIS VEHICLE:

☐ # IMPLIED WARRANTIES ONLY

The dealer doesn't make any promises to fix things that need repair when you buy the vehicle or afterward. But *implied warranties* under your state's laws may give you some rights to have the dealer take care of serious problems that were not apparent when you bought the vehicle.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☒ # DEALER WARRANTY

☐ FULL WARRANTY.

☒ LIMITED WARRANTY. The dealer will pay __100__% of the labor and __100__% of the parts for the covered systems that fail during the warranty period*. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. *Implied warranties* under your state's laws may give you additional rights.
*A deductible may apply for each repair claim. Please see the Limited Warranty agreement for additional information.

**SYSTEMS COVERED:**
Engine; Transmission & Drive Shaft; Differential; Cooling;
Electrical; Fuel; Heating & Air Conditioning; Braking; Steering;
Suspension; Wheels, Exhaust

**DURATION:**
100 days or 4,189 miles, whichever comes first

## NON-DEALER WARRANTIES FOR THIS VEHICLE:

☐ MANUFACTURER'S WARRANTY STILL APPLIES. The manufacturer's original warranty has not expired on some components of the vehicle.

☐ MANUFACTURER'S USED VEHICLE WARRANTY APPLIES.

☐ OTHER USED VEHICLE WARRANTY APPLIES.

Ask the dealer for a copy of the warranty document and an explanation of warranty coverage, exclusions, and repair obligations.

☒ SERVICE CONTRACT. A service contract on this vehicle is available for an extra charge. Ask for details about coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of your purchase of this vehicle, *implied warranties* under your state's laws may give you additional rights.

**ASK THE DEALER IF YOUR MECHANIC CAN INSPECT THE VEHICLE ON OR OFF THE LOT.**

**OBTAIN A VEHICLE HISTORY REPORT AND CHECK FOR OPEN SAFETY RECALLS.** For information on how to obtain a vehicle history report, visit ftc.gov/usedcars. To check for open safety recalls, visit safercar.gov. You will need the vehicle identification number (VIN) shown above to make the best use of the resources on these sites.

**SEE OTHER SIDE for important additional information, including a list of major defects that may occur in used motor vehicles.**

**Si el concesionario gestiona la venta en español, pídale una copia de la Guía del Comprador en español.**

Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame—cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Air Bags**

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage
Catalytic Converter

| DEALER NAME | |
| --- | --- |
| CARVANA, LLC | |
| **ADDRESS** | |
| 600 S 94th AVE | TOLLESON, AZ 85353-2820 |
| **TELEPHONE** | **EMAIL** |
| 1-(800)333-4554 | DL-CarvanaPhoenixAdvocate@carvana.com |

FOR COMPLAINTS AFTER SALE, CONTACT:
Carvana Customer Advocates at: 1.800.333.4554 or 300 E Rio Salado Pkwy, Tempe, AZ 85281

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removing this label before consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).

# CARVANA    Carvana Limited Warranty

43670162

## PLEASE KEEP A COPY OF THIS LIMITED WARRANTY IN THE COVERED VEHICLE

### CONTRACT HOLDER

| CUSTOMER'S NAME | | CO-CUSTOMER'S NAME | |
|---|---|---|---|
| Karlos Latwian Harris | | N/A | |

| ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 8524 Spinnaker Way | Ypsilanti | MI | 48197-7100 |

| PHONE NUMBER | EMAIL ADDRESS |
|---|---|
| | |

### COVERED VEHICLE

| YEAR | MAKE | MODEL | | |
|---|---|---|---|---|
| 2017 | Cadillac | Escalade ESV | | |

| VIN | CURRENT ODOMETER | VEHICLE PURCHASE DATE | VEHICLE PURCHASE PRICE | LIMITED WARRANTY TERM |
|---|---|---|---|---|
| 1105 | 74,372 | 09/27/2024 | $ 39,990.00 | 100 DAYS/4,189 MILES |

### DEALERSHIP

| DEALERSHIP NAME | PHONE NUMBER | DEALERSHIP NUMBER | |
|---|---|---|---|
| CARVANA, LLC | 1-800-333-4554 | 23302 | |

| ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 600 S 94th AVE | TOLLESON | AZ | 85353-2820 |

THIS LIMITED WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE. ANY IMPLIED WARRANTIES ARISING UNDER THIS LIMITED WARRANTY ARE LIMITED IN DURATION TO THE TERM OF THIS LIMITED WARRANTY. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.

I have read and understand this Limited Warranty:

| _____ | N/A | 09/27/2024 | _____ |
|---|---|---|---|
| Signature of Customer | Signature of Co-Customer | Effective Date | Signature of Dealer Representative |

1. **COVERAGE: 100 DAY/4,189 MILE LIMITED WARRANTY**

(a) Coverage Term. The coverage provided under this Limited Warranty ends with either of the following, whichever occurs first: (i) one hundred (100) days pass from Vehicle Purchase Date; or (ii) when the Covered Vehicle has been driven four thousand one hundred and eighty- nine (4,189) miles measured from the Current Odometer reading (indicated above).

(b) Covered Parts. Repairs on all assemblies and parts are covered on the Covered Vehicle under this Limited Warranty except the following items or conditions, which are excluded and not covered unless otherwise required by state law:

    i.   Interior or Exterior Cosmetic Imperfections

    ii.   Replaceable/Wearable Parts

    iii.   Recommended Maintenance

    iv.   Aftermarket Accessories

(c) Deductible. For each Repair Visit the following deductible will apply: In-Network Deductible – [$100.00]; Out-of-Network Deductible – [$350.00]

2. **DEFINITIONS**

As used in this Limited Warranty:

1. "Administrator" means SilverRock Automotive Inc, PO Box 29087, Phoenix, AZ 85038-9087, Toll Free: (866) 628-3905.

2. "Breakdown" means that event caused by the total failure of any Covered Part to work as it was designed to work in normal service due to defects in material or workmanship; provided, however, such meaning is specifically limited by those certain conditions under which a failure of a Covered Part is not deemed a Breakdown as identified in the section captioned "Exclusions".

3. "Covered Part" means an item listed as Covered Parts in the applicable "Coverage" sections above.

4. "Covered Vehicle" means the Customer's vehicle identified in this Limited Warranty.

5. "Customer", "Co-Customer", "You", "Your", and "Contract Holder" mean the customer(s) identified in this Limited Warranty.

6. "Dealership", "We", "Us" and "Our" mean Carvana, LLC. This Limited Warranty is provided to You by Us.

7. "In-Network Deductible" means the amount paid by You to an In-Network Repair Facility per Repair Visit. The amount of the In-Network Deductible is stated in Section 1.



Rock

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

Page 1 of 6

THIS IS A COPY
This is a copy view of the authoritative Copy held
in the designated repository

# CARVANA Carvana Limited Warranty

43670162

8. "In-Network Repair Facility" means a repair facility in Administrator's repair facility network. To find out if a repair facility is an In-Network Repair Facility, please contact the Administrator at (866) 628-3905.

9. "Out-of-Network Deductible" means the amount paid by You to an Out-of-Network Repair Facility per Repair Visit. The amount of the Out-of-Network Deductible is stated in Section 1.

10. "Out-of-Network Repair Facility" means a repair facility that is not in Administrator's repair facility network. To find out if a repair facility is an Out-of- Network Repair Facility, please contact the Administrator at (866) 628-3905.

11. "Limited Warranty" means the 100 Day/4,189 Mile Limited Warranty as described herein, subject to these terms and conditions.

12. "Interior or Exterior Cosmetic Imperfections" means any physical defects on the Covered Vehicle that do not affect the drivability or safety of the Covered Vehicle.

13. "Recommended Maintenance" means any normal or scheduled maintenance – the parts and services that all vehicles routinely need. This includes, lubrication, engine tune-ups, replacing filters of any kind, coolant, spark plugs, bulbs or fuses (unless those costs result from a covered repair), and cleaning and polishing.

14. "Replaceable/Wearable Parts" means any part that is designed to wear down or be replaced with general maintenance of the vehicle. Wearable components include but not limited to your drive belt, tires, brake pads, brake rotors, clutch material (in manual transmissions), wiper blades and fluids.

15. "Repair Visit" means a visit to a repair facility to perform a diagnosis, teardown, or a covered repair.

### 3.    YOUR OBLIGATIONS

(a) You must properly operate, care for, and maintain the Covered Vehicle as recommended by the Covered Vehicle's manufacturer.

(b) Either You or Your licensed repair facility must obtain the Administrator's authorization number prior to beginning any covered repair.

(c) You are responsible for paying the deductible indicated for each Repair Visit.

(d) You must keep records and receipts that show all services performed on the Covered Vehicle, the dates the Covered Vehicle was at a repair facility, and the mileage at the time the services were performed. You must provide these records and receipts to the Administrator upon request.

### 4.    OUR OBLIGATIONS

If a covered Breakdown of the Covered Vehicle occurs during the term of this Limited Warranty, We will:

(1) Repair or replace, as the Administrator deems appropriate, the Covered Part(s) which caused the Breakdown if You have met Your obligations and if the Breakdown is not excluded under the Exclusions section. Replacement parts may be of like kind and quality, subject to Administrator's discretion. This may include the use of new, remanufactured or used parts as determined by the Administrator.

(2) Reimburse You for a rental car at the rate of up to $60.00 per day for a maximum of $600.00 per Breakdown or series of Breakdowns related in time or cause. The rental car reimbursement benefit is calculated using the total labor time required to repair the Breakdown(s), such that every (8) labor hours (or additional portion thereof) qualifies You for one (1) day of rental car reimbursement. Required labor time is determined from the national repair manual in use by the repair facility. To receive rental benefits you must supply Administrator with Your receipt from a licensed rental agency within ninety (90) days. Administrator is not responsible for rental costs incurred due to delays in the repair process caused by the repair facility.

### 5.    FOR EMERGENCY ROADSIDE ASSISTANCE – CALL TOLL FREE (888) 300-8607

We will provide the following services during the term of this Limited Warranty:

(1) Towing. Limit of [$100.00] per incident or failure related in time or cause.

(2) Gasoline and fluids. An emergency supply will be provided when an immediate need arises. Limit of [$100.00] per occurrence. You are responsible for cost of fluids delivered.

(3) Flat tire assistance. Removal and replacement with Your provided spare. Limit of [$100.00] per occurrence.

(4) Lock-out assistance. Service will provide for a locksmith to gain entry to the Covered Vehicle if the keys are locked inside. Limit of [$100.00] per occurrence.

(5) Battery jump start. A jump start will be provided when an immediate need arises due to a drained battery. Limit of [$100.00] per occurrence.

### 6.    WHAT TO DO IF YOU HAVE A BREAKDOWN

(a) In the event of a Breakdown, follow this step-by-step procedure:

(1) Use all reasonable means to protect the Covered Vehicle from further damage. This may require You to stop the Covered Vehicle in a safe place, turn off the engine, and have the Covered Vehicle towed.

(2) Visit https://www.yourvehiclecare.com/process to find an In-Network repair facility.

(3) Instruct Your repair facility to contact the Administrator at Toll Free (866) 628-3905 for instructions before starting any repair, teardown, or diagnostic work on the Covered Vehicle. Either You or Your licensed repair facility must obtain the Administrator's authorization number prior to beginning any work. All repair work must be performed by a licensed repair facility.

(4) If requested by Administrator, you must provide authorization for teardown or diagnosis work needed to determine if a covered Breakdown has occurred. Except as required by applicable law, this Limited Warranty does not cover costs for teardown or diagnosis work unless it is determined from that work that a covered Breakdown has occurred.

(5) Furnish the repair facility or Administrator with such information as this Limited Warranty may reasonably require. This includes receipts for towing and signed repair orders (indicating dates and mileage).



Rock

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

WTY (CV-MuSt) 2024 V1

**Carvana Limited Warranty**

43670162

(b) If the Covered Vehicle requires an emergency repair outside of the Administrator's normal business hours, then You must fulfill Your Obligations and retain any replaced parts for the Administrator's inspection. You must contact the Administrator the next business day for instructions on submitting the claim. For an emergency repair to a Covered Part Your claim will not be denied solely for lack of prior authorization. "Emergency repair" means only repair outside of Administrator's normal business hours.

(c) Absent prior written approval by Administrator, all claim documentation must be received by Administrator within ninety (90) days of claim authorization date.

### 7. COVERAGE EXCLUSIONS

(a) All parts or services not specifically listed as Covered Parts under the applicable Covered Parts section of this Limited Warranty are not covered.

(b) This Limited Warranty provides no benefits or coverage and We have no obligation under this Limited Warranty for:

(1) A Breakdown caused by lack of customary, proper, or manufacturer's specified maintenance.

(2) A Breakdown caused by contamination of or lack of proper fuels, fluids, coolants or lubricants, including a Breakdown caused by a failure to replace seals or gaskets in a timely manner.

(3) A Breakdown caused by towing a trailer, another vehicle or any other object unless the Covered Vehicle is equipped for this use as recommended by the manufacturer.

(4) Repair of any parts during a covered repair which are not necessary to the completion of the covered repair or were not damaged by the failure of a Covered Part. Such replacement is considered betterment and is not covered.

(5) A Breakdown caused by or involving modifications or additions to the Covered Vehicle or Covered Parts unless those modifications or additions were performed or recommended by the manufacturer.

(6) A Breakdown caused by or involving off-roading, misuse, abuse, lift kits, lowering kits, oversize or undersize tires, racing components, racing or any form of competition.

(7) Any repair which is provided by the Covered Vehicle manufacturer, a repair shop or part supplier under their respective warranty(s).

(8) Costs or other damages caused by the failure of a part not listed under Covered Parts.

(9) Damage to the Covered Vehicle caused by continued vehicle operation after the failure of a Covered Part.

(10) Any liability, cost or damages You incur or may incur to any third parties other than for Administrator approved repair or replacement of Covered Parts which caused a Breakdown.

(11) A Breakdown caused by overheating, or physical damage.

(12) Rust or corrosion repair.

(13) A Breakdown or damage to the Covered Vehicle caused by collision, fire, electrical fire or meltdown, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood or acts of the public enemy or any government authority, or for any hazard insurable under standard physical damage insurance policies whether or not such insurance is in force respecting the Covered Vehicle.

(14) A Breakdown not occurring in the United States or Canada.

(15) Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, or other incidental or consequential damages or loss that results from a Breakdown.

(16) Liability for damage to property, or for injury to or death of any person arising out of the operation, maintenance, or use of the Covered Vehicle whether or not related to a Breakdown.

(17) Any cost or other benefit for which the manufacturer has announced its responsibility through any means including public recalls or factory service bulletins.

(18) Any part not covered by, or excluded by the Covered Vehicle's manufacturer's warranty.

(19) Adjustments of or to, repair or replacement of any Covered Part if a Breakdown has not occurred or if the wear on that part has not exceeded the field tolerances allowed by the manufacturer.

(20) A Breakdown if the odometer is altered, broken, repaired or replaced such that actual mileage or cannot be readily determined.

(21) A Breakdown if the Covered Vehicle is used for business, deliveries, construction, or commercial hauling; The Covered Vehicle is used as a postal vehicle, taxi, police car or other emergency vehicle; You rent the Covered Vehicle to someone else; The Covered Vehicle is equipped with a snow plow or used to plow snow; You are using or have used or modified the Covered Vehicle in a manner which is not recommended by the Vehicle manufacturer.

### 8. LIMITATION OF LIABILITY

Our total liability for any amounts paid or payable by Us to You under this Limited Warranty shall not exceed the Vehicle Purchase Price as listed in the Vehicle Information Section on Page 1 (excluding tax, title, and license fees), unless otherwise prohibited by law.

### 9. OTHER IMPORTANT PROVISIONS

(a) This Limited Warranty will terminate when You sell the Covered Vehicle, when the Covered Vehicle reaches the time or mileage limitation, or You reach the Limit of Liability, whichever occurs first.

(b) This Limited Warranty and its benefits are not transferable to any other vehicle owner and apply only to the Customer named above.

(c) You agree that We may use the information We collect about You for lawful business purposes, including, without limitation, to analyze trends and to otherwise administer this Limited Warranty; and You further agree that We may share data about You for any lawful business purpose, including with Our


Rock.

WTY (CV-MuSt) 2024 V1

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

Page 3 of 6

This is a copy view of the Authoritative Copy held
by the designated Custodian.


**CARVANA**        **Carvana Limited Warranty**

43670162

affiliates who may use it to offer You new products or improve the services offered.

(d)     **WE ARE NOT LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES UNLESS EXPRESSLY PROVIDED HEREIN. SOME STATES DO NOT ALLOW FOR THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.**

**STATE AMENDMENTS**

**ARIZONA:**

The In-Network Deductible is waived for any Breakdown reported to Us before the first to occur of: (i) 15 days pass from Vehicle Purchase Date; or (ii) when the Covered Vehicle has been driven 500 miles measured from the Current Odometer reading (indicated above). When calculating time under this paragraph, add 1 day for each day that the Covered Vehicle is in the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty. When calculating distance under this paragraph, add 1 mile for each mile driven to obtain or in connection with the repair, servicing or testing of the Covered Vehicle. To receive additional coverage days or miles under this paragraph, You must notify the Administrator of the additional days or miles You believe You are entitled to.

**CALIFORNIA:**

The In-Network Deductible is waived for any Breakdown reported to Us before the first to occur of: (i) 30 days pass from Vehicle Purchase Date; or (ii) when the Covered Vehicle has been driven 1,000 miles measured from the Current Odometer reading (indicated above).

**CONNECTICUT:**

The In-Network Deductible is waived during the term of this Limited Warranty. When calculating time under Section 1(a) (Coverage Term), add 1 day for each day that (a) the Covered Vehicle is the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty; or (b) repair services are not available to You because of a war, invasion or strike, fire, flood or other natural disaster. To receive additional coverage days under this paragraph, You must notify the Administrator of the additional days You believe You are entitled to.

Notwithstanding anything in this Limited Warranty to the contrary, this Limited Warranty covers the full cost of parts and labor to ensure the Vehicle is mechanically operational and sound for a period of 60 days or 3,000 miles, whichever comes first.

**HAWAII:**

The In-Network Deductible is waived during the term of this Limited Warranty. When calculating time under this paragraph, add 1 day for each day that (1) the Covered Vehicle is in the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty; (2) repair services are not available to You because of war, invasion or strike, fire, flood or other natural disaster; or (3) You have notified the Administrator that the Covered Vehicle is inoperable, but cannot reasonably present the Vehicle to a repair facility and the We refuse to pay the charge to tow the Vehicle. To receive additional coverage days under this paragraph, You must notify the Administrator of the additional days You believe You are entitled to.

**ILLINOIS:**

The In-Network Deductible is waived for any Breakdown reported to Us before the first to occur of: (i) 15 days pass from Vehicle Purchase Date; or (ii) when the Covered Vehicle has been driven 500 miles measured from the Current Odometer reading (indicated above). When calculating time under this paragraph, add 1 day for each day that the Covered Vehicle is in the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty. When calculating distance under this paragraph, add 1 mile for each mile driven to obtain or in connection with the repair, servicing or testing of the Covered Vehicle. To receive additional coverage days under this paragraph, You must notify the Administrator of the additional days You believe You are entitled to.

**MAINE:**

If the Dealership fails to perform its obligations under the Limited Warranty, the Contract Holder shall give the Dealership written notice of such failure before the Contract Holder initiates a civil action in accordance with Me. Rev. Stat. tit. 10, § 1476. The notice must be sent by registered or certified mail to the Dealership's last known business address.

**MASSACHUSETTS:**

The In-Network Deductible is waived during the term of this Limited Warranty. When calculating time under this paragraph, add 1 day for each day that (1) Your Vehicle is in the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty; (2) repair services are not available to You because of war, invasion or strike, fire, flood or other natural disaster; or (3) You have notified the Administrator that Your Vehicle is inoperable, but cannot reasonably present the Vehicle to a repair facility and the Administrator refuses to pay the charge to tow the Vehicle. To receive additional coverage days under this paragraph, You must notify the Administrator of the additional days You believe You are entitled to.

CONSUMER RIGHTS FOR USED CAR BUYERS: I. USED CAR WARRANTY LAW – The Massachusetts Used Car Warranty Law, M.G.L. c. 90, s. 7N 1/4 protects consumers who have problems with their used vehicle. UNDER THE LAW, YOU HAVE A RIGHT TO A REFUND IF: (a) a defect that impairs the safety or use of the vehicle arose during the warranty period, AND (b) A defect continued to exist or recurred during the warranty period after either: 1. three or more repair attempts for the same defect, or 2. being out of service after being returned for repair of any defect for a cumulative total of more than ten business days. The defect must arise during the 30, 60, or 90 day period stated below. The warranty period is extended one day for every day that your car is in the shop for repairs. The warranty is extended for 30 days from the completion of any repair attempt for the defect that was the subject of the repair attempt. IF THE DEALER DOES NOT ISSUE A REFUND AFTER THESE

Rock.        You may contact the Administrator during normal business hours at the        Page 4 of 6
following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

WTY (CV-MuSt) 2024 V1

DocuSign Envelope ID: 68656EF8-634A-4DUE-867C-F89TD4A659CA

This is a copy view of the Authoritative Copy held

43670162

# CARVANA    Carvana Limited Warranty

STANDARDS HAVE BEEN MET, YOU HAVE A RIGHT TO HAVE YOUR CASE DECIDED BY A STATE-CERTIFIED ARBITRATOR. YOU MUST REQUEST STATE CERTIFIED ARBITRATION WITHIN 6 MONTHS OF ORIGINAL DELIVERY OF THE VEHICLE TO YOU. II. LEMON AID LAW – If this vehicle fails inspection within seven days, and it would cost more than 10% of the purchase price to repair, you are entitled to a full refund if the vehicle is returned to the dealer within 14 days. See the separate Lemon Aid Law notice. III. IMPLIED WARRANTY LAW – The implied warranty of merchantability is a guarantee provided by law in the sale of all consumer products, including automobiles (even if they cost less than $700 or have 125,000 miles or more on the odometer). This law says that your vehicle should function properly for a reasonable period of time. If the vehicle does not, the dealer must fix it at no charge to you. (Note: The statute does not define reasonable period of time.) It is illegal to sell a car "AS IS", "WITH ALL FAULTS", or with a "50/50 WARRANTY". THIS SHEET PROVIDES ONLY A SUMMARY OF YOUR RIGHTS. To request arbitration, or to get further information, contact: Office of Consumer Affairs and Business Regulation One Ashburton Place, Boston, Massachusetts 02108, Used Car Warranty Law information: (617) 727-7780, 1-888-283-3757, Department of the Attorney General: (617) 727-8400.

LIMITED USED VEHICLE WARRANTY – Dealership warrants this Vehicle against any defect, malfunction, or combination of defects or malfunctions, that impairs its safety or use for a period of (a) 90 days or 3,750 miles, whichever comes first (for vehicles with fewer than 40,000 miles on the odometer at the time of sale, or if the true mileage is not known and the vehicle is three years old or less) (b) 60 days or 2,500 miles, whichever comes first (for vehicles with 40,000 to 79,999 miles on the odometer at the time of sale, or if the true mileage is not known and the vehicle is more than less than six years old) (c) 30 days or 1,250 miles, whichever comes first (for vehicles with 80,000 to 124,999 miles on the odometer at the time of sale, or if the true mileage is not known and the vehicle is six years old or more) from the date of delivery of the vehicle to you. Dealership will provide the full cost of parts and labor necessary to repair all covered defects. However, the Dealership may charge you up to a total of $100 per vehicle for the repair of all covered defects during the warranty period. The warranty period is extended one day for every day the vehicle is in the shop for repairs, and one mile for every mile the vehicle is driven between the Dealership's acceptance of the vehicle for repair and its return to the consumer. The warranty is extended for 30 days from the completion of any repair attempt for every defect that was the subject of the repair attempt. To receive additional coverage days under this paragraph, You must notify the Administrator of the additional days You believe You are entitled to. The Dealership will give you a refund if a defect that impairs the safety or use of the vehicle continued to exist or recurred within the warranty period after either three repair attempts for the same defect or being out of service after being returned for repair of any defect or defects for a cumulative total of more than ten business days. Defects that are covered by the manufacturer's warranty are not covered by this warranty if the Dealership gives you a copy of the manufacturer's warranty, that warranty has been assigned to you, and the Dealership assures that those defects are repaired. This warranty is provided pursuant to M.G.L. c. 90, § 7N1/4, the used vehicle warranty law. For further information about that law contact the Office of Consumer Affairs and Business Regulation at 617-727-7780.

**MINNESOTA:**
The In-Network Deductible is waived during the term of this Limited Warranty.

**NEW JERSEY:** ADDITIONAL LIMITED WARRANTY: If the Covered Vehicle was acquired by You in New Jersey, then the following additional express warranty is also provided in addition to the Carvana Limited Warranty. This additional express limited warranty is required by New Jersey law.

**Warranty: If a used motor vehicle has:**    ☐ 24,000 miles or less, the warranty is 90 days or 3,000 miles, whichever comes first
**(check appropriate box)**    ☐ 24,001 to 60,000, the warranty is 60 days or 2,000 miles, whichever comes first
    ☐ 60,001 to 100,000, the warranty is 30 days or 1,000 miles, whichever comes first.

**Terms**
Dealer agrees to repair or replace any covered part of the above vehicle upon failure or malfunction of a Covered Item specified in 2 below, subject to the following terms, conditions, exclusions and limitations.

1. *Who is covered by the limited warranty?* Only the purchaser named above. The warranty is not transferable to, nor enforceable by, any other person.
2. *What parts of the vehicle are covered by this limited warranty?* Under the law only "Covered Items" which include the following components of a used motor vehicle:
   (a) Engine – all internal lubricated parts, timing chains, gears and cover, timing belt, pulleys and cover, oil pump and gears, water pump, valve covers, oil pan, manifolds, flywheel, harmonic balancer, engine mounts, seals and gaskets, and turbo-charger housing; however, housing, engine block and cylinder heads are covered items only if damaged by the failure of an internal lubricated part.
   (b) Transmission Automatic/Transfer Case – all internal lubricated parts, torque converter, vacuum modulator, transmission mounts, seals and gaskets.
   (c) Transmission Manual/Transfer Case – all internal lubricated parts, transmission mounts, seals and gaskets, but excluding a manual clutch, pressure plate, throw-out bearings, clutch master or slave cylinders.
   (d) Front-Wheel Drive – all internal lubricated parts, axle shafts, constant velocity joints, front hub bearings, seals and gaskets.
   (e) Rear-Wheel Drive – all internal lubricated parts, propeller shafts, supports and U-joints, axle shafts and bearings, seals and gaskets.
3. What is excluded from this limited warranty?
   (a) Any and all parts not expressly specified in Part 2 above;
   (b) This written warranty shall exclude repairs covered by any manufacturer's warranty, or recall program, as well as repairs of a covered item required because of collision, abuse, or the purchaser's failure to properly maintain the used motor vehicle in accordance with the manufacturer's recommended maintenance schedule. This Limited Warranty also excludes damage of a covered item caused as a result of any commercial use of the used motor vehicle, or operation of the vehicle without proper lubrication or coolant, or as a result of any misuse, negligence or alteration of the vehicle by someone other than the dealer.

 Rock

You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

Case 2:25-cv-11990-LJM-DRG   ECF No. 1,  PageID.59   Filed 07/01/25   Page 88 of 230
This is a copy view of the Authoritative Copy held by the designated custodian

43670162

## CARVANA Carvana Limited Warranty

4.  *What is the dealer's obligation during the term of this limited warranty?* The dealer or its agent, upon failure or malfunction of a covered item during the term of this warranty, shall correct the malfunction or defect, provided the used motor vehicle is delivered to the dealer at his regular place of business and subject to a deductible amount of $50 to be paid by the purchaser for each repair of a covered item. If, within the specific warranty period, the dealer or its agent fails to correct a material defect of the used motor vehicle after a reasonable opportunity to repair, the dealer shall repurchase the used motor vehicle and refund to the consumer the full purchase price, excluding all sales tax, title and registration fees or any similar government charges, and less a reasonable allowance for excessive wear and tear less a deduction for personal use of the vehicle. "A reasonable opportunity to repair" is defined at N.J.S.A. 56:8-71 as: *(a) The same material defect has been repaired three or more times by the dealer or their agent within the warranty period, but the material defect continues to exist; or (b) The used motor vehicle is out of service by reason of waiting for the dealer to begin or complete repair of material defect for a cumulative total of 20 or more days during the warranty period.*

5.  *Extension of duration of warranty.* The duration of this warranty shall be extended by any time period during which the used motor vehicle is waiting for the dealer or its agent to begin or complete repairs of a material defect of the used motor vehicle.

6.  *What are the purchaser's obligations?* To obtain repairs or replacements under this Limited Warranty, Purchaser must:

    (a)  Deliver the used motor vehicle to the dealer at its regular place of business;

    (b)  Pay $50 to the dealer for each repair of a covered item.

**NEW MEXICO:**

The In-Network Deductible is waived for any Breakdown reported to Us before the first to occur of: (i) 15 days pass from Vehicle Purchase Date; or (ii) when the Covered Vehicle has been driven 500 miles measured from the Current Odometer reading (indicated above). When calculating time under this paragraph, add 1 day for each day that the Covered Vehicle is in the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty. When calculating distance under this paragraph, add 1 mile for each mile driven to obtain or in connection with the repair, servicing or testing of the Covered Vehicle. To receive additional coverage days or miles under this paragraph, You must notify the Administrator of the additional days or miles You believe You are entitled to.

**NEW YORK:**

The In-Network Deductible is waived during the term of this Limited Warranty. When calculating time under Section 1(a) (Coverage Term), add 1 day for each day that (i) the Covered Vehicle is in the possession of a repair facility for the purpose of repairing the Covered Vehicle under this Limited Warranty; or (ii) repair services are not available to You because of war, invasion or strike, fire, flood or other natural disaster. To receive the additional coverage days under this paragraph, You must notify the Administrator and provide sufficient records and receipts upon request.

**RHODE ISLAND:**

The In-Network Deductible is waived during the term of this Limited Warranty.



You may contact the Administrator during normal business hours at the following number or address:
P.O. Box 29087, Phoenix, AZ 85038-9087• (866) 628-3905

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA



# CREDIT REPORTING NOTICE

We report all information, positive and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default. If you believe any information we have reported is inaccurate please notify us immediately in writing at the address below.

dispute@carvana.com

# SECURE ODOMETER DISCLOSURE

## Void If Altered Or Erased

| Vehicle Identification Number | | Year | Make | Body Style |
|---|---|---|---|---|
| ████████1105 | | 2017 | Cadillac | Sport Utility |
| Buyer Name  Karlos Latwian Harris | | Sale Date  09/27/2024 | Title Number | |

Federal and State law require that the seller states the mileage in connection with the transfer of ownership. Failure to complete the odometer statement, or providing a false statement, may result in fines and/or imprisonment.

Odometer Reading (no tenths)
74,372    ☒ miles  ☐ kilometers

☐ Mileage in excess of the odometer mechanical limits.
☐ NOT Actual Mileage, WARNING – ODOMETER DISCREPANCY.

I certify to the best of my knowledge that the odometer reading is the actual mileage unless one of the boxes above is checked.

| Seller/Dealership Name(printed)  CARVANA LLC | | | Dealer Number  L00015079 |
|---|---|---|---|
| Street Address  600 S. 94TH AVENUE | City  TOLLESON | State  AZ | Zip  85353 |
| Agent Name  PAUL BREAUX | Agent Signature | | |

I am aware of the above odometer certification made by the seller.

| Buyer Name (printed)  Karlos Latwian Harris | Buyer Signature |
|---|---|
| | Signed by: B55CD05F208A480... |

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

# ODOMETER DISCLOSURE STATEMENT
## (Retail)

DATE OF STATEMENT   09/27/2024

Federal law (and State law, if applicable) requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I, __CARVANA, LLC.__ state that the odometer now reads

__74,372__ (no tenths) miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked:

| | | |
|---|---|---|
| ☐ | (1) | I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits. |
| ☐ | (2) | I hereby certify that the odometer reading is NOT the actual mileage. WARNING -- ODOMETER DISCREPANCY |

YEAR __2017__      MAKE __Cadillac__      MODEL __Escalade ESV__

BODY TYPE __Sport Utility__   VEHICLE ID NO. __█████████1105__

TRANSFEROR'S NAME __CARVANA, LLC.__
(PRINTED NAME)

TRANSFEROR'S ADDRESS __600 S 94th AVE__
(STREET)

__TOLLESON__          __AZ__          __85353-2820__
(CITY)                (STATE)        (ZIP)

TRANSFEROR'S NAME X _____
(SIGNATURE) Paul Breaux

TRANSFEREE'S NAME __Karlos Latwian Harris__
(PRINTED NAME)

TRANSFEREE'S ADDRESS __8524 Spinnaker Way   N/A__
(STREET)

__Ypsilanti__          __MI__          __48197-7100__
(CITY)                (STATE)        (ZIP)

TRANSFEREE'S NAME X _____
(SIGNATURE) Karlos Latwian Harris

C038 (09/27/2024)

THIS IS A COPY
This is a copy view of an Authoritative Copy held by the designated custodian

# GUÍA DEL COMPRADOR

**IMPORTANTE:** Las promesas verbales son difíciles de hacer cumplir. Solicite al concesionario que ponga todas las promesas por escrito. Conserve este formulario.

| Cadillac | Escalade ESV | 2017 | ██████████ 1105 |
|---|---|---|---|
| MARCA DEL VEHÍCULO | MODELO | AÑO | NÚMERO DE IDENTIFICACIÓN DEL VEHÍCULO (VIN) |

## GARANTÍAS PARA ESTE VEHÍCULO:

☐ **SOLO GARANTÍAS IMPLÍCITAS**

El concesionario no hace ninguna promesa de reparar lo que sea necesario cuando compre el vehículo o posteriormente. Sin embargo, las *garantías implícitas* según las leyes estatales podrían darle algunos derechos para hacer que el concesionario se encargue de ciertos problemas que no fueran evidentes cuando compró el vehículo.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

☒ **GARANTÍA DEL CONCESIONARIO**

☐ GARANTÍA COMPLETA.

☒ GARANTÍA LIMITADA. El concesionario pagará el <u>100</u>% de la mano de obra y el <u>100</u>% de las partes de los sistemas cubiertos que fallen durante el período de garantía*. Pídale al concesionario una copia de la garantía y de cualquier documento que le explique la cobertura, las exclusiones y las obligaciones de reparación del concesionario. Las *garantías implícitas*, según las leyes de su estado, podrían darle derechos adicionales. *Se puede aplicar un deducible por cada reclamo de reparación. Consulte el acuerdo de garantía limitada para obtener información adicional.

**SISTEMAS CUBIERTOS:**
Motor; transmisión y eje de transmisión; Diferencial;

Enfriamiento; Eléctrico; Combustible; Calefacción y Aire

Acondicionado; Frenado; Dirección; Suspensión; Ruedas;

Escape

**DURACIÓN:**
100 días o 4189 millas, lo que ocurra primero

## GARANTÍAS QUE NO PERTENECEN AL CONCESIONARIO:

☐ LA GARANTÍA DEL FABRICANTE TODAVÍA APLICA. La garantía original del fabricante no ha expirado para algunos de los componentes del vehículo.

☐ SE APLICA LA GARANTÍA DEL FABRICANTE PARA VEHÍCULOS USADOS.

☐ SE APLICA OTRA GARANTÍA PARA VEHÍCULOS USADOS.

Pídale al concesionario una copia del documento de garantía y una explicación de la cobertura, las exclusiones y las obligaciones de reparación.

☒ CONTRATO DE MANTENIMIENTO. Con un cargo adicional, puede obtener un contrato de mantenimiento para este vehículo. Pregunte acerca de los detalles de la cobertura, los deducibles, el precio y las exclusiones. Si compra un contrato de mantenimiento dentro de los 90 días desde el momento en que compró el vehículo, las *garantías implícitas* según las leyes de su estado podrían darle derechos adicionales.

**PREGÚNTELE AL CONCESIONARIO SI SU MECÁNICO PUEDE INSPECCIONAR EL VEHÍCULO DENTRO O FUERA DEL CONCESIONARIO.**

**OBTENGA UN INFORME DEL HISTORIAL DEL VEHÍCULO Y VERIFIQUE SI EXISTEN RETIROS POR DEFECTOS DE SEGURIDAD PENDIENTES.** Para información sobre cómo obtener un Informe del Historial del Vehículo, visite el sitio ftc.gov/carrosusados. Para verificar si existen retiros por defectos de seguridad pendientes, visite safercar.gov. Para aprovechar al máximo los recursos de estos sitios necesitará el número de identificación de vehículo (VIN) mostrado anteriormente.

**CONSULTE EL DORSO para obtener más información, incluyendo una lista de defectos importantes que pueden ocurrir en vehículos de motor usados.**

A continuación podrá encontrar una lista de los defectos principales que podrían ocurrir en vehículos usados.

**Chasis y carrocería**
Grietas en el chasis, soldaduras correctivas u oxidadas
Descuadrado: chasis doblado o torcido

**Motor**
Pérdidas de aceite, excepto las filtraciones normales
Bloque o cárter con grietas
Correas ausentes o fuera de servicio
Golpes o fallas relacionados con levantadores de levas o bielas
Descarga del escape fuera de lo normal

**Transmisión y eje motor**
Nivel inadecuado de fluido o pérdidas excepto filtraciones normales
Grietas o daños visibles en la caja.
Ruidos o vibraciones fuera de lo normal ocasionadas por la transmisión o el eje motor
Cambios o funcionamiento inadecuados en cualquier velocidad
Patinados o vibraciones del embrague manual

**Diferencial**
Nivel inadecuado de fluido o pérdidas excepto filtraciones normales
Grietas o daños visibles en el cárter del diferencial
Ruidos o vibraciones fuera de lo normal ocasionadas por fallas en el diferencial.

**Sistema de enfriamiento**
Pérdidas, incluidas las del radiador
Funcionamiento inadecuado de la bomba de agua

**Sistema eléctrico**
Pérdidas en la batería
Funcionamiento inadecuado del alternador, generador, batería o arrancador

**Sistema de combustible**
Pérdidas visibles

**Accesorios fuera de servicio**
Indicadores o dispositivos de advertencia
Aire acondicionado
Calefacción y Desempañador

**Sistema de frenos**
Luz de advertencia de fallas rota
Falta de firmeza cuando se presiona el pedal (según especificaciones del Departamento de Transporte [DOT])
Distancia insuficiente del pedal (según especificaciones del DOT)
El vehículo no se detiene en línea recta (según especificaciones del DOT)
Mangueras dañadas
Tambor o rotor muy delgados (según especificaciones del fabricante)
Grosor de la placa o del revestimiento inferior que 1/32 pulgadas
Unidad de potencia fuera de servicio o con pérdidas
Partes estructurales o mecánicas dañadas

**Bolsas de aire**

**Sistema de dirección**
Demasiado juego en el volante (según especificaciones del DOT)
Juego mayor a 1/4 de pulgada en el varillaje.
El mecanismo de dirección se traba
Alineación inadecuada de las ruedas frontales (según especificaciones del DOT)
Grietas o deslizamientos en las correas de la unidad de potencia
Nivel inadecuado de fluidos de la unidad de potencia

**Sistema de suspensión**
Juntas de rótula dañadas
Partes estructurales dobladas o dañadas
Barra estabilizadora desconectada
Resorte roto
Cojinete del amortiguador suelto
Cojinetes de caucho dañados o ausentes
Biela dañada o ausente
Amortiguador con pérdidas o con funcionamiento inadecuado

**Neumáticos**
Profundidad de las ranuras menor que 2/32 de pulgada
Tamaños que no corresponden
Daños visibles

**Ruedas**
Grietas, daños o reparaciones visibles
Tornillos de sujeción sueltos o ausentes

**Sistema de escape**
Pérdidas
Convertidor catalítico

---

**NOMBRE DEL CONCESIONARIO**
CARVANA, LLC

**DIRECCIÓN DEL CONCESIONARIO**
600 S 94th AVE          TOLLESON, AZ 85353-2820

**TELÉFONO**                        **CORREO ELECTRÓNICO**
1-800-333-4554          DL-CarvanaPhoenixAdvocate@carvana.com

**PARA QUEJAS DESPUÉS DE LA VENTA COMUNÍQUESE CON:**
Defensors del Cliente de Carvana a: 1.800.333.4554 or 300 E Rio Salado Pkwy, Tempe, AZ 85281

---

**IMPORTANTE:** La información de este formulario es parte de cualquier contrato para comprar este vehículo. Quitar esta etiqueta antes de la compra del consumidor (excepto a los fines de realizar una prueba de conducción) es una infracción a la ley federal (16 C. F. R. 455).

# ARBITRATION AGREEMENT | WAIVER OF PURCHASER'S RIGHT TO SUE

### SUMMARY OF ARBITRATION AGREEMENT

This document, called "Arbitration Agreement," is part of the Contracts, defined below, that you and we are entering into. In this document, you and we are both promising to accept arbitration for a wide range of our disputes. Certain kinds of disputes are not covered; the Arbitration Agreement states which kinds those are. The Arbitration Agreement covers every other kind of dispute that might come up between you and us (by "us," we are including any company to which we might assign your Contracts and any company hired to enforce the Contracts). A dispute covered by the Arbitration Agreement could still be resolved in court but only if you and we both decide to use the court. If either you or we decide that the dispute should be resolved by arbitration, then the Arbitration Agreement obligates both of us to accept arbitration.

Arbitration is a formal process for resolving disputes that is different from court. An arbitration decision is binding on both sides, but the rules for the process are often more efficient than lawsuits in court.

This Arbitration Agreement means that (except for the disputes that are not covered, as mentioned above), you and we are both giving up our right to go to court to resolve disputes between us. In arbitration, our dispute will be decided by a neutral arbitrator and not by a judge or jury. As a result, **for the disputes that this Arbitration Agreement covers, you and we are both waiving our rights to a jury trial**. A dispute could end up before a jury if both you and we decide to use a court and a jury; but the Arbitration Agreement allows either you or we to insist on arbitration where there will be no jury.

If you or we choose arbitration, only our individual claims will be arbitrated. **In this Arbitration Agreement, you and we are waiving rights to obtain relief on a class basis or in a representative capacity**.

Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration you are entitled to a fair hearing, but arbitration procedures are generally simpler and more limited than rules that apply in court. The disputes between you and us described below will be governed by the American Arbitration Association Consumer Arbitration Rules, including such rules regarding the arbitrability of any claim or counterclaim, and including, where applicable, the American Arbitration Association Supplementary Rules for Multiple Case Filings.

This Arbitration Agreement gives you a time-limited option to opt out from your promise to accept arbitration. If you opt out, we will also not be obligated to accept arbitration, and certain other promises in this Arbitration Agreement will also end, as noted below. **To choose this option you must notify us in the 30 days after you sign this Arbitration Agreement, and you must follow the instructions under the heading "Your Limited Option to Opt Out Of Certain Provisions." You will need to act by that 30-day deadline or you lose this option**.

This is only a summary. As with all legal agreements, **please read the entire Arbitration Agreement carefully before you sign**. This Arbitration Agreement will substantially affect your rights.

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

1. **Definitions.** For the purposes of this Arbitration Agreement, the following terms shall have the following meanings:

1.1. "Agreement" means this Arbitration Agreement.

1.2. "Claims" has the broadest reasonable meaning, and means any claims, counterclaims, crossclaims, third-party claims, disputes, or controversies between You and Us, whether on an individual or a class basis, whether arising in contract, tort, equity, pursuant to statute, regulation, ordinance, or otherwise, relating to or arising from any of the following:

(a) the Vehicle, its features, mileage, condition, or accident history;
(b) advertisements, promotions, or oral or written statements regarding the Vehicle or the Contracts;
(c) registration of, title to, or liens on the Vehicle;
(d) delivery or pick-up of the Vehicle;
(e) Your purchase, sale, or trade-in of the Vehicle;
(f) the Contracts, and duties or relationships arising therefrom;
(g) financing terms, credit applications, or credit reporting;
(h) origination or servicing of the Contracts;
(i) any goods and services incidental to the Contracts or the Vehicle, such as warranty service, extended vehicle service, or insurance coverage;
(j) the collection of amounts owed by You, or the repossession of the Vehicle;
(k) the rescission or termination of the Contracts; or
(l) the collection or disclosure of Your personal information.

The definition of "Claims" in this Agreement is not intended to determine whether a particular dispute includes a single Claim or multiple Claims.

1.3. "Contracts" means the Retail Purchase Agreement (in Texas, the Buyer's Order), Retail Installment Contract and Security Agreement (in California, the Conditional Sales Contract and Security Agreement), Loan Agreement and Disclosure Statement, Loan and Security Agreement, Carvana Limited Warranty, GAP Addendum, Vehicle Purchase Agreement, Vehicle Return Agreement, and/or any contract You signed with Us that refers to or incorporates this Arbitration Agreement.

1.4. "Parties" collectively means You and Us. "Party" individually means You or Us.

1.5. "Us/We/Our" means Carvana, LLC, any purchaser, assignee, or loan servicer of the Contracts, including, but not limited to, Bridgecrest Acceptance Corporation, Bridgecrest Credit Company, LLC, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them. "Us/We/Our" also means any warranty servicer or other party providing products or services to the Vehicle in connection with or incidental to the Contracts, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.

1.6. "Vehicle" means any vehicle identified in the Contracts, vehicles You buy from Us, vehicles You sell or trade-in to Us, vehicles We finance or otherwise facilitate the purchase of, and vehicles regarding which We offer any services or products.

1.7. "You/Your" means you, any of your heirs or personal representatives, and any other person acting on your behalf or on whose behalf you are acting with respect to this transaction or disputes arising from or relating to this transaction.

1.8. "AAA" means the American Arbitration Association. "AAA Rules" means any rules adopted by AAA that are applicable to a given arbitration, by operation of this Agreement or pursuant to a decision by the AAA or an arbitrator in the manner permitted by this Agreement. "Consumer Rules" means the American Arbitration Association Consumer Rules. "Document Procedures" means the American Arbitration Association Procedures for the Resolution of Disputes through Document Submission. "Multiple Case Rules" means the American Arbitration Association Supplementary Rules for Multiple Case Filings.

2. **Promise to Arbitrate**. Except as stated below in Section 2.1, You or We can choose to demand that a Claim shall be resolved through binding and final arbitration instead of through court proceedings, and You and We promise to accept that demand.

2.1. **Exceptions**

   a. **Small Claims Exception**. If You file a Claim(s) in an individual capacity in small claims court or Your state's equivalent court, We cannot demand that You arbitrate those Claims. If We file a Claim(s) in small claims court or Your state's equivalent court, You cannot demand that We arbitrate those Claims. But if any of Your Claims or Our Claims are transferred or removed to a different court, then You or We can demand arbitration of those Claims that have been transferred or removed.

   b. **Active Service Member Exception**. You are not obligated to accept Our arbitration demand if You are, at the time of the demand, a "covered member" of the armed forces, as that term is defined in the Military Lending Act, or a dependent of a covered member; or if You were a covered member or a dependent of a covered member at the time You entered this Agreement.

   c. **Self-Help Exception**. You and We acknowledge that this Agreement covers only Claims that are adjudicated. To the extent permitted by law, You or We can exercise self-help remedies, such as non-judicial repossession and sale of collateral You have given as security for amounts owed under the Contracts, or setoff rights against amounts owed, without obtaining arbitration on these remedies beforehand.

   d. **Conflicting Law Exception**. If applicable law prohibits the application or enforcement of this Agreement with respect to a Claim (or portion of a Claim), You and We will not be obligated to accept arbitration of that Claim (or portion of that Claim). This exception will not prevent or limit Your or Our obligation to accept arbitration of any other Claim.

2.2. **New Claims; No Waiver**. Even if all Parties have elected to litigate a Claim in court, You or We may demand arbitration of that Claim (and any new Claim(s)), if any new Claim is asserted in that or any other lawsuit, and the other Party will be obligated to accept such arbitration demand. A new Claim for the purposes of this Section 2.2 includes any request for new or additional relief. If a Claim was previously asserted on an individual basis and is then modified or amended to seek relief on a class or representative basis, the Claim, alongside the request to litigate on a class or representative basis, will constitute a new Claim for purposes of this Section 2.2.

You and We agree that no conduct by either Party in the course of any litigation involving You or Us will waive any rights under this Agreement. In addition, no waiver of any provision of this Agreement will be effective or enforceable unless it is expressed in a writing signed by the Party that is waiving its rights.

**2.3.** **Individual Claims Only.** Claims may be submitted to arbitration on an individual basis only. Notwithstanding anything contained in this Agreement, a Claim cannot be arbitrated on a class basis, in a representative capacity, on behalf of the public (as a private attorney general, or otherwise), or on behalf of any other person. The arbitrator shall have no authority to combine or aggregate similar claims, to conduct any class, private attorney general, or representative proceeding, or to make an award to any person or entity not a named party in the arbitration. **The Parties acknowledge and agree that You and We are waiving any right to (1) participate in a class adjudication in arbitration, either as a class representative, class member, or class opponent; (2) act as a private attorney general in arbitration; or (3) otherwise seek relief in a representative capacity.**

You and We acknowledge and agree that nothing in this Agreement, including this Section 2.3, limits the applicability of the American Arbitration Association Supplementary Rules for Multiple Case Filings.

If, notwithstanding the express waivers in this Section 2.3, it is determined that You have a non-waivable right to seek a public injunction, to act as a private attorney general with respect to claims arising from or related to alleged injuries to person(s) that are not a named party to the arbitration, or to assert a Claim in a representative capacity with respect to claims arising from or related to alleged injuries to person(s) that are not a named party to the arbitration, then You may pursue such relief in court, but only after all other Claims and prayers for relief are first adjudicated in arbitration. During the pendency of any such arbitration the action in court shall be stayed.

**3.** **YOUR LIMITED OPTION TO OPT OUT OF CERTAIN PROVISIONS.** **Under this Section 3, You may opt out of Section 2 above, the provisions that obligate You and Us to accept arbitration on demand in many circumstances. If you exercise this option in accordance with this Section 3, neither You nor We will have the right to require arbitration of any Claims. Your exercise of the option under this Section 3 will not affect any other aspect of this Agreement or Your Contracts. For You to exercise this option, We must** receive **a signed writing (the "Opt-Out Notice") from You within 30 days of the date You sign this Arbitration Agreement, stating that You are opting out of Section 2 of the Agreement. The Opt-Out Notice must include Your name, address, the Vehicle Identification Number ("VIN") of any vehicle identified in the Contracts, and the date you signed the Arbitration Agreement. You must email the notice to** arbitrationoptout@carvana.com. **Your Opt-Out Notices must be** received **by 11:59pm, Arizona time, on the 30th day from the date You signed this Arbitration Agreement. If the Opt-Out Notice is sent on Your behalf by a third party, then such third party must include evidence of his or her authority to submit the Opt-Out Notice on Your behalf. If You exercise the option under this Section 3, opting out of Section 2 will not opt You out of any other arbitration agreement between You and Us.**

**4.** **Arbitrability Delegated to Arbitrator.** Any dispute relating to the validity, enforceability, interpretation, or scope of this Agreement, the arbitrability of any Claim, or other gateway issues of arbitrability, or any alleged waiver of this Agreement shall be exclusively resolved by the arbitrator and not by a court.

5. **Arbitration Administrator.** Any arbitration shall be administered by the American Arbitration Association ("AAA"). If, for any reason, AAA is unable, unwilling, or ceases to be the administrator, then You will have twenty calendar days to choose a substitute administrator subject to Our approval, which may not be unreasonably withheld. If You do not select a new administrator within that period, then We will do so.

6. **Arbitration Procedure.** Any arbitration shall be resolved by a single arbitrator in accordance with (1) the Federal Arbitration Act ("FAA"); (2) this Agreement; and (3) the AAA Rules in effect at the time the arbitration is commenced, including AAA Rules regarding the arbitrability of any claim or counterclaim, and including the Consumer Rules and, to the extent applicable, the Document Procedures and/or the Multiple Case Rules. You and We both agree that for a dispute qualifying for the Document Procedures, neither Party shall have the right to a hearing outside the Document Procedures, though either Party may ask the arbitrator to decide that such a hearing is necessary. The AAA Rules may be obtained at many of AAA's offices nationwide, or online at www.adr.org/Rules. In the event of any inconsistency between the AAA Rules and this Agreement, this Agreement shall prevail.

   To begin an arbitration proceeding, You must send to Carvana a demand for arbitration describing the nature and basis of Your claims, the relief sought, and (if the demand is submitted by someone other than You) Your express authorization to bring the arbitration demand. The demand must be sent by FedEx, UPS, or USPS to Attn: Carvana Legal, 300 E. Rio Salado Pkwy, Tempe, AZ 85281. You must also contact AAA and follow its rules and procedures for commencing an arbitration. In any demand for arbitration filed with AAA, the business address for Carvana, LLC, and for any Carvana affiliate shall be described as 300 E. Rio Salado, Tempe, AZ 82581.

7. **Arbitration Hearing Location.** Unless prohibited by law, if the arbitrator schedules an oral arbitration hearing, then any such hearing shall be conducted virtually unless the arbitrator determines that a fair hearing requires that the hearing be conducted live. If the arbitration hearing is conducted live, then, unless the Parties agree to a different location or the AAA determines otherwise pursuant to its Multiple Case Rules, the arbitration hearing shall take place in the federal judicial district of Your residence.

8. **Special Procedures for Multiple Case Filings.** If twenty-five (25) or more similar claims are asserted against Us by the same or coordinated counsel or are otherwise coordinated, You understand and agree that the resolution of your dispute might be delayed. You also agree to the following coordinated bellwether process and application of the Multiple Case Rules. Counsel for the claimants and counsel for Us shall each select five (5) cases (per side) to proceed first in individual arbitration proceedings as part of a bellwether process. The remaining cases shall not be filed or deemed filed in arbitration nor shall any AAA fees be assessed in connection with those cases until they are selected to proceed to individual arbitration proceedings as part of a bellwether process. If the Parties are unable to resolve the remaining cases after the conclusion of the initial ten (10) proceedings, each side shall select another five (5) cases (per side) to proceed to individual arbitration proceedings as part of a second bellwether process. The remaining cases shall not be filed or deemed filed in arbitration nor shall any AAA fees be assessed in connection with those cases until they are selected to proceed to individual arbitration proceedings as part of a bellwether process. A single arbitrator shall preside over each case. This staged process shall continue, consistent with the parameters identified above, until all the Claims included in these coordinated filings, including Your case, are adjudicated or otherwise resolved. The statute of limitations and any filing fee deadlines

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

shall be tolled for claims subject to this Section 8 from the time Your case is filed until the time Your case is selected for a bellwether process, withdrawn, or otherwise resolved.

9. **No Indirect Damages.** The arbitrator has no authority to award consequential, incidental, or punitive damages, damages for loss of use, loss of time, loss of profits or income, or any other similar damages not measured by a Party's actual direct damages, except as may be required by law.

10. **Compelling Arbitration.** If You or We file a lawsuit in court asserting Claim(s) that are subject to arbitration and the other Party files a motion to compel arbitration that is granted, then it will be the responsibility of the Party prosecuting the Claim(s) to commence the arbitration proceeding.

    10.1. **Fee-shifting for Compelling Arbitration.** If You file a motion to compel arbitration that is granted, then You are entitled to an award of Your reasonable attorneys' fees incurred to obtain such relief, as determined by the arbitrator. Your attorneys' fee award referenced in this Section 10.1 shall be immediately collectible. If We file a motion to compel arbitration that is granted, then We are entitled to an award of Our reasonable attorneys' fees incurred to obtain such relief, as determined by the arbitrator. Our attorneys' fee award referenced in this Section 10.1 is only collectible as a setoff against a final arbitration award, if any, that You obtain against Us.

11. **Attorney Fees.** To the greatest extent permitted by applicable law, the Parties agree that the arbitrator shall take into account the Parties' settlement offers as well as any settlement demands in relation to any relief ultimately obtained through arbitration in evaluating any potential award of attorneys' fees. This includes determining whether any Party prevailed in the arbitration, and if so, which Party, as well as the reasonableness of any request for attorneys' fees. The arbitrator shall also be entitled to apply any statute, rule, regulation, or other authority providing for an award of and/or prohibiting the recovery of attorneys' fees, costs, or expenses, in whole or in part, based upon the Parties' settlement offers or demands that could be applied by a court under applicable law. The arbitrator is also authorized to award attorneys' fees if it determines that any Claim was frivolous, brought or maintained for an improper purpose, and/or brought or maintained in bad faith.

12. **Judgment; Effect of Arbitration Award.** Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, except as may be required by law, neither a Party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both Parties. No arbitration award involving the Parties will have any preclusive effect as to issues or Claims in any dispute involving anyone who is not a Party to the arbitration. Nor will an arbitration award in prior disputes involving other parties have preclusive effect in an arbitration between the Parties to this Agreement.

13. **Notice and Cure; Special Payment.** Prior to initiating a Claim, You may send Us a written Claim Notice, by email to Legal@Carvana.com with the subject line "Claim Notice," that describes the basis of Your Claims and the amount You would accept in resolution of the Claims, and a reasonable opportunity, not less than 30 days, to resolve the Claims. If (i) You submit a Claim Notice in accordance with this Section 13; (ii) You cooperate with Us by promptly providing any information We reasonably request; (iii) We refuse to provide You with the relief You request; and (iv) an arbitrator subsequently determines that You were entitled to such relief or greater relief, not counting attorneys' fees or arbitration costs, You will be entitled to a minimum award of at least $7,500 (not counting any fees to which You are entitled under Section 11) plus Your reasonable attorneys' fees and witness costs.

14. **Finality of Arbitration.** The arbitrator's decision on all matters, including any interim or final awards, will be final and binding except as may be provided in the FAA.

THIS IS A COPY
This is a copy view of the authoritative Copy held
by the Designated Custodian

15. **Applicable Law.** Because the Contracts involve a transaction in interstate commerce, the FAA governs this Agreement and any arbitration pursuant to this Agreement to the exclusion of any state law inconsistent with the FAA. The arbitrator shall apply applicable statutes of limitations. Except as otherwise stated in this Agreement, the arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. The arbitrator is not required to apply federal or state rules of civil procedure or evidence.

16. **Acknowledgement of Consideration and Integration.** You and We each acknowledge and agree that this Agreement is supported by valuable consideration, including the promises and consideration exchanged pursuant to the Contracts. You and We each acknowledge and agree that this Agreement is part of the Contracts, and that each Party regards the consideration contained within this Agreement as integral to the decision to enter the Contracts.

17. **Severability.** If any provision of this Arbitration Agreement is found to be invalid or unenforceable, then that specific provision shall be of no force and effect and shall be severed, but the remainder of this Agreement shall continue in full force and effect. If a court or arbitrator limits or voids any portion of Section 2.3 captioned "Individual Claims Only" in any proceeding, then, subject to the right to appeal such a decision, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction and not arbitration, but the portions of Section 2.3 captioned Individual Claims Only that are enforceable shall be enforced in arbitration.

18. **Survival.** This Agreement survives Your full payment under the Contracts, termination or rescission of the Contracts, and to the extent permitted by law, Your or Our bankruptcy.

19. **Conflicts.** In the event of any conflict or inconsistency between this Agreement and the Contracts, this Agreement shall prevail. Any right of any Party to demand arbitration on an individual basis under this Agreement will prevail over any prior agreement that is inconsistent with that right.

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND, AND EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

Signed by:

_____         _____
Customer Signature                         Co-Signer Signature

Date: _____9/24/2024_____         Date: _____


By: _____
Authorized Signature

THIS IS A COPY
This is a copy view of the authoritative Copy held
by the designated custodian

Michigan Department of State

# APPOINTMENT OF AGENT

### For a Vehicle, Watercraft, or Mobile Home

NOTE: This form CANNOT be used for either of the following:
- To apply for an instant title, unless the Agent is a licensed vehicle dealer.
- To appoint an Agent who would be signing a title, or application for title, as both the buyer and seller of a vehicle, watercraft, or mobile home.

All information must be completed in ink.

I appoint   CARVANA, LLC
_____
(agent's name)

Agent's address:   600 S 94th AVE, TOLLESON, AZ 85353-2820
_____

_____

Agent's Driver License
Number or ID Card Number: _____

as my agent to sign my name to legal documents pertaining to the sale, purchase or titling of the unit described below which is required to be titled under Michigan law.

| Year 2017 | VIN ████████████ 1105 |
|-----------|------------------------|
| Make Cadillac | License Plate Number (if any) |

### Vehicle, Watercraft, or Mobile Home Owner Information

| Owner's Name Karlos Latwian Harris | |
|---|---|
| Owner's Street Address 8524 Spinnaker Way | City Ypsilanti |
| State MI | Zip Code 48197-7100 | Daytime Phone Number ████████ |
| Owner's Driver License or ID Card Number | Today's Date 09/27/2024 |

**A false statement in connection with a title transaction is a crime.**

**NOTE: Owner must provide a photocopy of their valid driver's license or state ID card with this form.  Agent will present this completed form and required photocopy to the Secretary of State branch.**

Owner's Signature:   **X** _____ Signed by: _____
B55CD05F209A469...

Authorities granted under Public Acts 300 of 1949, 451 of 1994, and 96 of 1987, as amended. TR-128 (11/22)

## CARVANA

# GAP Addendum

## Vehicle Information

| Vehicle Identification Number (VIN) | Year | Make | Model |
|---|---|---|---|
| 1105 | 2017 | Cadillac | EscaladeESV |

| MSRP (New) / J.D. Power (Used) | Odometer Reading |
|---|---|
| 39990.00 | 74372 |

## Customer/Borrower/Lessee

| First & Last Name or Company Name | Co-Borrower / Co-Lessee Name |
|---|---|
| Karlos L Harris | |

| Address | Email Address |
|---|---|
| 8524 Spinnaker Way | |

| City | State | Zip Code | Phone Number |
|---|---|---|---|
| Ypsilanti | MI | 48197-7100 | |

## Financial Agreement

☑ Installment Sale   ☐ Balloon   ☐ Loan   ☐ Lease

| Effective Date | Term |
|---|---|
| 09/27/2024 | 72 |

| Amount Financed/Lease Cap Cost | Finance Rate/Lease Charge |
|---|---|
| 38477.40 | 25.0 |

## Guaranteed Asset Protection (GAP)

**The Charge to You for this GAP Addendum:**
1095.00

**Maximum Amount Financed/Lease Cap Cost: $200,000** (FMCC Maximum Amount Financed for personal use is limited to $100,000)

☐ COMMERCIAL USE/REGISTRATION: (as defined in VI., D.): AVAILABLE ONLY FOR MOTOR VEHICLES UP TO 16,000 POUNDS GVWR-Not available for FMCC financed contracts (see IV.C. for other exclusions).

**The Maximum Deductible Amount for automobile physical damage insurance: $1,000** (see section IX for Alaska exclusion).

**Maximum Liability:** If the amount financed or lease cap cost exceeds 150% of the lowest of (a) the **Vehicle** purchase price or agreed upon value as shown on the **Financial Agreement,** (b) MSRP, or (c) J.D. Power or equivalent retail book value, the settlement will be reduced in proportion to the amount that exceeds the stated limit of 150%. In no event will this GAP Addendum waive any amount in excess of fifty-thousand dollars ($50,000).

**Maximum GAP and Financial Agreement Term:** NINETY SIX (96) MONTHS FOR NEW AND USED VEHICLES (Limited to 84 months in California).

**PROGRAM ADMINISTRATOR:** Universal Warranty Corporation PO Box 6543, Chicago, IL 60680   800-631-5590   www.allyclaims.com

## Financial Institution / Seller

| Name | Seller Name/Seller ID (Required) | |
|---|---|---|
| Carvana | CARVANA, LLC | 794287 |

| Address | Address |
|---|---|
| 1930 W Rio Salado Pkwy | 1930 W RIO SALADO PKWY |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Tempe | AZ | 85281 | TEMPE | AZ | 85281-2339 |

| Phone Number | Phone Number | Employee ID (Optional) |
|---|---|---|
| 800-333-4554 | | 8989133 |

You have read the entire disclosures and terms of this GAP Addendum and You agree to all of the terms of this GAP Addendum. You understand that neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease may be conditioned upon the purchase of this GAP Addendum. This GAP Addendum is optional and will not be provided unless You sign below and pay the charges as shown above. This GAP Addendum may not cancel or waive the entire amount owed under the Financial Agreement at the time of loss. THIS GAP ADDENDUM IS NOT A CREDIT INSURANCE POLICY AND NEITHER DOES IT PROVIDE PHYSICAL DAMAGE COVERAGE NOR ELIMINATE YOUR OBLIGATION TO INSURE YOUR VEHICLE UNDER APPLICABLE STATE LAW. YOU MAY WISH TO CONSULT AN INSURANCE AGENT TO DETERMINE WHETHER SIMILAR COVERAGE MAY BE OBTAINED AND AT WHAT COST. Unless You provide proof that the Financial Agreement has been terminated, all refunds will be made payable to the Financial Institution and may be applied to reduce the total amount owed under the Financial Agreement.

## Signature

☒ **You want to purchase this GAP Addendum**

| Customer/Borrower/Lessee Signature | Co-Borrower/Co-Lessee Signature | Date |
|---|---|---|
| Signed by: D55CC05F208A4E0 | | 09/27/2024 |

| Seller/Title Representative Name | Seller Representative Signature | Date |
|---|---|---|
| Paul Breaux | s/s Paul Breaux | 09/27/2024 |

©2021 Ally Financial. All rights reserved.
Ally is a registered service mark of Ally Financial.

1 of 6

GAP-150-PRO (04-21)

9/24/2024

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

THIS IS A COPY
This is a copy view of the authoritative Copy held by the designated custodian

# GAP Addendum

## Definitions

This Guaranteed Asset Protection ("GAP") Waiver Addendum ("Addendum") is not insurance; it is a debt cancellation agreement which amends and becomes a part of Your **Vehicle** Conditional Sale Agreement ("Contract"). This Addendum is entered between the **Customer,** and the Lender (referred herein as "We" or "Us"). We have appointed Universal Warranty Corporation as the **Administrator** of this Addendum. The **Administrator** is not a party of this Addendum and its sole responsibility is to perform the administration for this Addendum.

## Key Terms

The following words are important for the purpose of this Addendum and the following terms shall mean:

**"Actual Cash Value"** means the value of Your **Vehicle** on the date of loss as determined by Your **Insurer**.

**"Administrator"** or **"Program Administrator"** means Universal Warranty Corporation PO Box 6543, Chicago, IL 60680 800-631-5590
(www.allyclaims.com)

**"Commercial Use/Registration"** means utilization of the **Vehicle** for any commercial purpose. Commercial purpose is defined as using a motor **Vehicle** for a purpose other than personal, family or household.

**"Customer"** means the Customer/Borrower/Lessee/Co-Borrower/Co-Lessee purchasing the **Vehicle** as stated in the application section of this Addendum. You or Your refers to the **Customer.**

**"Financial Agreement"** means any loan, finance or security or other agreements or documents entered by the Lender and Customer.

**"Insurer"** and **"Insurance Company"** mean an insurance company providing the **Customer** with comprehensive and collision coverage or all perils coverage on the **Vehicle.**

**"Seller"** means the seller listed in the Contract Registration.

**"Total Loss"** means a total or constructive total loss as determined by the **Insurer** of Your **Vehicle**.

**"Vehicle"** or **"Your Vehicle"** means the **Vehicle** shown on **Vehicle** Information Section of the Contract Registration including all options and equipment and is a four wheel private passenger **Vehicle**, van, pickup, or light truck that does not exceed a gross **Vehicle** weight rating (GVWR) of 16,000 pounds.

THIS IS A COPY
This is a true and correct copy of the authoritative Copy held
by the designated custodian

# GAP Addendum

## I. Agreement

The **Customer/Borrower/Lessee/Co-Borrower/Co-Lessee** ("You", "Your") and the **Seller** named above agree to amend the provisions of the **Financial Agreement** described above as follows:

A. In the event Your **Vehicle** is declared a **Total Loss** by Your **Insurance company** providing automobile physical damage coverage ("**Insurer**") as a result of theft or damage, the **Seller** agrees to waive the difference between the Outstanding Balance (as defined in I.A.1. below) and the **Insurer's** Payment (as defined in I.A.2. below):

1. The Outstanding Balance shall mean the amount owed under Your **Financial Agreement** on the date of loss, LESS any:
   a. Late charges, repossession and collection fees, returned payment charges, finance charges incurred due to late payments, and other charges incurred because you failed to make payments on the due date;
   b. past due payments exceeding fifteen (15) days past due, deferred or extended payments, finance charges incurred as a result of the first payment due date being greater than forty five (45) days from the effective date of the **Financial Agreement** and any charges associated with extensions or deferments;
   c. any refund amounts due from insurance, maintenance, service, or other similar contracts;
   d. amounts financed under the **Financial Agreement** for optional equipment or **Vehicle** modifications that are not insured;
   e. amounts financed under the **Financial Agreement** that exceed the Maximum Eligibility Limit; and
   f. Unearned finance, lease or service charges, disposal fees, refundable prepaid taxes and fees, or other items added to the **Financial Agreement** after the Effective Date of the **Financial Agreement**, including any fees and interest charges associated with any such amount;

2. The **Insurer's** Payment shall mean the settlement You receive from Your **Insurer** based on the **Actual Cash Value** of Your **Vehicle**, PLUS or NET of any:
   a. deductible amount under Your automobile physical damage coverage in excess of the maximum deductible amount;
   b. deductions from the **Insurer's** settlement due to wear and tear, prior damage, and other condition adjustments;
   c. deductions for unpaid insurance premiums;
   d. deductions for salvage, towing and storage; and
   e. all other payments (including supplemental payments for taxes owed) made from insurance companies and others on account of their liability for loss to Your **Vehicle**.

B. If Your **Vehicle** did not have applicable automobile physical damage insurance coverage in effect at the time of loss and there is no **Insurer's** Payment, the **Program Administrator** will (i) determine whether Your **Vehicle** is a **Total Loss** based on insurance industry standards and (ii) if Your **Vehicle** is a **Total Loss**, determine the amount to be waived under I.A. as if there were an **Insurer's** Payment for the loss equal to the **Actual Cash Value** of Your **Vehicle** at the time of loss based on the J.D. Power Guide and assuming a $0 deductible and no other deductions from the payment.

## II. Term of Agreement

This GAP Addendum is effective on the **Financial Agreement** effective date and expires on the earliest of:

A. the date the **Financial Agreement** is originally scheduled to terminate;
B. the date of early termination of the **Financial Agreement** including the refinancing of Your **Vehicle**;
C. the date of repossession or surrender of Your **Vehicle**;
D. the date corresponding to the **Maximum GAP and Financial Agreement Term**;
E. the date of the **Total Loss** of Your **Vehicle**.

## III. Cancellation

**You may cancel this GAP Addendum at any time during its term for any or no reason. If You cancel this GAP Addendum within sixty (60) days of purchase, You will receive a full refund provided no claims have been made. If You cancel this GAP Addendum after sixty (60) days of purchase, any cancellation refund will be calculated pro rata by time, unless otherwise required by state law.**

A $50 cancellation fee applies to all cancellations made after sixty (60) days of purchase. To cancel this GAP Addendum You may contact the **Program Administrator** at 1-800-631-5590 or return this addendum to the **Seller**. If the **Financial Agreement** is terminated, Your request for cancellation or early termination refund must be made in writing to the **Seller** or **Administrator** within 90 days of the event that terminated the **Financial Agreement**. If You do not receive notice that Your refund has been processed within sixty (60) days of the date the request for cancellation was made or need assistance requesting cancellation, contact the **Program Administrator** identified in this GAP Addendum.

If this GAP Addendum expires pursuant to Section II(C), notification must be provided to **Program Administrator** within ninety (90) days of such expiration by You, the Financial Institution, or any assignee or successor in interest of the Financial Institution. If such notification is not provided, the charge for the GAP addendum will be deemed fully earned and no refund will be issued.

## IV. Exclusions and Limitations

A. This GAP Addendum is void if:
1. purchased after the effective date of the **Financial Agreement**;
2. the **Financial Agreement** does not have equal scheduled monthly payments for the full term of the **Financial Agreement**, except for a **Financial Agreement** having equal scheduled monthly payments for the full term with the exception of a single balloon payment at maturity;
3. the amount financed/lease cap exceeds the stated maximum; or
4. the **Financial Agreement** term exceeds the stated maximum term.

B. Limit of Liability: In no event will this GAP Addendum waive any amount in excess of fifty-thousand dollars ($50,000).

C. This GAP Addendum does not apply:
1. to losses arising out of events:
   a. occurring prior to the effective date of this GAP Addendum or after You return Your **Vehicle** to the **Seller**;

GAP-150-PRO (04-21)

THIS IS A COPY
Case Cv-lmago-002 DEG GPR Doc No. Page0-76 Filed 07/11/25 Page 76 of 230

circuit of indirect cause of any disposal, fraudulent, criminal or illegal act by You or Your agent or anyone using the **Vehicle** with Your specific or implied permissive use, including but not limited to, driving under the influence of alcohol/drugs or the commission of any misdemeanor or felony;

    c. arising out of any racing, speed contest or other competitive driving;

    d. occurring outside of the United States or Canada; or

    e. excluded or denied by Your **Insurer**, except as provided under Section I.B. of this GAP Addendum.

  2. to certain types of **Vehicles**. The following **Vehicles** are excluded from all coverage including Commercial Use/Registration:

    a. **Vehicles** used exclusively for livery, taxicabs, hire & rental;

    b. **Vehicles** used for competitive driving, racing, and off-road use;

    c. **Vehicles** equipped with or identified as snowplows;

    d. **Vehicles** with gross vehicle weight rating (GVWR) exceeding 16,000 pounds;

    e. **Vehicles** used for delivery services, as pool cars or emergency **Vehicles**;

    f. Trailers, special commercial optional equipment, accessories and body components.

  3. if You fail to comply with any term or condition of this GAP Addendum.

## V. Duties After a Total Loss

In the event of a **Total Loss** of Your **Vehicle**, You must:

A. notify the **Program Administrator** within ninety (90) days of receipt of Your **Insurer's** Payment or within ninety (90) days of the date Your Financial Institution notifies You of any deficiency balance owned, whichever is later. If You did not have automobile physical damage insurance for Your **Vehicle**, You must notify the **Program Administrator** within ninety (90) days of the date of accident, damage or theft;

B. File Your claim with the **Program Administrator** or directly at www.allyclaims.com;

C. cooperate with the **Program Administrator** and the **Seller**; and

D. Provide the **Program Administrator** a copy of the following documents:

    Your **Vehicle's**:

    1. factory invoice/**Vehicle** information form

    2. auto insurance policy

    3. GAP Addendum

    4. **Financial Agreement**

    5. purchase agreement/bill of sale

    6. aftermarket product refund amounts

    7. payment history with outstanding balance

    8. payoff quote

    **Insurer's**:

    1. market valuation report

    2. settlement break down

    3. settlement check or proof of payment

    Additionally:

    1. a police report (if filed)

    2. any additional reasonable documentation requested by either the **Program Administrator** or **Seller**.

## VI. Other Terms

A. You grant the **Program Administrator** the right to recover any amounts payable under Your automobile physical damage coverage that was not paid by Your **Insurer** after a **Total Loss**. You shall cooperate with the **Program Administrator** to do whatever is necessary to enable the **Program Administrator** to exercise its rights and do nothing to prejudice the **Program Administrator**. This may include, but is not limited to, demanding full payment under Your automobile insurance policy from Your **Insurer**. If You recover amounts over the **Insurer's** Payment, or any payment from any **insurer**, warrantor, or obligor on any coverage paying benefits as a result of a **Total Loss** of Your **Vehicle**, You shall reimburse the **Program Administrator** to the extent of such amounts, up to the amount waived for You under this GAP Addendum.

B. This GAP Addendum is non-transferable, however if a Issuer/Financial Institution assigns, sells or transfers a **Financial Agreement**, the GAP Addendum remains a part of the **Financial agreement**.

C. **YOUR BENEFITS MAY DECREASE OVER THE TERM OF YOUR FINANCIAL AGREEMENT.**

D. An automobile, van or light truck utilized for any commercial use is excluded from coverage unless the COMMERCIAL USE/REGISTRATION option has been purchased. A **Vehicle** registered or insured as commercial or to a business shall be deemed commercial or a personal use **Vehicle** that is incidentally used for a commercial purpose.

E. The charge for this GAP Addendum will be deemed fully earned and no refund will apply when Your **Vehicle** is declared a covered **Total Loss** or if the waiver provides a benefit.

F. If an Issuer/Financial Institution assigns, sells or transfers the **Financial Agreement**, the GAP Addendum remains a part of the **Financial agreement**.

G. **Vehicles** with greater than five thousand (5,000) miles or greater are considered used **Vehicles**.

## VII. Fraud and Misrepresentation

This GAP Addendum is issued in reliance upon the truth of all representations made by You. If You have concealed or misrepresented any material fact(s) concerning this GAP Addendum, or in case of fraud, attempted fraud or the false swearing by You affecting any matter relating to this GAP Addendum, whether before or after the **Total Loss** of Your **Vehicle**, this GAP Addendum may be voided and all charges will be returned, less a $50.00 processing fee.

GAP-150-PRO (04-21)

Docusign Envelope ID: 68636EF8-034A-4D0E-867C-F691D4A6B9CA

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

## VIII. Finance Company Disclosures

**For Ford Credit (Ford Motor Credit Company) Financed Contracts Only:**

Cancellation and processing fees are not applicable in Colorado, Indiana, Oregon and South Carolina.

Maximum GVWR for personal use is limited to 12,500 pounds and COMMERCIAL USE/REGISTRATION is not available.

Notwithstanding Section IV.A.2, this GAP Addendum is acceptable for Ford Flex Buy contracts. For Ford Flex Buy contracts, the amount waived will be calculated by amortizing the **Financial Agreement** according to its payment schedule. Not available in Michigan, New Hampshire, North Carolina, Ohio, Pennsylvania and Virginia.

**VI. Other Terms E is replaced with the following:**

The charge for this GAP Addendum will be deemed fully earned and no refund will apply when Your **Vehicle** is declared a **Total Loss** and if the waiver provides a benefit.

## IX. State Provisions

- **Alabama:** In Alabama, this is a Debt Cancellation Waiver. All references to "GAP Addendum" are replaced with "Debt Cancellation Waiver." The cost of the Debt Cancellation Waiver is not regulated and You should determine whether the cost of the Contract is reasonable in relation to the protection afforded by the Debt Cancellation waiver. In the event of cancellation of the GAP waiver due to early termination of the finance agreement, the creditor shall provide, or cause the **Administrator** or retail seller to provide, with 60 days of termination, any refund to a borrower without requiring the borrower to request cancellation of the waiver.

- **Alaska:** Coverage for underlying insurance deductible is not available.

- **Arkansas:** The cost of this GAP Addendum is not regulated and You have the responsibility to determine whether the cost of the GAP Addendum is reasonable in relation to the protection afforded by the GAP Addendum.

- **California:** The Maximum GAP and Financial Agreement Term is 84 months and the Maximum Amount Financed/Lease Cap Cost is $125,000.

- **Colorado:** The cancellation fee and processing fee are not applicable. No written notification is required for early termination of this GAP Addendum. You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost. This GAP addendum is not a substitute for collision or property damage insurance. If You did not have automobile physical damage insurance for Your **Vehicle** You are not required to notify the **Program Administrator** within ninety (90) days of the date of accident, damage or theft. Section 1.A is replaced with the following: The Outstanding Balance may not be re-amortized for any reason and shall mean the amount owed under Your Financial Agreement on the date of loss, LESS amounts previously owed for unpaid installments, legally permitted delinquency fees, insufficient funds checks, premiums for creditor-imposed property damage insurance, and deferral fees. All holders and assignees of this consumer credit transaction are subject to all claims and defenses which the consumer could assert against the original creditor resulting from the consumers purchase of guaranteed automobile protection.

- **Georgia:** In order to receive a refund, You must, in accordance with any applicable terms of the waiver, provide a written request to the creditor, administrator or other party within 90 days after Your decision to cancel the waiver or the occurrence of the event terminating the finance agreement.

- **Illinois:** Consideration for a debt cancellation product may be retained by the Seller or Holder/Financial Institution and the consideration may be included in the amount charged to the Borrower/Lessee so long as the Seller discloses that the Issuer or Holder/Financial Institution may receive something of value in connection with the purchase.

  For GAP on lease contracts, Section 1.A.1.a, b & c are replaced with the following:
  - a. any deductible amount applicable to any insurance policy maintained by the lessee;
  - b. any past due payments owed by the lessee as of the time of the receipt by the lessor of the insurance proceeds;
  - c. any other amount due because of the lessee's default.

- **Indiana:** The cancellation and processing fees are not applicable. GAP coverage is not available if the amount financed under the consumer credit sale (not including the cost of the GAP agreement, the cost of any credit insurance, and the cost of any warranties or service agreements) is less than eighty percent (80%) of the manufacturer's suggested retail price (MSRP), in the case of a new motor **Vehicle**, or the J.D. Power average retail value, in the case of a used motor **Vehicle**. Upon notification of prepayment in full of the finance agreement Your GAP coverage is automatically terminated and You are not required to request cancellation and a refund.

- **Iowa:** No written notification is required for early termination of this GAP Addendum.

- **Kansas:** The cancellation fee and processing fee are not applicable. **This GAP Addendum may not cancel or waive the entire amount owed under the Financial Agreement at the time of loss. If you have any questions or need assistance in submitting a** claim **contact the Program Administrator, Universal Warranty Corporation, Toll Free at: 1-800-631-5590.** You may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, http://www.osbckansas.org/, with any questions or **complaints.**

- **Missouri:** The cancellation fee and processing fee are not applicable.

- **New Hampshire:** The cancellation fee and processing fee are not applicable.

  For GAP on lease contracts, Section 1.A.1.a, b & c are replaced with the following:
  - a. any deductible amount applicable to any insurance policy maintained by the lessee;
  - b. any past due payments owed by the lessee as of the time of the receipt by the lessor of the insurance proceeds;
  - c. any other amount due because of the lessee's default.

THIS IS A COPY
This is a copy view. Right of administrative Copy held
by the designated custodian

- **New Jersey:** The Financial Institution must provide, or cause the **Program Administrator** or **Seller** to provide any cancellation refund within 60 days of the event terminating the finance agreement, without requiring the borrower to request the refund, or within 60 days of the receipt of a borrower's cancellation of the waiver. Cancellation fees will be no more than $50. Upon notification of prepayment in full of the finance agreement Your GAP coverage is automatically terminated and You are not required to request cancellation and a refund.

- **New Mexico:** The cancellation fee and processing fee are not applicable.

- **Nebraska:** That a guaranteed asset protection waiver is not insurance and is not regulated by the Department of Insurance and the guaranteed asset protection waiver remains a part of the finance agreement upon the assignment, sale, or transfer of such finance agreement by the creditor or the creditor's designee.

- **NEVADA: A GUARANTEED ASSET PROTECTION WAIVER IS NOT A POLICY OF LIABILITY OR CASUALTY INSURANCE AND DOES NOT SATISFY THE REQUIREMENT TO MAINTAIN LIABILITY INSURANCE PURSUANT TO NRS 485.185; AND FAILURE TO MAKE A TIMELY PAYMENT UNDER THE TERMS OF THE FINANCE AGREEMENT MAY VOID THE GUARANTEED ASSET PROTECTION WAIVER.**

- **Oregon:** If the GAP Addendum is cancelled as a result of the termination of the finance agreement, then any cancellation refund shall be provided without requiring the borrower to apply or submit a claim for the refund.

- **South Carolina:** The cancellation fee and processing fee are not applicable. **THIS GAP WAIVER IS NOT REQUIRED TO OBTAIN CREDIT, NOR TO OBTAIN CERTAIN TERMS OF CREDIT OR TO PURCHASE THE RELATED MOTOR VEHICLE.** No GAP Addendum will be issued for the Covered **Vehicle** with a Manufacturer's Suggested Retail Price (MSRP) or J.D. Power retail value of more than $200,000, if the amount financed exceeds $200,000, or if the amount financed, less the cost of GAP, Credit Insurance, less the cost of service Contracts and or warranties, is less than 80% of the MSRP for new **Vehicles** and the J.D. Power retail value for used **Vehicles**. This GAP waiver is not insurance and does not take the place of collision, comprehensive, or any other form of insurance on the motor **Vehicle**.

- **Tennessee:** COMMERCIAL USE/REGISTRATION means a motor **Vehicle** used primarily for a purpose other than personal, family or household use. The cost of this GAP Addendum is not regulated and You have the responsibility to determine whether the cost of this GAP Addendum is reasonable in relation to the protection afforded by this GAP Addendum.

- **Vermont:** The cancellation fee and processing fee are not applicable. The Issuer must assign, sell or transfer, within 15 business days, the financing contract to a Financial Institution/Lender as defined in subdivision 11101(32) of Title 8 or a credit union or entity licensed under subdivision 2201(a)(1) or (3) of Title 8, or this GAP Addendum is void and You will receive a full refund of the charge of this GAP Addendum.

- **Washington:** If the cancellation of this GAP Addendum occurs as a result of a default under the Financial Agreement or the repossession of the motor vehicle associated with the Financial Agreement, any refund due may be paid directly to the Financial Institution. Any cancellation refund may be applied by the Financial Institution as a reduction of the overall amount owed under the Financial Agreement, if the cost of this GAP Addendum was included in the financing of the motor vehicle. This GAP Addendum is not credit insurance, nor does it eliminate Your obligation to insure the motor vehicle as provided by Washington law. Purchasing this GAP Addendum does not eliminate Your rights and obligations under the vendor single-interest and collateral protection laws of the state.

- **West Virginia:** Once activation of waiver benefits has been initiated, and until such time as the request for a benefit under the GAP waiver is resolved, the GAP waiver shall not be terminated or canceled, nor shall a request for a benefit under the GAP waiver be denied, by the creditor, administrator or other designated party, solely due to the borrower's failure to make monthly payments owed for the GAP waiver purchase price.

- **Wyoming:** The cancellation fee and processing fee are not applicable.

GAP-150-PRO (04-21)

**Exhibit "B"**



**CARVANA**

**VEHICLE RETURN AGREEMENT**

Vehicle Return Date: _____

Purchase ID: 44114279

Name: Karlos Latwian Harris

Address: 8524 Spinnaker Way

Address Secondary: _____

City: Ypsilanti

State: MI

Year: 2019

Make: Cadillac

Model: Escalade ESV

VIN: ████████████29412

Odometer at Return: _____

Stock #: 2003137015

Zip: 48197

By signing below you ("You") agree to return the vehicle listed above (the "Vehicle") and agree to terminate the Retail Purchase Agreement (in Texas, the Buyer's Order) and Retail Installment Contract (in California, the Conditional Sales Contract) executed in connection with the purchase of the Vehicle (collectively, the "Contracts"). Notwithstanding the foregoing, the arbitration agreement and Vehicle Purchase Agreement entered into between You and Carvana survives the termination of the Contracts and remains in full force and effect.

**Representations and Warranties:** By signing below, You also represent and warrant as follows:

1.  The Vehicle is free of all liens and encumbrances other than the lien created by any retail installment contract or other finance agreement executed by You in connection with the purchase of the Vehicle;

2.  The Vehicle is in the same condition You received it except for reasonable wear and tear (evidence of smoking in the Vehicle is not considered reasonable wear and tear); and

3.  The Vehicle is without damage or having been in an accident or collision that occurred after You took delivery of the Vehicle.

If You are returning the Vehicle pursuant to Carvana's Vehicle Return Program, then, in addition to the above representations and warranties, You further represent and warrant that You have fulfilled and/or agreed to all the conditions on participating in the Carvana Vehicle Return Program, which are set forth in the Retail Purchase Agreement (in Texas, the Buyer's Order) and expressly incorporated herein, including, among other things, that:

1.  If the Vehicle is driven more than 400 miles, at Carvana's election You will pay $1.00 per mile the Vehicle was driven over 400 miles ("Mileage Fees").

2.  Mileage Fees may not be paid by personal check, and Mileage Fees may be deducted from any down payment refund. If You paid your down payment via ACH transaction, we will pay You only after You provide evidence satisfactory to us that the ACH transaction has cleared.

3.  If You paid Carvana an upfront nonrefundable shipping charge, then in accordance with your Retail Purchase Agreement the upfront nonrefundable shipping charge will not be returned to You.

**Transfer of Title; Duty to Cooperate:** You agree to cooperate with Carvana to terminate the Contracts, and to take further action requested by Carvana to effectuate the termination and return of the Vehicle, including by executing documents requested by Carvana to transfer title of the Vehicle and to ensure that such is in similar condition as it was prior to your purchase of the Vehicle.

**Default:** Except as may be prohibited by law, you will be in default if you breach any representation, warranty, or obligation set forth in this Vehicle Return Agreement.

**Remedies:** If you are in default of this Vehicle Return Agreement, or otherwise fail to perform any of the terms contained herein, then we have all the remedies provided by law, equity, and this Vehicle Return Agreement, to the extent not prohibited by law. Those remedies include, among other things:

1.  We may reject termination of the Contracts and require you to perform thereunder, including by satisfying any payment obligations contained therein;

2.  We may recover any and all damages we have incurred, including storage fees, lost profits, and consequential damages arising from our inability to resell the Vehicle; and

3.  We may deem the Vehicle to have been voluntarily surrendered to us.

**Waiver of Damages:** Unless prohibited by law, You shall not be entitled to recover from Us any consequential, incidental, or punitive damages, damages to property, or damages for loss of use, loss of time, loss of profits.

**If the Vehicle is not eligible to be returned pursuant to Carvana's Vehicle Return Program for any reason, including, but not limited to, (1) You have returned, exchanged, or swapped more than two prior vehicles to Carvana in connection with any retail purchase agreements or retail installment contracts associated with this Transaction, (2) You did not alert Carvana of your election to return the Vehicle by phone, text, email, or chat prior to 8pm EST on the 7th calendar day after You took delivery of the Vehicle, (3) the Vehicle is not in the same condition You received it except for reasonable wear and tear, or (4) the Vehicle was in an accident or collision that occurred after You took delivery of it, then, in addition to the above representations and warranties, You further agree to release any claims you have against Carvana as set forth below:**

**Conditional Release:** In consideration of Carvana accepting the return of the Vehicle, which is not otherwise eligible to be returned pursuant to Carvana's Vehicle Return Program, You promise to fully release and forever discharge Carvana and any of its subsidiaries, affiliates, agents, vendors, employees, or officers (collectively "Carvana Released Parties"), from all liability, claims, lawsuits, actions, charges, demands, judgments, costs, fees (including attorneys' fees), or damages of any kind, whether present or future, known or unknown, legal, equitable, or otherwise, which in any manner may arise out of or relate to (a) the Vehicle, (b) the Vehicle's purchase, surrender, recovery, and/or repossession, and/or (c) any agreement between the Parties other than this Agreement.

If You reside in California, You additionally certify that You have read and understand the provisions of California Civil Code Section 1542, which states: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." You hereby expressly waive any and all rights under California Civil Code Section 1542 (or any comparable provision of any state or federal law)

By signing below, You agree to the terms of this Agreement.

_____ (Buyer)

_____ (Co-Buyer)

Acknowledged by Carvana _____ (Carvana, LLC)

Vehicle Return Agreement (06/24)



# Account payments made easy with the Carvana App

Bridgecrest will be your servicing partner for the life of your vehicle account.



**Set up autopay or make one time payments using the Carvana App!**

- Available in the Apple App Store and Google Play Store
- Easy to download and easy to use
- No fees
- View scheduled payments and payment history
- Enjoy all the benefits that come with being a Carvana customer

Scan this code with your phone's camera to download the app.







## OTHER PAYMENT OPTIONS

- Pay online at bridgecrest.com with your bank account or debit card
- Call Bridgecrest at 800-967-8526
- Review all payment options at bridgecrest.com/paymentoptions

Bridgecrest.com  |  800.967.8526



# LIMITED WARRANTY INFORMATION GUIDE
Visit **carvana.com/repairs** to get started.

## CARVANA HAS YOU COVERED
If your vehicle has mechanical or electrical failures within the first 100 days/4,189 miles, we've got you covered.

## BENEFITS OF USING CARVANA PREFERRED REPAIR FACILITIES

• Only a $100 deductible on any covered repairs.

• 12 months / 12,000 miles warranty on completed repairs.

• No diagnostic charges.

• Rental car reimbursement.

• Get back on the road quicker!

*You may also use a non-preferred facility of your choosing. However, by doing so you must pay a $350 deductible and may be subject to diagnostics fees.*

## WHAT'S NOT COVERED

• Interior/Exterior cosmetic imperfections
  *Dings, dents, scrapes, etc.*

• Replaceable/Wearable parts
  *Tires, brake pads/rotors, etc.*

• Recommended Maintenance
  *Oil changes, filters, tune ups, etc.*

• Aftermarket Accessories
  *Wheels, electronics, etc.*

## HOW TO GET STARTED

### STEP 1:

• Visit **carvana.com/repairs** or scan the QR code to find a Carvana Preferred Repair facility.



• Once you've found a preferred facility, let them know that you have a coverage plan through SilverRock™.

### STEP 2:

• Take your vehicle to the repair facility.

• When you arrive, inform the repair facility that you have a coverage plan. Have the shop call our administrator, SilverRock™ at **866-628-3905** to begin the claim.

### STEP 3:

• The repair facility will diagnose the issue.

• SilverRock™ will review the diagnostics, approve covered repairs, and will pay the shop directly. Once repairs are completed, you're good to go!

## STILL HAVE QUESTIONS?
Text SilverRock™ at **833-394-8239** or call **866-628-3905**
M-F 7:00am - 7:00pm, SAT 8:00am - 4:00pm CT, SUN closed

## ROADSIDE ASSISTANCE 1-888-300-8607

*Please refer to your CarvanaCare agreement(s) for specific coverage information and excluded items. Repairs must be authorized by SilverRock™ prior to the mechanic starting repairs on the vehicle.*

FORM073021



# WELCOME TO YOUR CARVANACARE® PLUS PROTECTION
Here's what you need to know about your coverage.

## MECHANICAL & ELECTRICAL COVERAGE*
**$100 deductible at in-network facilities**
**$350 deductible at out-of-network facilities**

Covers many mechanical and electrical components including Engine, Transmission, Suspension, AC & Heating, Steering, Emissions, and Fuel System. Review your contract for a more detailed list of covered components.

*Electric & Hybrid vehicles include High voltage battery, drive motor / generator, inverter, DC to DC convertor, and on-board charger.*

## STILL HAVE QUESTIONS?
Text SilverRock™ at **833-394-8239**
or call **866-628-3905**
M-F 7:00 a.m. - 7:00 p.m. CT
SAT 8:00 a.m. - 4:00 p.m. CT
SUN closed

## ROADSIDE ASSISTANCE 1-888-300-8607
*Please refer to your CarvanaCare® agreement(s) for specific coverage information and excluded items. Repairs must be authorized by SilverRock™ prior to the mechanic starting repairs on the vehicle.*





## HOW TO GET STARTED

**STEP 1:**
- Visit **yourvehiclecare.com/map** or scan the QR code to find a Carvana Preferred Repair facility



- Schedule an appointment or confirm availability with the repair facility

**STEP 2:**
- Take your vehicle to the repair facility
- Inform the repair facility that you have coverage with SilverRock™. The shop will call SilverRock™ at **866-628-3905** to start the claim

**STEP 3:**
- The repair facility will diagnose the issue and review with SilverRock™ to approve and pay for covered repairs
- If any repairs are outside your selected **CarvanaCare®** plan, the repair facility will communicate these out-of-pocket costs directly with you
- The repair facility should contact you when repairs are completed

FORM022024

# MICHIGAN
# TITLE & REGISTRATION GUIDE

*IMPORTANT INFORMATION - YOU MUST READ THIS DOCUMENT IN FULL. PLEASE BE AWARE THAT REGISTRATION*

*PROCESSING TIMES ARE STILL IMPACTED IN MANY STATES DUE TO GENERAL DMV DELAYS.*

## Action Items

- Once your registration is complete, the vehicle decal tags and vehicle registration plate(s) will be sent via USPS to the mailing address we have on file, which can take an additional 10-15 business days.
- If you receive a new/updated insurance card from your insurance company or if your insurance expires before receiving your plates/registration, make sure you send us a copy of that new card ASAP! This will help prevent delays in your registration processing.
- We are unable to move forward with registration if you are delinquent with your taxes within your county. Please utilize this website to see if you are delinquent: https://dsvsesvc.sos.state.mi.us/TAP/_/#2. If you are delinquent, please pay off the required amount and upload the receipt to your post-sale dashboard.
- Please retain this document until registration is complete.

## 7 Day Money Back Guarantee

### Chat With Us!



- The 7 Day Money Back Guarantee begins the day you receive your vehicle.
- If you would like to return or swap your vehicle, please call us at 844-507-3599 by 5pm on the last day of your 7 Day Money Back Guarantee.
- You can return or swap your vehicle as long as the vehicle was not in an accident, damaged, or modified.
- Carvana gives each customer 400 miles during their 7 Day Money Back Guarantee. If you drive beyond 400 miles, you can still return or swap your vehicle; there will be a $1 per mile fee for each mile over 400.

## Document Details

If any of the following items are requested by Carvana after delivery, please see the details below to assist you in how to obtain the required items and how to get the requested document(s) to Carvana. If physical original(s) are required, a FedEx label will be provided. Please monitor your Post Sale Dashboard and email for communications from Carvana during the registration process. If requested, please send these documents over to Carvana as soon as possible to prevent the possibility of your TOP expiring and not being able to drive your vehicle.

**Limited Power of Attorney Form(s)**
• If completed online using Notarize, a digital copy is acceptable.
• If completed in-person using a live notary, the physical original is required (copies unacceptable).

**Odometer Statement**
○ Do NOT check any of the boxes.
○ Please sign where indicated.

**Michigan Insurance CARD**
• Must say "No Fault Insurance" or "PPI".
○ Policy number.
○ Expiration date must be 30 days or more from date of sale.
○ Customer's Name listed as an "insured driver".
○ VIN of the vehicle being registered.

**Visit your Post Sale Dashboard at cvna.co/psd
to upload requested documents/receipts or to check your status of your vehicle registration.**

# FAQ

**How long is my temporary operating plate (top) valid for?**

Please reference your Post Sale Dashboard to verify your TOP's expiration date. If an additional Temporary Operating Plate option is available in your state, the additional TOP will be uploaded to your Post Sale Dashboard once your initial TOP has expired or is nearing expiration. Temporary Operation Plate options vary state by state.

**When will I get the permanent plate(s) for my vehicle?**

Registration processing times vary & are impacted in many states due to general delays at the DMV level.
While we are working hard to process your registration in a timely manner, we want to be realistic with delays that may occur. Just know we're doing everything we can to avoid them! Please refer to your Post Sale Dashboard to check your registration status.

**Why am I getting messages from Carvana about uploading documents?**

Carvana will send you an email & a text if we need paperwork from you to complete registration. Please send the requested items ASAP, as failure to respond will delay Carvana's ability to complete your vehicle registration.

**Where do I send required paperwork Carvana has requested?**

Please visit your Post Sale Dashboard at cvna.co/psd to upload any electronic documents requested. If physical original documents are required, please use the FedEx label provided at delivery or utilize the chat feature on the Carvana website to have a FedEx label emailed to you.

**My temporary operating plates are expired, but I don't have my permanent plates yet. What should I do?**

Our sincerest apologies. Due to DMV delays, registration processing times are impacted in many states.
Please check your Post Sale Dashboard at cvna.co/psd to see if an additional TOP may have been uploaded to your account (TOP options vary state by state). If not, reach out to Carvana and we will work to resolve this issue as best we can.

**What happens if I move before my registration is complete?**

We cannot change your registration address. However, we may be able to re-route the completed registration to your new mailing address. Please let us know as soon as possible if your mailing address changes by chatting with us!

**Will I get status updates on my registration?**

You will receive automated emails and texts as your vehicle registration is processed and completed. We also encourage you to check your Post Sale Dashboard cvna.co/psd for updates.

**Visit your Post Sale Dashboard at cvna.co/psd
to upload requested documents/receipts or to check your status of your vehicle registration.**

# Exhibit "C"



**CAMPUS AUTO REPAIR CENTER**
2960 E. GRAND BLVD
Detroit, MI. 48202
Phone: 313-873-4655

INVOICE
**35920**
Org. Est. # 041548

MICHIGAN REGISTRATION: **F166389**
Proposed completion date: **10/1/2024**

**INVOICE FROM HISTORY**

Printed Date: 12/13/2024     Work Completed: **10/29/2024**

**HARRIS, KARLOS**

Ypsilanti, MI  48197
Home:
Cust ID : 9798

2017 Cadillac - Escalade ESV Premium Luxury - 6.2L, V8 (376CI)
Lic # :   - MI
Odometer In : 74703
VIN # :          1105

| Part Description / Number | Qty | Sale | Ext | Labor Description | Extended |
|---|---|---|---|---|---|
| VALVE LIFTERS - Non Active,Each<br>12698945 | 8.00 | 48.50 | 388.00 | NEW VEHICLE INSPECTION. SOUNDS LIKE LIFTER TICKING, RIGHT SIDE RUNNING BOARD NOT WORKING, CHECK WIRELESS CHARGER ON CENTER CONSOLE. SILVERROCK WARRANTY. | 0.00 |
| VALVE LIFTERS - Active,Each<br>12698946 | 8.00 | 79.72 | 637.76 | NO ENGINE CODES BUT TICKING NOISE COMING FROM THE ENGINE. | |
| PUSH ROD - Each<br>12619828 | 1.00 | 8.71 | 8.71 | INITIAL INSPECTION | 50.00 |
| CYLINDER HEAD GASKET - Gasket Only,Each<br>12688943 | 2.00 | 104.77 | 209.54 | INTAKE MANIFOLD & VALLEY COVER- Remove & Replace | 218.40 |
| VALVE COVER GASKET - Each<br>12619787 | 2.00 | 7.19 | 14.38 | VALVE COVER GASKET - Remove & Replace - Right Side - [Includes: R&I Ignition Coils.] - [Includes: Camshaft Covers on Over Head Cam Engines.] | 135.20 |
| INTAKE MANIFOLD GASKET - Each<br>12626354 | 8.00 | 3.84 | 30.72 | ELECTRICAL DIAG - CENTER CONSOLE | 104.00 |
| ENGINE CYLINDER HEAD BOLT - M12x1.75x102<br>11611976 | 1.00 | 5.33 | 5.33 | VALVE LIFTERS - Remove & Replace - 4WD All - [Includes: R&I Cylinder Heads.] - [Includes: Adjust Valves (where applicable).] | 1,008.80 |
| ENGINE CYLINDER HEAD BOLT - M12x1.75x134<br>11546959 | 19.00 | 6.81 | 129.39 | OIL CHANGE | 106.07 |
| VALLEY PAN GASKET<br>12623104 | 1.00 | 17.14 | 17.14 | ORG. CLAIM # C101771470 | |

NEW CLAIM# C101787505

DEDUCT TEAR DOWN TIME - 9.7 LABOR

PARTS 1440.97
LABOR 1622.47

TOTAL 3063.44

WARRANTY - 12 MONTHS/12,000 MILES, WHICHEVER COMES FIRST

Copyright (c) 2024 Mitchell Repair Information Company, LLC  InvHrsMt 6.12.21 kr

**CAMPUS AUTO REPAIR CENTER**
2960 E. GRAND BLVD
Detroit, MI. 48202
Phone: 313-873-4655

INVOICE

| 35920 |

Org. Est. # 041548

**MICHIGAN REGISTRATION:** **F166389**
**Proposed completion date:** **10/1/2024**

**INVOICE FROM HISTORY**

Printed Date: 12/13/2024

**Work Completed:** **10/29/2024**

**HARRIS, KARLOS**

2017 Cadillac - Escalade ESV Premium Luxury - 6.2L, V8 (376CI)
Lic # :  - MI

Odometer In : 74703

Ypsilanti, MI  48197
Home:
Cust ID :  9798

VIN # :          1105

| Part Description | / Number | Qty | Sale | Ext | Labor Description | Extended |
|---|---|---|---|---|---|---|

Original Estimate Amount:          2.12

YOU ARE ENTITLED BY LAW TO THE RETURN OF ALL PARTS REPLACED EXCEPT THOSE WHICH ARE TOO HEAVY OR LARGE, AND
THOSE  REQUIRED TO BE SENT BACK TO THE MANUFACTUER OR DISTRIBUTOR BECAUSE WARRANTY WORK OR AN EXCHANGE
AGREEMENT. YOU ARE ENTITLED TO INSPECT THE PARTS WHICH CANNOT BE RETURNED TO YOU.

Save _____   Discard _____   Signature _____

I hereby authorize the above repair work to be done along with the necessary materials, and hereby grant you and/or your
employee permission to operate the car, truck or vehicle herein described on streets, highways or elsewhere for the purpose of
testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car, truck or vehicle to secure the
amount of repairs thereto. X_____

| Labor: | 1,622.47 |
|---|---|
| Parts: | 1,440.97 |
| Sublet: | 0.00 |

Estimated Increased Total:          Authorized by:
$_____   X_____
Mechanic's Name & Michigan Certification Number
Repairs Performed by:
Please Select, Technician; K, RICK M107654

-CERTIFICATION-
ALL REPAIRS AND PARTS LISTED WERE FURNISHED IN
COMPLIANCE WITH THE MICHIGAN AUTO REPAIR ACT (P.A.
300) ALL PARTS ARE NEW UNLESS OTHERWISE STATED.

**ALL REPAIRS PROPERLY COMPLETED**
Company Authorized Representative:

X_____

| Sub: | 3,063.44 |
|---|---|
| Tax: | 0.00 |
| Total: | $3,063.44 |
| Bal Due: | $0.00 |

[ Payments - MasterCard - $3,063.44 ]

Page 2 of 2

Copyright (c) 2024 Mitchell Repair Information Company, LLC InvHrsMI 5.12.21 kr

# Exhibit "D"



**CAMPUS AUTO REPAIR CENTER**
2960 E. GRAND BLVD
Detroit, MI. 48202
Phone: 313-873-4655

**INVOICE**

| 36256 |
|---|

Org. Est. # 041944

**MICHIGAN REGISTRATION:** F166389
**Proposed completion date:** 11/5/2024

## INVOICE FROM HISTORY

Printed Date: 12/13/2024    **Work Completed:** 11/13/2024

**HARRIS, KARLOS**

Ypsilanti, MI  48197
Home:  ▮▮▮▮▮
Cust ID : 9798

2017 Cadillac - Escalade ESV Premium Luxury - 6.2L, V8 (376CI)
Lic # :  - MI
Odometer In : 75676

VIN # :  ▮▮▮▮▮▮▮1105

| Part Description / Number | Qty | Sale | Ext | Labor Description | Extended |
|---|---|---|---|---|---|
| OXYGEN SENSOR - Front,Left | 1.00 | 109.16 | 109.16 | OXYGEN SENSOR & FUEL INJECTOR | 0.00 |
| 12659516 | | | | DIAGNOSTIC | 50.00 |
| FUEL INJECTOR - Each, #8 | 1.00 | 137.68 | 137.68 | OXYGEN SENSOR - Remove & Replace - One,Left Bank,Front or Rear | 62.40 |
| 12710481 | | | | FUEL INJECTOR - Remove & Replace - One,Right or Left Bank - [Includes: R&I Intake Manifold.] | 312.00 |
| POWER RUNNING BOARD MOTOR - Right,Assembly | 1.00 | 775.93 | 775.93 | POWER RUNNING BOARD MOTOR - Remove & Replace - One Side - [Includes: Initialization.] | 104.00 |
| 84452643 | | | | AUTH# C101810415 | 0.00 |
| | | | | $100 DEDUCTIBLE | |

Original Estimate Amount:  1,551.17

YOU ARE ENTITLED BY LAW TO THE RETURN OF ALL PARTS REPLACED EXCEPT THOSE WHICH ARE TOO HEAVY OR LARGE, AND THOSE  REQUIRED TO BE SENT BACK TO THE MANUFACTUER OR DISTRIBUTOR BECAUSE WARRANTY WORK OR AN EXCHANGE AGREEMENT. YOU ARE ENTITLED TO INSPECT THE PARTS WHICH CANNOT BE RETURNED TO YOU.

Save _____    Discard _____    Signature _____

I hereby authorize the above repair work to be done along with the necessary materials, and hereby grant you and/or your employee permission to operate the car, truck or vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car, truck or vehicle to secure the amount of repairs thereto. X_____

| Labor: | 528.40 |
|---|---|
| Parts: | 1,022.77 |
| Sublet: | 0.00 |

Estimated Increased Total:    Authorized by:
$_____    X_____
Mechanic's Name & Michigan Certification Number
Repairs Performed by:

**-CERTIFICATION-**
ALL REPAIRS AND PARTS LISTED WERE FURNISHED IN COMPLIANCE WITH THE MICHIGAN AUTO REPAIR ACT (P.A. 300) ALL PARTS ARE NEW UNLESS OTHERWISE STATED.

**ALL REPAIRS PROPERLY COMPLETED**
Company Authorized Representative

X_____

| Sub: | 1,551.17 |
|---|---|
| Tax: | 0.00 |
| Total: | $1,551.17 |
| Bal Due: | $0.00 |

[ Payments - Visa - $100.00, MasterCard - $1,451.17 ]

Page 1 of 1

Copyright (c) 2024 Mitchell Repair Information Company, LLC  InvHrsMI 5.12.21 kr



# Exhibit "E"

**CAMPUS AUTO REPAIR CENTER**
2960 E. GRAND BLVD
Detroit, MI. 48202
Phone: 313-873-4655

**INVOICE**

| | |
|---|---|
| INVOICE | 36414 |
| Org. Est. # | 042138 |

**MICHIGAN REGISTRATION:** F166389
**Proposed completion date:** 11/21/2024

**INVOICE FROM HISTORY**

Printed Date: 12/13/2024

**Work Completed:** 11/25/2024

**HARRIS, KARLOS**

Ypsilanti, MI 48197
Home:
Cust ID : 9798

2017 Cadillac - Escalade ESV Premium Luxury - 6.2L, V8 (376CI)
Lic # : - MI
Odometer In : 76385
VIN # : 1105

| Part Description / Number | Qty | Sale | Ext | Labor Description | Extended |
|---|---|---|---|---|---|
| FUEL PUMP - High Pressure Pump,At Engine | 1.00 | 529.97 | 529.97 | REDUCED POWER MESSAGE AND ENGINE LIGHT ON | 0.00 |
| 12728002 | | | | DIAGNOSTIC FEE | 50.00 |
| PIPE ASM-FUEL FEED | 1.00 | 104.78 | 104.78 | FUEL PUMP - Remove & Replace - High Pressure Pump,At Engine - [Includes: R&I Intake Manifold.] | 197.60 |
| 12703596 | | | | | |
| PIPE ASM-FUEL FEED INTER | 1.00 | 59.19 | 59.19 | P0090 FUEL PRESSURE REGULATOR CONTROL CIRCUIT | 0.00 |
| 12677004 | | | | P00C6 FUEL RAIL PRESSURE LOW DURING ENGINE CRANKING | |
| IGNITION COIL - #5 | 1.00 | 154.17 | 154.17 | P00C8 FUEL PRESSURE REGULATOR HIGH CONTROL CIRCUIT OPEN | |
| 12708496 | | | | IGNITION COIL - Remove & Replace - One,#5 | 52.00 |
| | | | | AUTH# C101827181 | 0.00 |
| | | | | 12 months or 12,000 miles warranty | |

Original Estimate Amount: 1,147.71

YOU ARE ENTITLED BY LAW TO THE RETURN OF ALL PARTS REPLACED EXCEPT THOSE WHICH ARE TOO HEAVY OR LARGE, AND THOSE REQUIRED TO BE SENT BACK TO THE MANUFACTUER OR DISTRIBUTOR BECAUSE WARRANTY WORK OR AN EXCHANGE AGREEMENT. YOU ARE ENTITLED TO INSPECT THE PARTS WHICH CANNOT BE RETURNED TO YOU.

Save _____ Discard _____ Signature_____

I hereby authorize the above repair work to be done along with the necessary materials, and hereby grant you and/or your employee permission to operate the car, truck or vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car, truck or vehicle to secure the amount of repairs thereto. **X**

| | |
|---|---|
| Labor: | 299.60 |
| Parts: | 848.11 |
| Sublet: | 0.00 |
| Sub: | 1,147.71 |
| Tax: | 0.00 |
| Total: | $1,147.71 |
| Bal Due: | $0.00 |

Estimated Increased Total:
$_____ Authorized by: X_____
Mechanic's Name & Michigan Certification Number
Repairs Performed by:

**-CERTIFICATION-**
ALL REPAIRS AND PARTS LISTED WERE FURNISHED IN COMPLIANCE WITH THE MICHIGAN AUTO REPAIR ACT (P.A. 300) ALL PARTS ARE NEW UNLESS OTHERWISE STATED.

**ALL REPAIRS PROPERLY COMPLETED**
Company Authorized Representative:

X_____

[ Payments - MasterCard - $1,147.71 ]

Copyright (c) 2024 Mitchell Repair Information Company, LLC InvHrsMI 5.12.21 kr

**Genesis Cadillac**
19900 E 9 Mile Rd. St. Clair Shores, MI 48080
Phone: (586) 350-2144

**SERVICE CONTRACT COPY**

HARRIS, KARLOS
8524 SPINNAKER WAY
YIPSILANTI, MI 48197

| | | |
|---|---|---|
| Work Phone | R/O Open Date 12/04/24 | R/O Number 26063199/1 |
| Home Phone | R/O Close Date 12/06/24 | Cross Reference # Original |
| Body | Mileage In 77107 | Mileage Out 77109 |

| Year | Make | Model | License Number | Service Advisor |
|---|---|---|---|---|
| 2017 | CADILLAC | ESCALADE ESV | | CHRIS PANETTA 5088 |

| Vehicle Identification Number | Color | Delivery Date | In-Service Date |
|---|---|---|---|
| 1105 | OTHER | | 12/04/24 |

SILVERROCK Exp: 147000 or 1/01/29 Ded: 0

| DESCRIPTION OF SERVICE AND PARTS | COST | AMOUNT |
|---|---|---|

Cell: 734-271-2793

# Exhibit "F"

#1 - MR ENGINLIGHT: CHECK ENGINE LIGHT IS ON
    CHECK ENGINE LIGHT - DIAGNOSIS  CUSTOMER STATES
    CHECK ENGINE REDUCED POWER
    Cause: verified customer concern scanned codes
          dtc p02101 set in ecm. upon testing
          verified throttle body internal failure
          necessary to replace.
    Tech: 247/4693          1.50hrs @                   246.00
    Part: 12729495 :SL-N-BODY (03335-CKT)     1          320.00
              Sub-Total Labor:        246.00
              Sub-Total Parts:        320.00
              Sub-Total:              566.00
    removed and replaced throttle body. completed
    learn functions. cleared all dtcs road tested and
    verified correct operation of vehicle all okay
    vehicle is operating as designed.
    247/1.5

-----------------------------------------------------------

#7 - MR Customer Reports:  TRANSFER CASE OUTPUT SHAFT
              OIL SEAL - REPLACE | TR
    Cause: upon inspection found transfer case front
          output shaft seal leaking fluid.
    Tech: 247/4693          1.40hrs @                   229.60
    Part: 84644580 :SL-N-SEAL (04511-CT)      1           60.23
              Sub-Total Labor:        229.60
              Sub-Total Parts:         60.23
              Sub-Total:              289.83
    removed and replaced transfer case front output
    shaft seal. topped off fluid and cleaned off
    excess fluid. road tested and verified correct
    operation. no leaks present.

-----------------------------------------------------------

#8 - MR Customer Reports:  ENGINE OIL COOLER LINE -
              REPLACE | OIL COOLER LINE
    Cause: oil cooler lines leaking fluid
    Tech: 247/4693          2.00hrs @                   328.00
    Part: 84791853 :N-HOSE (01540-CT)         1          119.58
              Sub-Total Labor:        328.00

| ACCOUNT # | LABOR |
|---|---|
| | PARTS |
| METHOD | SUBLET |
| | SHOP SUPPLIES |
| | SALES TAX OR TAX I.D. |
| RECEIPT # | DEDUCTIBLE |
| | TOTAL DUE |

**SIGNATURE** X_____

**Genesis Cadillac**
19900 E 9 Mile Rd. St. Clair Shores, MI 48080
Phone: (586) 350-2144

**SERVICE CONTRACT COPY**

HARRIS, KARLOS
8524 SPINNAKER WAY
YIPSALANTI, MI 48197

| | | |
|---|---|---|
| Work Phone | R/O Open Date | R/O Number |
| | 12/04/24 | 26063199/2 |
| Home Phone | R/O Close Date | Cross Reference # |
| | 12/06/24 | Original |
| Body | Mileage In | Mileage Out |
| | 77107 | 77109 |

| Year | Make | Model | License Number | Service Advisor | |
|---|---|---|---|---|---|
| 2017 | CADILLAC | ESCALADE ESV | | CHRIS PANETTA | 5088 |

| Vehicle Identification Number | Color | Delivery Date | In-Service Date |
|---|---|---|---|
| 1105 | OTHER | | 12/04/24 |

SILVERROCK Exp: 147000 or 1/01/29 Ded: 0

| DESCRIPTION OF SERVICE AND PARTS | COST | AMOUNT |
|---|---|---|
| Sub-Total Parts: 119.58 | | |
| Sub-Total: 447.58 | | |

removed and replaced oil cooler lines. verified
proper oil level. cleaned off excess fluid all
okay.

| ACCOUNT # | LABOR | 803.60 |
|---|---|---|
| | PARTS | 499.81 |
| METHOD | SUBLET | .00 |
| | SHOP SUPPLIES | .00 |
| | SALES TAX OR TAX I.D. | 29.99 |
| RECEIPT # | DEDUCTIBLE | .00 |
| | TOTAL DUE | 1333.40 |

**SIGNATURE X**_____

# Exhibit "G"



**CAMPUS AUTO REPAIR CENTER**
2960 E. GRAND BLVD
Detroit, MI. 48202
Phone: 313-873-4655

INVOICE

**36606**

Org. Est. # 042360

| | |
|---|---|
| MICHIGAN REGISTRATION: | **F166389** |
| **Proposed completion date:** | **12/13/2024** |
| Work Completed: | **03/25/2025** |

**INVOICE FROM HISTORY**

Printed Date: 05/02/2025

**HARRIS, KARLOS**

Ypsilanti, MI 48197
Home: ████████████
Cust ID : 9798

2017 Cadillac - Escalade ESV Premium Luxury - 6.2L, V8 (376CI)
Lic # : ████████ MI
Odometer In : 77386
VIN ████████████1105

| Part Description / Number | Qty | Sale | Ext | Labor Description | Extended |
|---|---|---|---|---|---|
| WIRE KIT;SPLG | 1.00 | 0.00 | 0.00 | ENGINE LIGHT ON, ROUGH IDLING. SHAKING AT | 0.00 |
| 19431551 | | | | START UP. TRACTION CONTROL LIGHT ON. | |
| SPARK PLUG ASM;GAS ENG | 2.00 | 0.00 | 0.00 | | |
| WARRANTY | | | | | |
| 41-168 | | | | | |

Original Estimate Amount:          0.00

YOU ARE ENTITLED BY LAW TO THE RETURN OF ALL PARTS REPLACED EXCEPT THOSE WHICH ARE TOO HEAVY OR LARGE, AND
THOSE REQUIRED TO BE SENT BACK TO THE MANUFACTUER OR DISTRIBUTOR BECAUSE WARRANTY WORK OR AN EXCHANGE
AGREEMENT. YOU ARE ENTITLED TO INSPECT THE PARTS WHICH CANNOT BE RETURNED TO YOU.

Save _____ Discard _____ Signature_____

I hereby authorize the above repair work to be done along with the necessary materials, and hereby grant you and/or your
employee permission to operate the car, truck or vehicle herein described on streets, highways or elsewhere for the purpose of
testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car, truck or vehicle to secure the
amount of repairs thereto. X_____

| | |
|---|---|
| Estimated Increased Total: | Authorized by: |
| $_____ | X_____ |

Mechanic's Name & Michigan Certification Number
Repairs Performed by:

-CERTIFICATION-
ALL REPAIRS AND PARTS LISTED WERE FURNISHED IN
COMPLIANCE WITH THE MICHIGAN AUTO REPAIR ACT (P.A.
300) ALL PARTS ARE NEW UNLESS OTHERWISE STATED.

**ALL REPAIRS PROPERLY COMPLETED**
Company Authorized Representative:

X_____

| | |
|---|---|
| Labor: | 0.00 |
| Parts: | 0.00 |
| Sublet: | 0.00 |
| Sub: | 0.00 |
| Tax: | 0.00 |
| Total: | $0.00 |
| Bal Due: | $0.00 |

[ Payments - ]

Page 1 of 1

Copyright (c) 2025 Mitchell Repair Information Company, LLC InvHraMI 6.12.21 kr

# Exhibit "H"



**CAMPUS AUTO REPAIR CENTER**
2960 E. GRAND BLVD
Detroit, MI. 48202
Phone: 313-873-4655

INVOICE

| 36751 |
|---|

Org. Est. # 042531

| MICHIGAN REGISTRATION: | F166389 |
|---|---|
| Proposed completion date: | 12/30/2024 |

**INVOICE FROM HISTORY**

Printed Date: 05/02/2025 | Work Completed: 03/25/2025

HARRIS, KARLOS

Ypsilanti, MI 48197
Home: ▮▮▮▮▮▮▮
Cust ID: 9798

2017 Cadillac - Escalade ESV Premium Luxury - 6.2L, V8 (376CI)

Lic # : ▮▮▮▮▮▮ MI | Odometer In : 84300

VIN # : ▮▮▮▮▮▮ 1105

| Part Description / Number | Qty | Sale | Ext | Labor Description | Extended |
|---|---|---|---|---|---|
| FUEL INJECTOR - Each, #5 | 1.00 | 133.18 | 133.18 | VEHICLE STILL MISFIRING | 0.00 |
| 19420316 | | | | AUTH# C101867816 | 0.00 |
| | | | | ENGINE CODE P0305, CYLINDER #5 MISFIRING OR FUEL INJECTOR ISSUE. | 0.00 |
| | | | | DIAGNOSTIC | 50.00 |
| | | | | IGNITION COIL REPAIR - #5 | 0.00 |
| | | | | FUEL INJECTOR - Remove & Replace - One,Right or Left Bank - [Includes: R&I Intake Manifold.] | 312.00 |

Original Estimate Amount: 522.36

YOU ARE ENTITLED BY LAW TO THE RETURN OF ALL PARTS REPLACED EXCEPT THOSE WHICH ARE TOO HEAVY OR LARGE, AND THOSE REQUIRED TO BE SENT BACK TO THE MANUFACTUER OR DISTRIBUTOR BECAUSE WARRANTY WORK OR AN EXCHANGE AGREEMENT. YOU ARE ENTITLED TO INSPECT THE PARTS WHICH CANNOT BE RETURNED TO YOU.

Save _____ Discard _____ Signature _____

I hereby authorize the above repair work to be done along with the necessary materials, and hereby grant you and/or your employee permission to operate the car, truck or vehicle herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car, truck or vehicle to secure the amount of repairs thereto. X _____

| Labor: | 362.00 |
|---|---|
| Parts: | 133.18 |
| Sublet: | 0.00 |

Estimated Increased Total: Authorized by:
$ _____ X _____
Mechanic's Name & Michigan Certification Number
Repairs Performed by:

-CERTIFICATION-
ALL REPAIRS AND PARTS LISTED WERE FURNISHED IN COMPLIANCE WITH THE MICHIGAN AUTO REPAIR ACT (P.A. 300) ALL PARTS ARE NEW UNLESS OTHERWISE STATED.

ALL REPAIRS PROPERLY COMPLETED
Company Authorized Representative:

X _____

| Sub: | 495.18 |
|---|---|
| Tax: | 0.00 |
| Total: | $495.18 |
| Bal Due: | $0.00 |

[ Payments - MasterCard - $495.18 ]

Copyright (c) 2025 Mitchell Repair Information Company, LLC InvHrsMI 8.12.21 kr



An official website of the United States Government

**cfpb**
Consumer Financial
Protection Bureau

**(https://www.consumerfinance.gov/)**

Start a new complaint

❮ All complaints (.)



# 241217-17490966

**CLOSED**

✔ **Submitted**

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 12/17/2024 | Vehicle loan or lease | Getting a loan or lease |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

**YOUR COMPLAINT**

After a thorough review of the contracts representing the herein transaction, it appears that there has been a misrepresentation of performance in certain terms and conditions. Pursuant to Uniform Commercial Code (UCC) §9-404, I retain the right to assert all claims and defenses against any holder or assignee of the agreements, including misrepresentation by the original party. In order to address and cure all perceived defects, please find enclosed a Set-Off Agreement that serves as an amendment to the existing Retail Installment Contract, Security Agreement, and related agreements. Pursuant to UCC Articles 3 and 9, the Truth in Lending Act (TILA, 15 U.S.C. §1601 et seq.), and Federal Reserve Act - Regulation J, I hereby tender all negotiable instruments and/or security interests created for or on my behalf as valid settlement of all outstanding balances. Furthermore, I request that 1) Any interest in any agreement, negotiable instrument, or collateral be applied under applicable law to offset the remaining balance, 2) Any overpayments of interest be refunded to me

promptly, 3) That you cease and desist all communication, collection attempts and credit reporting efforts with or about me and my private affairs. This formal agreement is intended to cure all discrepancies and formalize a resolution in accordance with applicable state and federal laws. Thank you for your cooperation and prompt attention.

**ATTACHMENTS**

Carvana
AGREEMENT.pdf
(115.5 KB)

Carvana
Cease &
Desist.pdf
(102.7
KB)

Hide full complaint ⊖

## What product or service is your complaint about?

**PRODUCT OR SERVICE**
Vehicle loan or lease

**TYPE**
Loan

**NEW OR USED?**
Used

## What type of problem are you having?

**ISSUE**
Getting a loan or lease

**TYPE OF ISSUE**
Changes in terms mid-deal or after closing

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**
Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**
No

## What happened?

After a thorough review of the contracts representing the herein transaction, it appears that there has been a misrepresentation of performance in certain terms and conditions. Pursuant to Uniform Commercial Code (UCC) §9-404, I retain the right to assert all claims and defenses against any holder or assignee of the agreements, including misrepresentation by the original party. In order to address and cure all perceived defects, please find enclosed a Set-Off Agreement that serves as an amendment to the existing Retail Installment Contract, Security Agreement, and related agreements. Pursuant to UCC Articles 3 and 9, the Truth in Lending Act (TILA, 15 U.S.C. §1601 et seq.), and Federal Reserve Act - Regulation

J, I hereby tender all negotiable instruments and/or security interests created for or on my behalf as valid settlement of all outstanding balances. Furthermore, I request that 1) Any interest in any agreement, negotiable instrument, or collateral be applied under applicable law to offset the remaining balance, 2) Any overpayments of interest be refunded to me promptly, 3) That you cease and desist all communication, collection attempts and credit reporting efforts with or about me and my private affairs. This formal agreement is intended to cure all discrepancies and formalize a resolution in accordance with applicable state and federal laws. Thank you for your cooperation and prompt attention.

[ ]  **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

## What would be a fair resolution to this issue?

1) Any interest in any agreement, negotiable instrument, or collateral be applied under applicable law to offset the remaining balance 2) Any overpayments of interest be refunded to me promptly 3) That herein company or companies cease and desist all communication, collection attempts and credit reporting efforts with or about me and my private affairs.

**2 attachments**

View uploaded documents by clicking on the file name. Documents that pass virus scanning are typically available within 2 minutes of upload.

Carvana AGREEMENT.pdf (115.5 KB)

Carvana Cease & Desist.pdf (102.7 KB)

## What company is this complaint about?

**COMPANY INFORMATION**
BRIDGECREST ACCEPTANCE CORPORATION

**LOAN NUMBER**

••••••••••••        👁

# What people are involved?

**YOUR CONTACT INFORMATION**
Karlos Harris

karlos@dsdt.tech
██████████

8524 Spinnaker Way YPSILANTI,
Michigan 48197 United States

**YOUR PREFERRED LANGUAGE**
English

 **Sent to company**

**STATUS**
Sent to
company on
12/17/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

 **Company still working**

**STATUS**
Company
response is in
progress as of
12/31/2024

**The company has responded that it is still working on your issue**

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

**COMPANY'S INTERIM RESPONSE**

Bridgecrest is currently researching Mr. Karlos Harris's concerns and will be responding as soon as possible. Thank you.

 Company responded

**STATUS**

Company responded on 2/17/2025

**RESPONSE TYPE**

Closed with explanation

## Company's Response

February 17, 2025 Consumer Financial Protection Bureau Re: Complaint # 241217-17490966 To Whom It May Concern: Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Karlos Harris's concerns. Please see below for additional information. On September 27, 2024, Mr. Harris entered a Retail Installment Contract (Contract), when he purchased a 2017 Cadillac Escalade from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Harris agreed to remit monthly payments of $1,037.00 beginning October 28, 2024. Mr. Harris also agreed to finance a total of $38,477.40 with a 25% Annual Percentage Rate (APR), as outlined in the Truth in Lending Disclosures on page one of the Contract. Additionally, a credit reporting notice was presented to Mr. Harris, which he reviewed, signed, and acknowledged. This notice explained: We report all information, positive, and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default. Included in the total purchase price of the vehicle is the optional Guaranteed Asset Protection (GAP) Mr. Harris elected to purchase. This product may be cancelled at any time prior to expiration and any applicable prorated refund would be applied towards the principal balance on the account. At the time of signing, Mr. Harris was provided the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Harris asserted

he had read and fully understood the terms enclosed.
Additionally, Carvana offers a Vehicle Return Program, which
allows customers seven calendar days from the date of purchase
to return their vehicle and cancel their Contract. This provides
customers additional time to ensure they are comfortable with
the terms of their purchase. Mr. Harris did not elect to return his
vehicle within that time period. The APR is structured as simple
interest, which means that interest accrues each day that the
account is active and it is calculated based on the remaining
financed balance. When a payment is made toward the account,
any accrued fees and/or interest are satisfied first, and any
remaining amount thereafter is applied toward the principal
balance. If payments are made on time, the ratio for what is
applied to interest versus principal increases in favor of the
principal balance and the account will be paid off on the
contracted maturity date Upon receipt of Mr. Harris's concerns, to
honor his request, we placed a Cease and Desist on his account,
which restricts our communication to him. We reviewed the
account and confirmed that all applicable laws have been
followed in the administration of the Contract and lawful
reporting of the account to the CRAs. We are unable to
accommodate Mr. Harris's requests. On December 30, 2024, we
contacted Mr. Harris and discussed the complaint concerns and
the abovementioned information. He remains dissatisfied.
Bridgecrest thanks the Consumer Financial Protection Bureau for
allowing us the opportunity to address this matter. Should you or
Mr. Harris have any questions, please contact our Customer
Relations department at 800-967-8854. Thank you, Liza N.
Agency Specialist

**ATTACHMENTS**

200306437102
BC CFPB
RESPONSE.pdf
(118.1 KB)



# Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 2/17/2025 | 4/18/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will
have 60 days from when the company responded to share your feedback. The CFPB will
share your feedback responses with the company and use the information to help the
CFPB's work with consumer complaints.

## ❌ Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-
leave/federal-holidays/#url=Overview)

More than 180 languages available.

 An official website of the United States Government

# Exhibit "J"                    Bridgecrest™

February 17, 2025

Consumer Financial Protection Bureau

Re: Complaint # 241217-17490966

To Whom It May Concern:

Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Karlos Harris's concerns. Please see below for additional information.

On September 27, 2024, Mr. Harris entered a Retail Installment Contract (Contract), when he purchased a 2017 Cadillac Escalade from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Harris agreed to remit monthly payments of $1,037.00 beginning October 28, 2024. Mr. Harris also agreed to finance a total of $38,477.40 with a 25% Annual Percentage Rate (APR), as outlined in the Truth in Lending Disclosures on page one of the Contract. Additionally, a credit reporting notice was presented to Mr. Harris, which he reviewed, signed, and acknowledged. This notice explained:

> *We report all information, positive, and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default.*

Included in the total purchase price of the vehicle is the optional Guaranteed Asset Protection (GAP) Mr. Harris elected to purchase. This product may be cancelled at any time prior to expiration and any applicable prorated refund would be applied towards the principal balance on the account.

At the time of signing, Mr. Harris was provided the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Harris asserted he had read and fully understood the terms enclosed. Additionally, Carvana offers a Vehicle Return Program, which allows customers seven calendar days from the date of purchase to return their vehicle and cancel their Contract. This provides customers additional time to ensure they are comfortable with the terms of their purchase. Mr. Harris did not elect to return his vehicle within that time period.

The APR is structured as simple interest, which means that interest accrues each day that the account is active and it is calculated based on the remaining financed balance. When a payment is made toward the account, any accrued fees and/or interest are satisfied first, and any remaining amount thereafter is applied toward the principal balance. If payments are made on time, the ratio for what is applied to interest versus principal increases in favor of the principal balance and the account will be paid off on the contracted maturity date

Upon receipt of Mr. Harris's concerns, to honor his request, we placed a Cease and Desist on his account, which restricts our communication to him. We reviewed the account and confirmed that

1

# Bridgecrest™

all applicable laws have been followed in the administration of the Contract and lawful reporting of the account to the CRAs. We are unable to accommodate Mr. Harris's requests. On December 30, 2024, we contacted Mr. Harris and discussed the complaint concerns and the abovementioned information. He remains dissatisfied.

Bridgecrest thanks the Consumer Financial Protection Bureau for allowing us the opportunity to address this matter. Should you or Mr. Harris have any questions, please contact our Customer Relations department at 800-967-8854.

Thank you,

Liza N.
Agency Specialist

M Gmail

Karlos Harris <karlos@dsdt.tech>

# Ongoing issue stock#2003064371-Chris
6 messages

---

**Executive Resolution Mailbox** <executiveresolution@carvana.com>                    Tue, Apr 29, 2025 at 1:30 PM
To:

Karlos,

I am in the office Tuesday thru Saturday 8A-4;30P If you have any questions you can respond here. I will be calling Silverrock to confirm if the parts installed by Campus are still under warranty.

Thank you,
Chris



Executive Resolution Team
CARVANA | Customer Experience
300 E Rio Salado Pkwy /// Tempe, AZ 85281
Visit Carvana.com to chat with us 24/7!

---

**Karlos Harris**                                                                      Tue, Apr 29, 2025 at 5:51 PM
To: Executive Resolution Mailbox <executiveresolution@carvana.com>

  IMG_4766.MOV

Chris,

I spoke to Eddie, the mechanic at Campus Auto and he states that the motor has always been the problem.   He says he has had to fix a number of parts that have failed due to the block itself being the underline issue.  Said that he conveyed this initially to Silver Rock however they chose to simply replace parts that have malfunctioned rather than the entire motor.  His recommendation is still the same, the vehicle needs another engine.  Otherwise, as he said to me, to do anything else is a waste of their and my time.

Attached is a video shot of the ticking sound the vehicle is making yet again.

Karlos

[Quoted text hidden]

---

**Executive Resolution Mailbox** <executiveresolution@carvana.com>                    Tue, Apr 29, 2025 at 6:30 PM
To: Karlos Harris -

Karlos,

Thank you for sending this to me, I will forward to the team I am asking that we take a second look at this, once I hear back I will respond back to you.

Thank you,

---



Executive Resolution Team
CARVANA | Customer Experience
300 E Rio Salado Pkwy /// Tempe, AZ 85281
Visit Carvana.com to chat with us 24/7!

[Quoted text hidden]

---

**Executive Resolution Mailbox** <executiveresolution@carvana.com>          Wed, Apr 30, 2025 at 7:02 PM
To: Karlos Harris ████████████

Karlos,

I will have an answer for you tomorrow on the account, it may not be first thing in the morning but it will be tomorrow.



Executive Resolution Team
CARVANA | Customer Experience
300 E Rio Salado Pkwy /// Tempe, AZ 85281
Visit Carvana.com to chat with us 24/7!

[Quoted text hidden]

---

**Executive Resolution Mailbox** <executiveresolution@carvana.com>          Thu, May 1, 2025 at 7:33 PM
To: Karlos Harris ████████████

Karlos,

After review by the team there is nothing further we can do moving forward, the RF if the current parts that were used are defective that will have to go through the the Repair facility that did install those parts. I would reach back out to the Repair facility to see about getting the parts replaced. I am closing the case as stated above we can not assist moving forward.



Executive Resolution Team
CARVANA | Customer Experience
300 E Rio Salado Pkwy /// Tempe, AZ 85281
Visit Carvana.com to chat with us 24/7!

[Quoted text hidden]

---

**Karlos Harris** ████████████          Fri, May 2, 2025 at 11:33 AM
To: Executive Resolution Mailbox <executiveresolution@carvana.com>

Dear Chris,

Thank you for your response yesterday regarding my request for assistance with my 2017 Cadillac Escalade ESV (VIN: ████████████1105), which I purchased from your company on September 27, 2024. I am writing to formally object to Carvana's position that it will not assist in addressing what is clearly a long-standing mechanical defect that existed well before the sale of this vehicle to me.

Since acquiring the Escalade, I have had to bring it in for service more than 18 times, with the core issue being persistent engine misfiring. Despite extensive repairs, including replacement of ignition coils, fuel

injectors, valve lifters, spark plugs, and a high-pressure fuel pump, the problem remains unresolved and continues to impair the vehicle's performance.

More importantly, I have obtained prior service records showing that Lockhart Cadillac in Greenwood, IN, diagnosed the exact same issue—engine misfiring in cylinder 6—on November 10, 2022, when the vehicle had just 66,732 miles. This directly proves that the defect was known, ongoing, and documented long before my purchase.

Given the seriousness and recurrence of the problem, and the fact that Carvana had the ability—and responsibility—to review this vehicle's history prior to listing it for sale, I am asserting that Carvana knew or should have known of this material defect. Failing to disclose such a critical mechanical issue, especially one that affects the powertrain and overall drivability, constitutes a breach of the duty to disclose and potentially violates consumer protection laws.

Although my extended warranty through SilverRock has covered most of the repair costs, the sheer volume and repetition of service visits—and the continued existence of the problem—have caused significant inconvenience and raise legitimate questions about the fitness of this vehicle for sale. Extended warranty coverage does not relieve Carvana of its original responsibility to ensure that the vehicle met basic standards of merchantability and reliability at the time of sale.

At this time, I am requesting that Carvana:

1. Reconsider its refusal to assist and provide a path toward a resolution, including either facilitating a permanent repair or arranging a buyback.

2. Provide documentation showing what, if any, pre-sale inspections or disclosures were made concerning the known engine misfire condition.

3. Confirm whether Carvana had access to the Lockhart Cadillac service record prior to selling me the vehicle, and if not, why this was not included in the inspection process.

If this matter is not resolved satisfactorily, I will immediately escalate my concerns to the Michigan Attorney General's Office, the Better Business Bureau, and the Federal Trade Commission, and I will actively pursue legal remedies, including claims for breach of implied warranty, misrepresentation, and failure to disclose known defects.

Until this matter is fully resolved, I will not make any further payments toward this vehicle. Under the Uniform Commercial Code (UCC) § 2-717, a buyer is legally entitled to withhold all or part of the purchase price when a seller has breached the contract or failed to deliver goods as promised. The failure to disclose a known, chronic mechanical defect constitutes such a breach.

I remain willing to resolve this matter professionally and in good faith. Carvana has this one opportunity to correct its course. Chris, I await your proposed resolution or written confirmation of your final position.

[Quoted text hidden]
--



Karlos L. Harris, COO
DSDT
1759 W. 21st Street
Detroit, MI 48216

5/29/25, 12:30 PM — DSDT Mail - Karlos, your payment is processing

 Gmail

Karlos Harris <karlos@dsdt.tech>

**Karlos, your payment is processing**
1 message

# Exhibit "L"

**Carvana** <DoNotReply@comms.carvana.com>
Reply-To: DoNotReply@carvana.com
To: Karlos <karlos@dsdt.tech>

Thu, Oct 10, 2024 at 8:49 AM





# Your payment has been initiated

## Hey Karlos,

Thank you for choosing Carvana! Your payment has been initiated.

 Your payment of **$490.00** for your 2019 Cadillac Escalade ESV will take up to 5 business days to be withdrawn from your **PNC** account ending in **5132**.

© 2024 Carvana, LLC. All rights reserved.

300 E. Rio Salado Pkwy. Tempe, AZ 85281

Privacy Policy | Terms of Service | View FAQ | Chat With Us

View This Email in Your Browser

**Exhibit "M"**

 Gmail

**Karlos Harris <karlos@dsdt.tech>**

## Karlos, we have an important update on your Carvana purchase
1 message

**Carvana** <DoNotReply@comms.carvana.com>
Reply-To: DoNotReply@carvana.com
To: Karlos <karlos@dsdt.tech>

Fri, Oct 11, 2024 at 4:44 PM

 CARVANA

( Chat Now )

# Your down payment has changed

## Hey Karlos,

Due to updates made to your purchase during the verification process, your down payment has increased by $1,300.00.* This additional payment will be processed at the time of your appointment.

 **Transaction details**

PNC
$1,300.00
Account ending in 5132

To review the changes to your purchase, please check your Order Summary on your account.

# Know your options

- **Accept changes to your terms\*\***

  No further action is needed from you

- **Cancel your purchase\*\*\***

  You can cancel any time on your account

- **Reach out with questions**

  Chat with us 24/7

  Chat With Us

We understand these changes may come as a surprise, but we assure you that these adjustments were necessary to maintain the accuracy of the transaction.

\*Additional changes to your transaction may result in further changes to your amount due. Please refer to your Order Placed Dashboard for your most up to date terms.

\*\*I understand and authorize Carvana to initiate a payment from my account (and, if necessary, credit my account if debits are made in error) for the amount due at the time of my appointment, unless I cancel my transaction prior to the appointment. I agree that any transactions that I authorize comply with all applicable law.

\*\*\*If you choose to cancel your purchase, any funds already collected will be refunded to you, except for any applicable nonrefundable shipping fees.

© 2024 Carvana, LLC. All rights reserved.

300 E. Rio Salado Pkwy. Tempe, AZ 85281

Privacy Policy | Terms of Service | View FAQ | Chat With Us

View This Email in Your Browser

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

KARLOS HARRIS, an individual,
                              Plaintiff

                    Case No: 25-008472-CZ
                    Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281

3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                    Defendants.
_____/


**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**NOW COMES**   Plaintiff Karlos Harris, in Pro se, pursuant to Michigan

Court Rule (MCR) 3.310, and respectfully moves this Honorable Court to

enter a preliminary injunction enjoining Defendants Carvana, LLC,

Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime

Automotive Group, Inc. from: (1) repossessing the 2017 Cadillac Escalade

ESV (VIN: XXXXXXXXXXXXX1105); (2) reporting inaccurate loan

information related to the Retail Installment Contract to third-party credit

agencies, including but not limited to Experian, Equifax, and TransUnion;

and (3) enforcing the Contract, including its arbitration clause, pending

resolution of threshold issues in this action. In support of this motion,

Plaintiff states as follows:


## INTRODUCTION

Plaintiff filed this action on May 29, 2025, alleging fraudulent

misrepresentation, unauthorized securitization, identity theft, deceptive

practices, warranty breaches, and inaccurate credit reporting arising from

the purchase of a defective 2017 Cadillac Escalade ESV from Defendant

Carvana, LLC, financed by Defendant Bridgecrest Acceptance Corporation,

warranted by Defendant SilverRock, Inc., and facilitated by Defendant

2

DriveTime Automotive Group, Inc.'s related-party dealings, under a Retail

Installment Contract executed on September 27, 2024.  Plaintiff seeks a

preliminary injunction to preserve the status quo by preventing irreparable

harm, including loss of mobility from vehicle repossession, ongoing credit

damage from inaccurate reporting, and premature enforcement of a

potentially void contract.


## FACTUAL BACKGROUND

On September 27, 2024, Plaintiff purchased a 2017 Cadillac Escalade ESV

(VIN: XXXXXXXXXXXXX1105from Carvana for $80,405.92, financed

through Bridgecrest under a Retail Installment Contract with monthly

payments of $1,037.00 at a 25% APR, totaling $38,477.40 financed, a

finance charge of $36,138.52 and a down payment of $5,790.00, including

an optional Guaranteed Asset Protection Addendum. (Exhibit "A") Upon

delivery, Plaintiff noticed a ticking engine noise, indicating a mechanical

defect. Carvana assured Plaintiff the vehicle was covered by a

100-day/4,189-mile CarvanaCare warranty administered by SilverRock and

eligible for a 7-day Vehicle Return Program. (Exhibit "B") Unbeknownst to

Plaintiff, the vehicle had a pre-existing engine misfire documented on

November 12, 2022, by Lockhart Cadillac, per AutoCheck and Carfax

3

reports, which Carvana concealed, misrepresenting the vehicle as passing a 150-point inspection. The engine's performance worsened, exhibiting persistent misfiring, power loss, and illuminated engine lights. SilverRock, under DriveTime's direction, denied full engine replacement, approving only temporary fixes, including repairs on October 1, November 5, November 21, December 4, December 13, December 30, 2024, January 2025, February 2025 and March 25, 2025, all of which failed to resolve the issue. (Exhibits "C"–"I") On October 9, 2024, Plaintiff requested an exchange due to SilverRock's repair delays. Carvana rescinded the Contract, required Plaintiff to pay $1,790.00 (later refunded) for a 2019 Cadillac Escalade ESV, then rejected Plaintiff's previously accepted income source and "rebuilt" the original Contract on October 22, 2024, without evidencing that it had been rescinded. (Exhibit L & M)  Without Plaintiff's consent, Defendants securitized the Contract as an investor asset, misrepresenting it as a standard loan, as alleged in Plaintiff's CFPB complaint (#241217-17490966) and supported by the January 2025 Hindenburg Research report documenting Carvana's $15.4 billion in subprime asset-backed securities. It is because of their elicit scheme to defraud that Plaintiff alleges that Defendants lack possession of the Contract, which impairs their enforcement rights. (Exhibits "I", "J") Bridgecrest's inaccurate reporting

to Experian, Equifax, and TransUnion, caused a 100+ point credit score

drop and numerous denied loan and apartment rental applications.

Carvana's Executive Resolution Team refused resolution in January and

April 2025, leaving Plaintiff with a defective vehicle, financial losses, and

credit damage. (Exhibits "K"; Complaint, ¶8)


**LEGAL STANDARD**

Under MCR 3.310(A), a preliminary injunction may be granted to preserve

the status quo when the moving party demonstrates: (1) irreparable harm

absent relief; (2) a likelihood of success on the merits; (3) a balance of

harms favoring the movant; and (4) that the public interest supports the

injunction. Henry v. Dow Chem. Co., 473 Mich. 63, 86 (2005); Mich.

Coalition of State Employee Unions v. Mich. Civil Serv. Comm'n, 465 Mich.

212, 223 (2001). Irreparable harm includes losses not fully compensable by

monetary damages, such as loss of mobility or ongoing credit damage.

Williams v. Experian Info. Sols., Inc., 2020 WL 4926229 (E.D. Mich. Aug.

21, 2020).

**ARGUMENT**

Plaintiff satisfies the requirements for a preliminary injunction:

1. Irreparable Harm: Plaintiff faces irreparable harm absent injunctive relief. Defendants' inaccurate reporting to credit agencies caused a 100+ point credit score drop and denied loan and apartment rental applications, with ongoing harm from continued reporting. (Complaint, ¶8; Exhibit "K") Courts recognize ongoing credit damage as irreparable, as it impairs financial opportunities beyond monetary compensation. Williams, 2020 WL 4926229, at *3. The threat of vehicle repossession risks loss of mobility, critical for Plaintiff's daily needs, constituting irreparable harm. Henry, 473 Mich. at 86. Enforcing the Contract, potentially through arbitration, before resolving its voidability would prejudice Plaintiff's rights, as Defendants' fraud and securitization may render it unenforceable. (Complaint, ¶¶5–6)

2. Likelihood of Success on the Merits: Plaintiff is likely to succeed on claims of fraudulent misrepresentation, warranty breaches, and Fair Credit Reporting Act (FCRA) violations. Defendants concealed the vehicle's engine misfire, misrepresented the Contract as a standard loan while securitizing it, and unilaterally reinstated it without consent, supporting fraud claims. Rood v. Gen. Dynamics Corp., 444 Mich. 107, 118–19, 507

6

N.W.2d 591 (1993) (fraud in the factum voids contracts). SilverRock's

refusal to replace the engine, despite repeated failed repairs, breaches the

CarvanaCare warranty. (Exhibits "C"–"I") Bridgecrest's inaccurate credit

reporting violates the FCRA. (Exhibit "K") The Hindenburg Research report

and CFPB complaint corroborate Defendants' misconduct. (Exhibit "I")

These facts, supported by case law like Cancellieri v. Ford Motor Co., 2016

WL 6645771, at *5–6 (E.D. Mich. Nov. 10, 2016), demonstrate a strong

likelihood of success.

   3. Balance of Harms: The harm to Plaintiff from repossession, credit

damage, and Contract enforcement outweighs any burden on Defendants.

Enjoining repossession and credit reporting merely preserves the status

quo, requiring Defendants to pause actions based on a potentially void

contract. Enjoining Contract enforcement prevents prejudice from

premature arbitration while discovery resolves threshold issues.

Defendants face minimal harm, as they retain the vehicle's title and loan

payments, whereas Plaintiff risks mobility, financial stability, and legal

rights. Mich. Coalition, 465 Mich. at 223.

   4. Public Interest: Granting the injunction serves the public interest by

protecting consumers from deceptive practices, unauthorized securitization,

and inaccurate credit reporting. The Hindenburg Research report and Plaintiff's CFPB complaint highlight Defendants' systemic misconduct, justifying judicial intervention to deter harm to other consumers. Williams, 2020 WL 4926229, at *4.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff Karlos Harris respectfully requests that this Court:

(A) Grant Plaintiff's Motion for Preliminary Injunction;

(B) Enjoin Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc., pending resolution of this action or further court order, from:

• Repossessing the 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105);

• Reporting any information related to the Retail Installment Contract to third-party credit agencies, including but not limited to Experian, Equifax, and TransUnion;

• Enforcing the Retail Installment Contract, including its arbitration clause, until threshold issues regarding its voidability are resolved;

(C) Schedule a hearing pursuant to MCR 3.310(A) to consider this motion,

if necessary;

(D) Grant such other and further relief as the Court deems just and

equitable.


**Respectfully submitted,**


/s/ _Karlos P. Harris_____        Date: June 2, 2025

Karlos Harris
in Pro se

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

---

KARLOS HARRIS, an individual,
                                    Plaintiff

                                        Case No: 25-008472-CZ
                                        Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
       300 E. Rio Salado Parkway, Building 1
       Tempe, AZ 85281


2.    BRIDGECREST ACCEPTANCE CORPORATION
       1720 W. Rio Salado Parkway
       Tempe, AZ 85281


3.    SILVERROCK, INC.
       PO Box 29087
       Phoenix, AZ 85038-9087


4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
       1720 West Rio Salado Parkway
       Tempe, AZ 85281

                              Defendants.
                                                    /
---

**MEMORANDUM IN SUPPORT OF**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiff Karlos Harris, in Pro se, pursuant to Michigan Court Rule (MCR) 3.310, moves this Honorable Court to enter a preliminary injunction enjoining Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc. from: (1) repossessing the 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105); (2) reporting any loan information related to the Retail Installment Contract to third-party credit agencies, including but not limited to Experian, Equifax, and TransUnion; and (3) enforcing the Contract, including its arbitration clause, pending resolution of threshold issues in this action. Plaintiff filed this action on June 2, 2025, alleging fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting arising from the purchase of a defective vehicle. This memorandum demonstrates that a preliminary injunction is warranted to preserve the status quo and prevent irreparable harm, including loss of mobility, ongoing credit damage, and premature enforcement of a potentially void contract.

## FACTUAL BACKGROUND

On September 27, 2024, Plaintiff purchased a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105from Carvana for $80,405.92, financed through Bridgecrest under a Retail Installment Contract with monthly payments of $1,037.00 at a 25% APR, totaling $38,477.40 financed, a finance charge of $36,138.52 and a down payment of $5,790.00, including an optional Guaranteed Asset Protection Addendum. (Exhibit "A") Upon delivery, Plaintiff noticed a ticking engine noise, indicating a mechanical defect. Carvana assured Plaintiff the vehicle was covered by a 100-day/4,189-mile CarvanaCare warranty administered by SilverRock and eligible for a 7-day Vehicle Return Program. (Exhibit "B")

Unbeknownst to Plaintiff, the vehicle had a pre-existing engine misfire documented on November 12, 2022, by Lockhart Cadillac, per AutoCheck and Carfax reports, which Carvana concealed, misrepresenting the vehicle as passing a 150-point inspection. The engine's performance worsened, exhibiting persistent misfiring, power loss, and illuminated engine lights. SilverRock, under DriveTime's direction, denied full engine replacement, approving only temporary fixes on October 1, November 5, November 21, December 4, December 13, December 30, 2024, January 2025, February

3

2025 and March 25, 2025, all of which failed to resolve the issue. (Exhibits "C"–"H")

On October 9, 2024, Plaintiff requested an exchange due to SilverRock's repair delays. Carvana rescinded the Contract, required Plaintiff to pay $1,790.00 (later refunded) for a 2019 Cadillac Escalade ESV, then rejected Plaintiff's previously accepted income source and "rebuilt" the original Contract on October 22, 2024, without evidencing that it had been rescinded. (Exhibit L & M).

Without Plaintiff's consent, Defendants securitized the Contract as an investor asset, misrepresenting it as a standard loan, as alleged in Plaintiff's CFPB complaint (#241217- 17490966) and supported by the January 2025 Hindenburg Research report documenting Carvana's $15.4 billion in subprime asset-backed securities. Defendants may lack possession of the Contract due to securitization, impairing enforcement rights. (Exhibits "I", "J")

Bridgecrest's inaccurate reporting to Experian, Equifax, and TransUnion caused a 100+ point credit score drop and denied loan and apartment rental applications. Carvana's Executive Resolution Team refused

resolution in January and April 2025, leaving Plaintiff with a defective

vehicle, financial losses, and credit damage. (Exhibit "K"; Complaint, ¶8)

## LEGAL STANDARD

Under MCR 3.310(A), a preliminary injunction may be granted to preserve

the status quo when the moving party demonstrates: (1) irreparable harm

absent relief; (2) a likelihood of success on the merits; (3) a balance of

harms favoring the movant; and (4) that the public interest supports the

injunction. Henry v. Dow Chem. Co., 473 Mich. 63, 86, 701 N.W.2d 684

(2005); Mich. Coalition of State Employee Unions v. Mich. Civil Serv.

Comm'n, 465 Mich. 212, 223, 634 N.W.2d 692 (2001). Irreparable harm

includes losses not fully compensable by monetary damages, such as loss

of mobility or ongoing credit damage. Williams v. Experian Info. Sols., Inc.,

No. 20-10527, 2020 WL 4926229, at *3 (E.D. Mich. Aug. 21, 2020).

## ARGUMENT

Plaintiff satisfies the requirements for a preliminary injunction:

1. Irreparable Harm: Plaintiff faces irreparable harm absent injunctive relief. Defendants' inaccurate reporting to credit agencies caused a 100+ point credit score drop and denied loan and apartment rental applications, with ongoing harm from continued reporting. (Complaint, ¶8; Exhibit "K") Courts recognize ongoing credit damage as irreparable, as it impairs financial opportunities beyond monetary compensation. Williams, 2020 WL 4926229, at *3. The threat of vehicle repossession risks loss of mobility, critical for Plaintiff's employment, medical needs, and daily activities, constituting irreparable harm. Henry, 473 Mich. at 86. Enforcing the Contract, potentially through arbitration, before resolving its voidability would prejudice Plaintiff's rights, as Defendants' fraud and securitization may render it unenforceable. (Complaint, ¶¶5–6) Absent an injunction, Plaintiff faces immediate and ongoing harm that monetary damages cannot fully remedy.

2. Likelihood of Success on the Merits: Plaintiff is likely to succeed on claims of fraudulent misrepresentation, warranty breaches, and Fair Credit Reporting Act (FCRA) violations. Defendants concealed the vehicle's engine misfire, documented on November 12, 2022, misrepresenting it as passing a 150-point inspection, inducing Plaintiff to enter the Contract. (Exhibits "A", "B"; Complaint, ¶5) Defendants further misrepresented the

Contract as a standard loan while securitizing it without consent and unilaterally reinstated it without evidencing that it had been rescinded, constituting fraud in the factum. Rood v. Gen. Dynamics Corp., 444 Mich. 107, 118–19, 507 N.W.2d 591 (1993) (fraud in the factum voids contracts). SilverRock's refusal to replace the engine, despite repeated failed repairs from October 2024 to March 2025, breaches the CarvanaCare warranty. (Exhibits "C"–"H") Bridgecrest's inaccurate credit reporting, causing a 100+ point credit score drop, violates the FCRA. (Exhibit "K"; Complaint, ¶8) The Hindenburg Research report and CFPB complaint corroborate Defendants' systemic misconduct. (Exhibit "I") These facts, supported by Cancellieri v. Ford Motor Co., No. 16-11883, 2016 WL 6645771,  at *5–6 (E.D. Mich. Nov. 10, 2016) (plausible fraud and warranty claims for concealed vehicle defects), demonstrate a strong likelihood of success.

3. Balance of Harms: The harm to Plaintiff from repossession, credit damage, and Contract enforcement outweighs any burden on Defendants. Enjoining repossession preserves Plaintiff's use of the vehicle, essential for daily needs, while Defendants retain the vehicle's title and prior payments. Enjoining credit reporting halts ongoing harm to Plaintiff's financial stability, requiring Defendants only to pause reporting based on a potentially void contract. Enjoining Contract enforcement prevents prejudice from

7

premature arbitration, allowing discovery to resolve threshold issues, with minimal impact on Defendants' legal rights. Plaintiff risks mobility, financial opportunities, and the ability to litigate substantive claims, whereas Defendants face only temporary administrative burdens. Mich. Coalition, 465 Mich. at 223.

4. Public Interest: Granting the injunction serves the public interest by protecting consumers from deceptive practices, unauthorized securitization, and inaccurate credit reporting. The Hindenburg Research report, documenting Carvana's $15.4 billion in subprime asset-backed securities, and Plaintiff's CFPB complaint highlight Defendants' systemic misconduct, including misrepresentation and lax underwriting. (Exhibit "I") Judicial intervention deters similar harm to other consumers, promoting fair lending and accurate credit reporting. Williams, 2020 WL 4926229, at *4 (public interest in preventing credit reporting violations).

**CONCLUSION**

For the foregoing reasons, Plaintiff satisfies the MCR 3.310(A) requirements for a preliminary injunction. The Court should enjoin Defendants from repossessing the vehicle, reporting loan information to

8

credit agencies, and enforcing the Contract to prevent irreparable harm, preserve Plaintiff's meritorious claims, balance the harms, and serve the public interest.

**WHEREFORE,** Plaintiff Karlos Harris respectfully requests that this Court:

(A) Grant Plaintiff's Motion for Preliminary Injunction;

(B) Enjoin Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc., pending resolution of this action or further court order, from:

  • Repossessing the 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105);

  • Reporting any information related to the Retail Installment Contract to third-party credit agencies, including but not limited to Experian, Equifax, and TransUnion;

  • Enforcing the Retail Installment Contract, including its arbitration clause, until threshold issues regarding its voidability are resolved;

(C) Schedule a hearing pursuant to MCR 3.310(A) to consider this motion, if necessary;

(D) Grant such other and further relief as the Court deems just and equitable.

**Respectfully submitted,**

/s/ ~~Karlos L Harris~~                    Date: June 2, 2025

Karlos Harris
in Pro se

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

---

KARLOS HARRIS, an individual,
                                        Plaintiff

                              Case No: 25-008472-CZ
                              Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281


2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281


3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087


4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                              Defendants.

---

# ORDER GRANTING

# PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff Karlos Harris's Motion for Preliminary Injunction, filed pursuant to Michigan Court Rule (MCR) 3.310, seeking to enjoin Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc. from repossessing the 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105), reporting any information related to the Retail Installment Contract to third-party credit agencies, and enforcing the Contract, including its arbitration clause. Having considered the motion, the memorandum in support, any responses, oral arguments, and the record, and finding that Plaintiff has demonstrated irreparable harm, a likelihood of success on the merits, a balance of harms favoring injunctive relief, and that the public interest supports the injunction under MCR 3.310(A), the Court hereby grants the motion as follows:

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Preliminary Injunction is GRANTED.

2. Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc. are ENJOINED, pending resolution of this action or further order of the Court, from:

> • Repossessing the 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105);

> • Reporting any information related to the Retail Installment Contract executed on September 27, 2024, to third-party credit agencies, including but not limited to Experian, Equifax, and TransUnion;

2

• Enforcing the Retail Installment Contract, including its arbitration

clause, until threshold issues regarding its voidability are resolved.

3. This injunction shall remain in effect until the final resolution of this action

or until modified or dissolved by further order of the Court.

4. Plaintiff shall not be required to post a bond, as the Court finds that

Plaintiff's pro se status and the equities of the case warrant waiver of the

bond requirement under MCR 3.310(D).

5. This Order is without prejudice to Defendants' right to seek modification

or dissolution of the injunction upon a showing of changed circumstances

or new evidence.

6. The Court retains jurisdiction to enforce this Order and to grant such

further relief as may be just and equitable.


IT IS SO ORDERED.



Hon. _____          Date: June _____, 2025
          Hon.
          District Court Judge


3

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

---

KARLOS HARRIS, an individual,
                          Plaintiff

                                        Case No: 25-008472-CZ
                                        Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281


2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281


3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087


4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                          Defendants.
_____/


# AFFIDAVIT OF KARLOS HARRIS IN SUPPORT OF

# MOTION FOR PRELIMINARY INJUNCTION

I, Karlos Harris, being duly sworn under penalty of perjury, affirm that I am the Plaintiff in the above-captioned action and have personal knowledge of the facts set forth herein. I submit this affidavit in support of my Motion for Preliminary Injunction to enjoin Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock Inc., and DriveTime Automotive Group, Inc. from repossessing my 2017 Cadillac Escalade ESV, reporting any information related to the Retail Installment Contract to credit agencies, and enforcing the Contract, including its arbitration clause, pending resolution of this action. The facts herein are true and correct to the best of my knowledge, information, and belief, pursuant to MCR 1.109(D)(3)(b).

1. I am an individual residing in Wayne County, Michigan, and I bring this action pro se against Defendants for fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting related to my purchase of a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXXXXXX) on September 27, 2024.

2. On September 27, 2024, I purchased the vehicle from Carvana, LLC for $80,405.92, financed through Bridgecrest Acceptance Corporation under a Retail Installment Contract with monthly payments of $1,037.00 at

2

a 25% APR, totaling $38,477.40 financed, a finance charge of $36,138.52 and a down payment of $5,790.00, including an optional Guaranteed Asset Protection Addendum. (Exhibit A to Complaint)

3. Upon delivery, I noticed a ticking engine noise indicating a mechanical defect. Carvana's representative assured me the vehicle was covered by a 100-day/4,189-mile CarvanaCare warranty administered by SilverRock Inc. and eligible for a 7-day Vehicle Return Program. (Exhibit I to Complaint)

4. I later discovered, through AutoCheck and Carfax reports, that the vehicle had a preexisting engine misfire documented on November 18, 2022, by Lockhart Automotive Group, which Carvana concealed, misrepresenting the vehicle as having passed a 150- point inspection. (Exhibit B to Complaint)

5. The vehicle's engine performance worsened, exhibiting persistent misfiring, power loss, and illuminated engine lights. I sought repairs at Campus AutoCheck, a SilverRock authorized facility, which confirmed a serious engine misfire requiring replacement. SilverRock, under DriveTime's direction, denied full engine replacement, approving only temporary fixes that failed to resolve the issue, including:

3

• October 1, 2024: Ticking noise diagnosed, valve lifters replaced, issue persisted. (Exhibit C to Complaint)

• November 5, 2024: Oxygen sensor and fuel injector replaced, issue persisted. (Exhibit D to Complaint)

• November 21, 2024: Fuel pump and ignition coil replaced, issue unresolved. (Exhibit E to Complaint)

• December 4, 2024: Check engine light and reduced power, throttle body and oil cooler line replaced, issue continued. (Exhibit F to Complaint)

• December 13, 2024: Rough idling and engine light, temporary fixes approved. (Exhibit G to Complaint)

• December 30, 2024: Misfire in Cylinder #5, ignition coil and fuel injector replaced. (Exhibit H to Complaint)

• January 2025: Continual misfiring. (Exhibit H to Complaint)

February  2025: Continual misfiring. (Exhibit H to Complaint)

• March 24, 2025: Engine light, rough idling, traction control light, spark plugs replaced, issue persisted. (Exhibit K to Complaint)

4

6. On October 7, 2024, I requested an exchange due to SilverRock's repair delays. Carvana rescinded the Contract, required me to pay $1,790.00 (later refunded) for a 2019 Cadillac Escalade ESV, then rejected my previously accepted income source and reinstated the original Contract on October 22, 2024, without evidencing that it had been rescinded. (Exhibits A, L & M to Complaint)

7. In December 2024, I learned that without my consent, Defendants had securitized the Contract as an investor asset, which was misrepresented to me as a standard loan. This is supported by my CFPB complaint (#241217-17490966) and the January 2025 Hindenburg Research report documenting Carvana's $15.4 billion in subprime asset-backed securities. It is because of their elicit scheme to defraud that I allege that Defendants lack possession of the Contract, impairing their enforcement rights.

8. Bridgecrest's inaccurate reporting to Experian, Equifax, and TransUnion caused a 100+ point drop in my credit score, numerous subsequent denied loan and apartment rental applications.

This ongoing reporting continues to harm my financial opportunities, including my ability to secure other loans and housing.

5

9. I contacted Carvana's Executive Resolution Team in January and April 2025, detailing the vehicle's defects, warranty disputes, and deceptive exchange process. The team refused resolution, insisting the transaction was complete, leaving me with a defective vehicle. (Exhibits K to Complaint)

10. The threat of vehicle repossession by Defendants risks loss of mobility, which is critical for my employment, medical appointments, and daily activities. Without the vehicle, I would face significant hardship, as public transportation is not a viable alternative in my area.

11. The enforcement of the Contract, including its arbitration clause, before resolving its voidability due to fraud and securitization, would prejudice my ability to litigate my claims, including fraudulent misrepresentation, warranty breaches, and Fair Credit Reporting Act violations.

12. I have suffered irreparable harm, including ongoing credit damage, the threat of losing my primary means of transportation, housing, and the risk of premature arbitration. Monetary damages cannot fully compensate for these harms, as they affect my financial stability, mobility, and legal rights.

13. The Hindenburg Research report and my CFPB complaint corroborate Defendants' systemic misconduct, including misrepresentation, unauthorized securitization, and deceptive practices, which harm not only me but other consumers.

14. I have no adequate remedy at law to prevent the immediate and ongoing harms caused by Defendants' actions. An injunction is necessary to preserve the status quo, protect my rights, and prevent further irreparable harm pending the resolution of this action.

**Self-Verification Clause**

I declare under the penalties of perjury that the statements made in this Affidavit are true to the best of my knowledge, information, and belief, pursuant to MCR 1.109(D)(3)(b).

/s/ ~Karlos L. Harris~                               Date: June 2, 2025

Karlos L. Harris, Affiant

7

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

---

KARLOS HARRIS, an individual,
                          Plaintiff

Case No: 25-008472-CZ
Judge: Hon.Qiana Denise Lillard

1.   CARVANA, LLC
     300 E. Rio Salado Parkway, Building 1
     Tempe, AZ 85281


2.   BRIDGECREST ACCEPTANCE CORPORATION
     1720 W. Rio Salado Parkway
     Tempe, AZ 85281


3.   SILVERROCK, INC.
     PO Box 29087
     Phoenix, AZ 85038-9087


4.   DRIVE TIME AUTOMOTIVE GROUP, INC.
     1720 West Rio Salado Parkway
     Tempe, AZ 85281

                          Defendants.
_____/


## PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY

**NOW COMES** Plaintiff Karlos Harris, in Pro se, pursuant to Michigan Court Rules (MCR) 2.302 and 2.116, and respectfully moves this Honorable Court to enter an order expediting discovery in the above-captioned matter. In support of this motion, Plaintiff states as follows:

## INTRODUCTION

1. Plaintiff filed this action on June 2, 2025, alleging fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting arising from the purchase of a 2017 Cadillac Escalade ESV from Defendant Carvana, LLC, financed by Defendant Bridgecrest Acceptance Corporation, warranted by Defendant SilverRock, Inc., and facilitated by Defendant DriveTime Automotive Group, Inc.'s related-party dealings, under a Retail Installment Contract executed on September 27, 2024.

2. Plaintiff seeks expedited discovery to obtain critical evidence necessary to resolve threshold issues, including: (a) defeating a potential motion to compel arbitration by establishing the Contract's voidability and the scope of Plaintiff's claims; (b) preventing repossession of the vehicle by Defendants; and (c) stopping Defendants' inaccurate reporting to

2

third-party credit agencies, which causes ongoing irreparable harm during litigation.

## FACTUAL BACKGROUND

3. On September 27, 2024, Plaintiff purchased the vehicle for $80,405.92, financed through Bridgecrest under the Contract, which Defendants misrepresented as a standard loan while securitizing it into an investor asset without consent, as alleged in Plaintiff's CFPB complaint (#241217-17490966, Exhibit "I") and supported by the January 2025 *Hindenburg Research* report documenting Carvana's $15.4 billion in subprime asset-backed securities (ABS). (Complaint, ¶¶ 6, 10)

4. The vehicle had a pre-existing engine misfire, concealed by Carvana, leading Plaintiff to request an exchange on October 9, 2024. Carvana rescinded the Contract, induced Plaintiff to pay $1,790.00 (later refunded) for a 2019 Cadillac Escalade ESV, rejected Plaintiff's previously accepted income source, and unilaterally reverted to enforcing the original Contract on October 22, 2024, without evidencing that it had been rescinded. (Exhibit L & M). This reversion delayed SilverRock's warranty repairs, exacerbating vehicle downtime. (Complaint, ¶¶ 4–5, Exhibits C–H)

3

5. Defendants' securitization may have transferred the original Contract, impairing their possession and enforcement rights absent proof of assignment. Bridgecrest's inaccurate reporting to third-party credit agencies caused a 100+ point credit score drop and denied loan and apartment rental applications, with ongoing harm from continued reporting. (Complaint, ¶¶ 6, 8)

**LEGAL STANDARD**

6. MCR 2.302 permits discovery of relevant, non-privileged information proportional to the case's needs. MCR 2.302(C) authorizes courts to modify discovery schedules, including expediting discovery, upon a showing of good cause, such as urgent need, irreparable harm, or case efficiency. (*Grand Trunk W. R.R. v. Auto Warehousing Co.*, 262 Mich. App. 345, 350 (2004))

7. Courts grant expedited discovery to resolve threshold issues, such as arbitration enforceability, injunctive relief to prevent repossession, or halting inaccurate credit reporting, to prevent prejudice or harm. (*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013); *Doe v. Soc'y for Creative Anachronism, Inc.*, 2007 WL 2155553 (E.D. Mich. July

4

25, 2007); *Williams v. Experian Info. Sols., Inc.*, 2020 WL 4926229 (E.D. Mich. Aug. 21, 2020))

## ARGUMENT

8. Good Cause Exists for Expedited Discovery: Plaintiff demonstrates good cause, as expedited discovery is essential to:

   a. Defeat Arbitration: Plaintiff alleges the Contract is void ab initio due to fraud in the factum (Count VIII), as Defendants misrepresented it as a standard loan while securitizing it into an investor asset and without evidencing that it had been rescinded. (Exhibit L & M) Counts III, VII, and IX (MCPA, Fraudulent Misrepresentation, Deceptive Practices) involve pre-contract torts outside the arbitration clause's scope. (*White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017); *Cancellieri v. Ford Motor Co.*, 2016 WL 6645771 (E.D. Mich. Nov. 10, 2016)) Discovery is needed to substantiate voidability and scope, preventing prejudice from premature arbitration.

   b. Prevent Repossession: Defendants may attempt to repossess the

vehicle, causing irreparable harm (loss of mobility, Complaint, ¶ 8).
Discovery is critical to support a preliminary injunction (MCR 3.310)
by proving the Contract's voidability and Defendants' lack of
enforcement rights due to securitization. (Complaint, ¶ 6)

c. Stop Third-Party Credit Reporting: Bridgecrest's inaccurate
reporting to credit agencies of the fraudulent loan balance causes
ongoing credit damage (100+ point score drop, denied loan and
apartment rental applications). Discovery is necessary to prove Fair
Credit Reporting Act violations (Count VI) and secure injunctive relief
to halt reporting, preventing further irreparable harm. (*Williams*, 2020
WL 4926229)

d. Promote Efficiency: Expedited discovery resolves threshold issues,
avoiding duplicative litigation or arbitration, and clarifies Defendants'
assignment and reporting practices. (*Grand Trunk*, 262 Mich. App. at
350; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility
standard))


9. Requested Discovery is Narrowly Tailored: Plaintiff seeks specific,
relevant documents to minimize burden, including:

a. The full arbitration clause referenced in the Retail Purchase Agreement (Exhibit B) to assess its terms (e.g., fees, venue, enforceability).

b. Securitization agreements and assignment records for the Contract to confirm Defendants' possession and enforcement rights (Complaint, ¶ 6).

c. Carvana's communications (October 9–22, 2024) regarding the exchange attempt, income source rejection, and unilateral reversion to substantiate fraud (Complaint, ¶ 5).

d. SilverRock's repair records (October 2024–March 2025) to document warranty breaches and delays caused by Defendant's association with DriveTime Automotive Group, Inc (Complaint, ¶ 4, Exhibits C–H).

e. Bridgecrest's credit reporting records (January 2025–present) to third-party credit agencies (e.g., Experian, Equifax, TransUnion) to prove inaccurate reporting and support injunctive relief (Complaint, ¶ 8).

f. AutoCheck/Carfax report (November 12, 2022) to confirm the concealed engine defect (Complaint, ¶ 3).

7

g. Morningstar's ABS reports cited in *Hindenburg* to support

securitization fraud (Complaint, ¶ 10).

10. No Prejudice to Defendants: The requested discovery is within

Defendants' possession, narrowly tailored, and proportional to the case's

needs. Expediting discovery avoids delay, ensuring a fair resolution of

threshold issues without undue burden. (*MCR 2.302(B)(1)*)

**RELIEF REQUESTED**

**WHEREFORE,** Plaintiff Karlos Harris respectfully requests that this Court:

(A) Grant Plaintiff's Motion to Expedite Discovery;

(B) Order Defendants to produce the requested documents within 14 days

of the Court's order, including:

1. The full arbitration clause referenced in Exhibit B.

2. Securitization agreements and chain of assignment records in

    relation to the Contract.

3. Carvana's communications (October 9–22, 2024, Exhibit X).

4. SilverRock's repair and communication records (October

    2024–March 2025).

8

5. Bridgecrest's credit reporting records (January 2025–present) to third-party credit agencies.

6. AutoCheck/Carfax report (November 12, 2022).

7. Morningstar's ABS reports.

(C) Set an expedited discovery schedule, with responses due within 14 days and depositions, if necessary, within 30 days;

(D) Grant such other and further relief as the Court deems just and equitable.

**Respectfully submitted,**

/s/ _Karlos P. Harris_                                      Date: June 2, 2025

Karlos Harris
in Pro se

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

---

KARLOS HARRIS, an individual,
                              Plaintiff

                    Case No: 25-008472-CZ
                    Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281

3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                    Defendants.
_____/


# MEMORANDUM IN SUPPORT OF

# PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY

**NOW COMES** Plaintiff Karlos Harris, in Pro se, pursuant to Michigan Court

Rules (MCR) 2.302 and 2.116, and respectfully moves this Honorable

Court to enter an order expediting discovery in the above-captioned matter.

Plaintiff filed this action on June 2, 2025, alleging fraudulent

misrepresentation, unauthorized securitization, identity theft, deceptive

practices, warranty breaches, and inaccurate credit reporting arising from

the purchase of a 2017 Cadillac Escalade ESV from Defendant Carvana,

LLC, financed by Defendant Bridgecrest Acceptance Corporation,

warranted by Defendant SilverRock, Inc., and facilitated by Defendant

DriveTime Automotive Group, Inc.'s related-party dealings, under a Retail

Installment Contract executed on September 27, 2024. Plaintiff seeks

expedited discovery to obtain critical evidence necessary to resolve

threshold issues, including: (a) defeating a potential motion to compel

arbitration by establishing the Contract's voidability and the scope of

Plaintiff's claims; (b) preventing repossession of the vehicle by Defendants;

and (c) stopping Defendants' inaccurate reporting to third-party credit

agencies, which causes ongoing irreparable harm during litigation.

**INTRODUCTION**

1. Plaintiff filed this action on June 2, 2025, alleging fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting arising from the purchase of a 2017 Cadillac Escalade ESV from Defendant Carvana, LLC, financed by Defendant Bridgecrest Acceptance Corporation, warranted by Defendant SilverRock, Inc., and facilitated by Defendant DriveTime Automotive Group, Inc.'s related-party dealings, under a Retail Installment Contract executed on September 27, 2024.

2. Plaintiff seeks expedited discovery to obtain critical evidence necessary to resolve threshold issues, including: (a) defeating a potential motion to compel arbitration by establishing the Contract's voidability and the scope of Plaintiff's claims; (b) preventing repossession of the vehicle by Defendants; and (c) stopping Defendants' inaccurate reporting to third-party credit agencies, which causes ongoing irreparable harm during litigation.

## FACTUAL BACKGROUND

On September 27, 2024, Plaintiff purchased the vehicle for $80,405.92, financed through Bridgecrest under the Contract, which Defendants misrepresented as a standard loan while securitizing it into an investor asset without consent, as alleged in Plaintiff's CFPB complaint (#241217-17490966, Exhibit "I") and supported by the January 2025 Hindenburg Research report documenting Carvana's $15.4 billion in subprime asset-backed securities (ABS). (Complaint, ¶¶ 6, 10)

The vehicle had a pre-existing engine misfire, concealed by Carvana, leading Plaintiff to request an exchange on October 9, 2024. Carvana rescinded the Contract, induced Plaintiff to pay $1,790.00 (later refunded) for a 2019 Cadillac Escalade ESV, rejected Plaintiff's previously accepted income source, and unilaterally reverted to enforcing the original Contract on October 22, 2024, without evidencing that it had been rescinded. (Exhibit L & M). This reversion delayed SilverRock's warranty repairs, exacerbating vehicle downtime. (Complaint, ¶¶ 4–5, Exhibits C–H)

 Defendants' securitization may have transferred the original Contract, impairing their possession and enforcement rights absent proof of assignment. Bridgecrest's inaccurate reporting to third-party credit

4

agencies caused a 100+ point credit score drop and denied loan and apartment rental applications, with ongoing harm from continued reporting. (Complaint, ¶¶ 6, 8)


## LEGAL STANDARD

Under MCR 2.302, discovery is permitted for relevant, non-privileged information proportional to the case's needs. MCR 2.302(C) authorizes courts to modify discovery schedules, including expediting discovery, upon a showing of good cause, such as urgent need, irreparable harm, or case efficiency. Grand Trunk W. R.R. v. Auto Warehousing Co., 262 Mich. App. 345, 350 (2004). Courts grant expedited discovery to resolve threshold issues, such as arbitration enforceability, injunctive relief to prevent repossession, or halting inaccurate credit reporting, to prevent prejudice or harm. See Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013); Doe v. Soc'y for Creative Anachronism, Inc., 2007 WL 2155553 (E.D. Mich. July 25, 2007); Williams v. Experian Info. Sols., Inc., 2020 WL 4926229 (E.D. Mich. Aug. 21, 2020).

## ARGUMENT

Good cause exists for expedited discovery, as it is essential to:

a. Defeat Arbitration: Plaintiff alleges the Contract is void ab initio due to fraud in the factum (Count VIII), as Defendants misrepresented it as a standard loan while securitizing it into an investor asset and unilaterally reverted to it without Plaintiff's signature postrescission. (Complaint, ¶¶5–6) Counts III, VII, and IX (Michigan Consumer Protection Act, Fraudulent Misrepresentation, Deceptive Practices) involve pre-contract torts outside the arbitration clause's scope. White v. Sunoco, Inc., 870 F.3d 257 (3d Cir. 2017); Cancellieri v. Ford Motor Co., 2016 WL 6645771 (E.D. Mich. Nov. 10, 2016). Discovery is needed to substantiate voidability and scope, preventing prejudice from premature arbitration.

b. Prevent Repossession: Defendants may attempt to repossess the vehicle, causing irreparable harm (loss of mobility). (Complaint, ¶8) Discovery is critical to support a preliminary injunction (MCR 3.310) by proving the Contract's voidability and Defendants' lack of enforcement rights due to securitization. (Complaint, ¶6)

c. Stop Third-Party Credit Reporting: Bridgecrest's inaccurate reporting to credit agencies causes ongoing credit damage (100+ point

score drop, denied loan). (Complaint, ¶8) Discovery is necessary to prove

Fair Credit Reporting Act violations (Count VI) and secure injunctive relief

to halt reporting, preventing further irreparable harm. Williams, 2020 WL

4926229.

d. Promote Efficiency: Expedited discovery resolves threshold issues,

avoiding duplicative litigation or arbitration, and clarifies Defendants'

assignment and reporting practices. Grand Trunk, 262 Mich. App. at 350;

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (plausibility standard).

Requested Discovery is Narrowly Tailored: Plaintiff seeks specific, relevant

documents to minimize burden, including:

1. The full arbitration clause referenced in the Retail Purchase

Agreement (Exhibit B) to assess its terms (e.g., fees, venue,

enforceability).

2. Securitization agreements and assignment records for the

Contract to confirm Defendants' possession and enforcement rights.

(Complaint, ¶6)

3. Carvana's communications (October 9–22, 2024) regarding

the exchange attempt, income source rejection, and unilateral

reversion to substantiate fraud. (Complaint, ¶5, Exhibit X)

7

4. SilverRock's repair records (October 2024–March 2025) to document warranty breaches and delays caused by Defendant's association with DriveTime Automotive Group, Inc. (Complaint, ¶4, Exhibits C–H)

5. Bridgecrest's credit reporting records (January 2025–present) to third-party credit agencies (e.g., Experian, Equifax, TransUnion) to prove inaccurate reporting and support injunctive relief. (Complaint, ¶8)

6. AutoCheck/Carfax report (November 12, 2022) to confirm the concealed engine defect. (Complaint, ¶3)

7. Morningstar's ABS reports cited in Hindenburg to support securitization fraud. (Complaint, ¶10)

e. No Prejudice to Defendants: The requested discovery is within Defendants' possession, narrowly tailored, and proportional to the case's needs. Expediting discovery avoids delay, ensuring a fair resolution of threshold issues without undue burden. (MCR 2.302(B)(1))

8

## RELIEF REQUESTED

For the foregoing reasons, Plaintiff Karlos Harris respectfully requests that this Court:

(A) Grant Plaintiff's Motion to Expedite Discovery;

(B) Order Defendants to produce the requested documents within 14 days of the Court's order, including:

- The full arbitration clause referenced in Exhibit B.

- Securitization agreements and assignment records for the Contract.

- Carvana's communications (October 9–22, 2024, Exhibit X).

- SilverRock's repair records (October 2024–March 2025).

- Bridgecrest's credit reporting records (January 2025–present) to third-party credit agencies.

- AutoCheck/Carfax report (November 12, 2022).

- Morningstar's ABS reports.

(C) Set an expedited discovery schedule, with responses due within 14 days and depositions, if necessary, within 30 days;

9

(D) Grant such other and further relief as the Court deems just and

equitable.

**Respectfully submitted,**

/s/ _Karlos P. Harris_                                    Date: June 2, 2025

Karlos Harris
in Pro se

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

KARLOS HARRIS, an individual,
                              Plaintiff

                                        Case No: 25-008472-CZ
                                        Judge: Hon.Qiana Denise Lillard

1.     CARVANA, LLC
       300 E. Rio Salado Parkway, Building 1
       Tempe, AZ 85281

2.     BRIDGECREST ACCEPTANCE CORPORATION
       1720 W. Rio Salado Parkway
       Tempe, AZ 85281

3.     SILVERROCK, INC.
       PO Box 29087
       Phoenix, AZ 85038-9087

4.     DRIVE TIME AUTOMOTIVE GROUP, INC.
       1720 West Rio Salado Parkway
       Tempe, AZ 85281

                              Defendants.
_____/

# ORDER GRANTING

# PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

This matter comes before the Court on Plaintiff Karlos Harris's Motion to Expedite Discovery, filed pursuant to Michigan Court Rules (MCR) 2.302 and 2.116. Having considered the motion, the accompanying memorandum, any responses, and the arguments presented, and finding good cause under MCR 2.302(C), the Court hereby grants the motion as follows:

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion to Expedite Discovery is GRANTED.

2. Defendants Carvana, LLC, Bridgecrest Acceptance Corporation, SilverRock, Inc., and DriveTime Automotive Group, Inc. shall produce the following documents to Plaintiff within 14 days of the entry of this Order:

- The full arbitration clause referenced in the Retail Purchase Agreement (Exhibit B to Plaintiff's Complaint).

- Securitization agreements and assignment records for the Retail Installment Contract executed on September 27, 2024.

- Carvana's communications (October 9–22, 2024) regarding the exchange attempt, income source rejection, and unilateral reversion to the original Contract.

2

• SilverRock's repair records (October 2024–March 2025) related to the 2017 Cadillac Escalade ESV.

• Bridgecrest's credit reporting records (January 2025–present) to third-party credit agencies, including but not limited to Experian, Equifax and TransUnion.

• AutoCheck/Carfax report dated November 12, 2022, for the 2017 Cadillac Escalade ESV.

• Morningstar's asset-backed securities (ABS) reports cited in the January 2025 Hindenburg Research report.

3. An expedited discovery schedule is established as follows:

• Defendants shall provide complete responses to the above document requests within 14 days of the entry of this Order.

• Any necessary depositions related to the requested discovery shall be completed within 30 days of the entry of this Order, subject to agreement by the parties or further order of the Court.

4. This Order is without prejudice to Plaintiff's right to seek additional discovery or relief as permitted by the Michigan Court Rules.

3

5. The Court retains jurisdiction to enforce this Order and to grant such further relief as may be just and equitable.


IT IS SO ORDERED.


Hon. _____       Date: June _____, 2025
      Hon.
        District Court Judge

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

_____

KARLOS HARRIS, an individual,
                              Plaintiff

                            Case No: 25-008472-CZ
                            Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
       300 E. Rio Salado Parkway, Building 1
       Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
       1720 W. Rio Salado Parkway
       Tempe, AZ 85281

3.    SILVERROCK, INC.
       PO Box 29087
       Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
       1720 West Rio Salado Parkway
       Tempe, AZ 85281

                        Defendants.
_____/

## PLAINTIFF'S MOTION TO STAY ARBITRATION

**NOW COMES** Plaintiff Karlos Harris, in Pro se, pursuant to Michigan Court Rule MCR 3.602 and the Federal Arbitration Act 9 U.S.C. §§ 1–16, and respectfully moves this Honorable Court to stay any arbitration proceedings related to the Retail Installment Contract executed on September 27, 2024, for the purchase of a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105) from Defendant Carvana, LLC, pending judicial determination of the Contract's validity and the enforceability of its arbitration agreement. In support of this motion, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff filed this action on June 2, 2025, alleging fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting arising from the purchase of a defective vehicle from Defendants.  Plaintiff contends the Retail Installment Contract is void ab initio due to fraud in the factum, as Defendants misrepresented it as a standard loan while securitizing it as an investor asset without Plaintiff's consent. (Complaint, ¶¶ 6, 29) The arbitration agreement within the Retail Purchase Agreement (Exhibit B) is similarly void due to fraud in the factum and unconscionable terms.

(Complaint, Prayer for Relief, ¶ B) Plaintiff seeks a stay of arbitration to allow this Court to resolve threshold issues of contract formation and enforceability, which are judicially determined matters. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–46 (2006).


## FACTUAL BACKGROUND

On September 27, 2024, Plaintiff purchased a 2017 Cadillac Escalade ESV from Carvana for $80,405.92, financed through Bridgecrest under a Retail Installment Contract. (Complaint, ¶ 1, Exhibit A)

Defendants misrepresented the Contract as a standard loan, concealing its securitization as an investor asset, as alleged in Plaintiff's CFPB complaint (#241217-17490966) and supported by the January 2025 Hindenburg Research report documenting Carvana's $15.4 billion in subprime asset-backed securities. (Complaint, ¶ 6, Exh. I)

On October 9, 2024, Carvana rescinded the Contract to facilitate an exchange, induced Plaintiff to pay $1,790.00 (later refunded), then rejected Plaintiff's previously accepted income source and unilaterally reinstated the Contract on October 22, 2024, without Plaintiff's signature or evidence of rescission. (Complaint, ¶ 5, Ex. L & M)

3

The vehicle had a pre-existing engine misfire, concealed by Defendants, leading to repeated failed repairs and warranty denials by SilverRock. (Complaint, ¶¶ 3–4, Exhs. C–H, K)

Bridgecrest inaccurately reported loan data, causing a 100+ point credit score drop and denied loan and apartment rental applications. (Complaint, ¶ 7)

Plaintiff alleges the Contract, including its arbitration agreement, is void due to fraud in the factum and unconscionable, as Defendants' misrepresentations negated Plaintiff's consent. (Complaint, ¶¶ 29–30, Prayer for Relief, ¶ B)

## LEGAL STANDARD

Under the Federal Arbitration Act (9 U.S.C. § 3), a court may stay arbitration proceedings if the arbitration agreement is invalid due to grounds such as fraud in the factum or unconscionability. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967). Michigan law similarly allows courts to invalidate arbitration agreements for lack of consent or unconscionability. Rood v. Gen. Dynamics Corp., 444 Mich. 107, 118–19, 507 N.W.2d 591 (1993); Clark v. DaimlerChrysler Corp., 268 Mich.

4

App. 138, 143–44, 706 N.W.2d 505 (2005). Courts, not arbitrators, resolve

challenges to contract formation, including fraud in the factum that negates

the entire contract, including its arbitration clause. Buckeye Check Cashing,

Inc., 546 U.S. at 445–46. A stay is appropriate under MCR 3.602 when

arbitration would prejudice Plaintiff's ability to litigate threshold issues in

court. Henry v. Dow Chem. Co., 473 Mich. 63, 86, 701 N.W.2d 684 (2005).

## ARGUMENT

Plaintiff satisfies the requirements for a stay of arbitration, as the arbitration

agreement is void due to fraud in the factum and unconscionable terms,

and judicial resolution is necessary to avoid prejudice.

## 1. The Arbitration Agreement Is Void Due to Fraud in the Factum

The Retail Installment Contract, including its arbitration agreement, is void

ab initio because Defendants misrepresented the Contract as a standard

loan when it was a securitized investor asset, negating Plaintiff's consent.

(Complaint, ¶¶ 6, 29) Fraud in the factum occurs when a party is misled

about the nature of the document signed, preventing a meeting of the

minds. Rood v. Gen. Dynamics Corp., 444 Mich. at 118–19. Plaintiff alleges:

- Defendants concealed the Contract's securitization, as confirmed by the Hindenburg report and CFPB complaint. (Complaint, ¶ 6, Exh. I)

- Carvana unilaterally reinstated the Contract without Plaintiff's signature or evidence of rescission, further evidencing fraud. (Complaint, ¶ 5, Exhs. L–M)

  This fraud vitiates the entire Contract, including the arbitration clause, as Plaintiff never consented to arbitrate claims under a securitized asset. Buckeye Check Cashing, Inc., 546 U.S. at 445–46 (courts decide formation issues). The Court must resolve this threshold issue before any arbitration can proceed.

## 2. The Arbitration Agreement Is Unconscionable

The arbitration agreement is unconscionable, imposing oppressive terms that deny Plaintiff a fair opportunity to litigate claims. (Complaint, Prayer for Relief, ¶ B) Unconscionability requires procedural and substantive unfairness, such as unequal bargaining power and one-sided terms. Clark v. DaimlerChrysler Corp., 268 Mich. App. at 143–44. Plaintiff, a consumer, faced Defendants' superior bargaining power, and the arbitration clause's

6

terms—likely including high costs and a biased forum—preclude effective vindication of rights. (Complaint, ¶¶ 5–6) Discovery is needed to assess the clause's specific terms, but the Contract's fraudulent formation supports a presumption of unconscionability. The Court should stay arbitration pending this determination.

### 3. A Stay Is Necessary to Avoid Prejudice

Arbitration would prejudice Plaintiff by forcing litigation of claims under a void Contract, denying access to judicial remedies for systemic fraud. (Complaint, ¶¶ 7–9) Plaintiff's claims, including RICO, FCRA, and MCPA violations, require judicial oversight to protect consumer rights and deter Defendants' misconduct. Henry v. Dow Chem. Co., 473 Mich. at 86 (irreparable harm justifies injunctive relief). A stay under 9 U.S.C. § 3 and MCR 3.602 preserves Plaintiff's right to litigate in court until the Contract's validity is resolved, promoting judicial economy and fairness.

### RELIEF REQUESTED

**WHEREFORE,** Plaintiff Karlos Harris respectfully requests that this Court:

(A) Grant Plaintiff's Motion to Stay Arbitration;

7

(B) Issue an order staying any arbitration proceedings related to the Retail Installment Contract pending judicial determination of the Contract's validity and the arbitration agreement's enforceability;

(C) Permit discovery to assess the arbitration agreement's terms and Defendants' conduct;

(D) Schedule a hearing, if necessary, pursuant to MCR 2.119;

(E) Grant such other and further relief as the Court deems just and equitable.

**Respectfully submitted,**

/s/ _Karlos P. Harris_____

    Karlos Harris
    in Pro se

Date: June 2, 2025

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

---

KARLOS HARRIS, an individual,
                              Plaintiff

                                        Case No: 25-008472-CZ
                                        Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281


2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281


3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087


4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                              Defendants.
_____/


# MEMORANDUM IN SUPPORT OF PLAINTIFF'S

# MOTION TO STAY ARBITRATION

Plaintiff Karlos Harris, in Pro se, moves this Honorable Court to stay arbitration proceedings related to the Retail Installment Contract executed on September 27, 2024, for the purchase of a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105) from Defendant Carvana, LLC, pursuant to Michigan Court Rule MCR 3.602 and the Federal Arbitration Act 9 U.S.C. §§ 1–16. Plaintiff filed this action on June 2, 2025, alleging fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting. The Contract, including its arbitration agreement within the Retail Purchase Agreement (Exhibit A), is void ab initio due to fraud in the factum and unconscionable terms, as Defendants misrepresented the Contract as a standard loan while securitizing it as an investor asset without Plaintiff's consent. (Complaint, ¶¶ 6, 29, Prayer for Relief, ¶ B) This memorandum demonstrates that a stay is warranted to allow judicial resolution of threshold issues concerning the Contract's formation and the arbitration agreement's enforceability, which are matters for the Court, not an arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–46 (2006).

2

## INTRODUCTION

Plaintiff filed this action on June 2, 2025, alleging fraudulent misrepresentation, unauthorized securitization, identity theft, deceptive practices, warranty breaches, and inaccurate credit reporting arising from the purchase of a defective vehicle from Defendants.  Plaintiff contends the Retail Installment Contract is void ab initio due to fraud in the factum, as Defendants misrepresented it as a standard loan while securitizing it as an investor asset without Plaintiff's consent. (Complaint, ¶¶ 6, 29) The arbitration agreement within the Retail Purchase Agreement (Exhibit A) is similarly void due to fraud in the factum and unconscionable terms. (Complaint, Prayer for Relief, ¶ A) Plaintiff seeks a stay of arbitration to allow this Court to resolve threshold issues of contract formation and enforceability, which are judicially determined matters. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–46 (2006).

## FACTUAL BACKGROUND

On September 27, 2024, Plaintiff purchased a 2017 Cadillac Escalade ESV from Carvana for $80,405.92, financed through Bridgecrest under a Retail Installment Contract. (Complaint, ¶ 1, Exh. A) Defendants misrepresented

the Contract as a standard loan, concealing its securitization as an investor

asset, as evidenced by Plaintiff's CFPB complaint (241217- 17490966) and

the January 2025 Hindenburg Research report documenting Carvana's

$15.4 billion in subprime asset-backed securities with 8.67% delinquency

rates. (Complaint, ¶ 6, Exh. I) On October 9, 2024, Carvana rescinded the

Contract to facilitate an exchange for a 2019 Cadillac Escalade ESV,

induced Plaintiff to pay $1,790.00 (later refunded), then rejected Plaintiff's

previously accepted income source and unilaterally reinstated the original

Contract on October 22, 2024, without Plaintiff's signature or evidence of

rescission. (Complaint, ¶ 5, Exhs. L–M) The vehicle had a pre-existing

engine misfire, concealed by Defendants, leading to repeated failed repairs

and warranty denials by SilverRock from October 2024 to March 2025.

(Complaint, ¶¶ 3–4, Exhs. C–H, K) Bridgecrest inaccurately reported loan

data to credit agencies, listing a fraudulent balance, causing a 100+ point

credit score drop and denied loan and apartment rental applications.

(Complaint, ¶ 7, Ex. A) Plaintiff alleges the Contract, including its arbitration

agreement, is void due to fraud in the factum and unconscionable, negating

consent and rendering arbitration inappropriate. (Complaint, ¶¶ 29–30,

Prayer for Relief, ¶ B)

4

## LEGAL STANDARD

The Federal Arbitration Act requires courts to enforce valid arbitration agreements but permits invalidation on grounds such as fraud in the factum or unconscionability. 9 U.S.C. § 2; Prima Paint Corp. v. Flood Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967). Courts, not arbitrators, resolve challenges to contract formation, including fraud in the factum that negates the entire contract, including its arbitration clause. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 445–46. Michigan law similarly invalidates arbitration agreements lacking consent or imposing unconscionable terms. Rood v. Gen. Dynamics Corp., 444 Mich. 107, 118–19, 507 N.W.2d 591 (1993); Clark v. DaimlerChrysler Corp., 268 Mich. App. 138, 143–44, 706 N.W.2d 505 (2005). A stay of arbitration is appropriate under 9 U.S.C. § 3 and MCR 3.602 when arbitration would prejudice a party's rights, particularly when threshold issues of contract validity are at stake. Henry v. Dow Chem. Co., 473 Mich. 63, 86, 701 N.W.2d 684 (2005).


## ARGUMENT

Plaintiff demonstrates that a stay of arbitration is warranted, as the arbitration agreement is void due to fraud in the factum, unconscionable, and premature pending judicial resolution of the Contract's validity.

5

## 1. Fraud in the Factum Renders the Arbitration Agreement Void

The Retail Installment Contract, including its arbitration agreement, is void ab initio because Defendants committed fraud in the factum by misrepresenting the Contract as a standard loan when it was a securitized investor asset. (Complaint, ¶¶ 6, 29) Fraud in the factum occurs when a party is misled about the nature of the document signed, negating consent and preventing a meeting of the minds. Rood v. Gen. Dynamics Corp., [444 Mich. at 118– 19. Plaintiff alleges Defendants: - Concealed the Contract's securitization, transferring repayment risks without Plaintiff's knowledge or consent, as evidenced by the Hindenburg report and CFPB complaint. (Complaint, ¶ 6, Exh. I) - Unilaterally reinstated the Contract on October 22, 2024, after rescission, without Plaintiff's signature or evidence of rescission, further evidencing fraudulent intent. (Complaint, ¶ 5, Exhs. L–M) These misrepresentations induced Plaintiff to sign a document fundamentally different from a standard loan, vitiating consent to the Contract and its arbitration clause. Buckeye Check Cashing, Inc., 546 U.S. at 445–46 (courts resolve formation challenges). Unlike fraud in the inducement, which arbitrators may decide, fraud in the factum negates the entire agreement, including severable arbitration clauses. Prima Paint Corp., 388 U.S. at 403–04. The Court must determine whether the Contract

was formed before arbitration can proceed, justifying a stay to resolve this threshold issue.

## 2. The Arbitration Agreement Is Unconscionable

The arbitration agreement is unconscionable, imposing terms that unfairly preclude Plaintiff from vindicating statutory and common law rights. (Complaint, Prayer for Relief, ¶ A) Unconscionability under Michigan law requires procedural and substantive unfairness, such as unequal bargaining power and one-sided terms that shock the conscience. Clark v. DaimlerChrysler Corp., 268 Mich. App. at 143–44. Plaintiff, a consumer with limited bargaining power, faced Defendants' sophisticated corporate entities, who presented the arbitration agreement as a non-negotiable term within the fraudulently formed Contract. (Complaint, ¶¶ 5–6) While the precise terms of the arbitration clause (Exhibit A) require discovery to fully evaluate, the Contract's fraudulent context—misrepresentation, unilateral reinstatement, and systemic deceit—supports a presumption of unconscionability. For example, arbitration clauses in consumer contracts often impose prohibitive costs, biased forums, or limitations on remedies, denying effective relief for claims like RICO, FCRA, or MCPA violations. (Complaint, Counts V–VI, IX) Plaintiff requests discovery to assess the

7

clause's terms, including arbitration fees, venue, and arbitrator selection, to substantiate unconscionability. A stay is necessary to prevent enforcement of potentially oppressive terms pending this determination.

### 3. Arbitration Would Prejudice Plaintiff's Rights

Forcing arbitration before resolving the Contract's validity would irreparably prejudice Plaintiff by denying access to judicial remedies for Defendants' systemic fraud, which caused $152,500 in compensatory damages, including a 100+ point credit score drop and emotional distress. (Complaint, ¶¶ 7–9) Plaintiff's claims under RICO, FCRA, MCPA, and other statutes address complex consumer protection issues requiring judicial oversight to deter Defendants' misconduct, as evidenced by the Hindenburg report's documentation of $15.4 billion in subprime ABS and related-party revenue. (Complaint, ¶ 6, Exh. I) Arbitration, governed by a potentially void or unconscionable agreement, risks limiting discovery, remedies, and public accountability, constituting irreparable harm. Henry v. Dow Chem. Co., 473 Mich. at 86. A stay under [9 U.S.C. § 3 and MCR 3.602 preserves Plaintiff's right to litigate in court, promoting judicial economy by resolving formation issues first. Plaintiff's Motion to Expedite Discovery and Motion for Preliminary Injunction further support staying arbitration, as they seek

evidence of Defendants' fraud and injunctive relief to prevent enforcement of the Contract, including its arbitration clause.

**CONCLUSION**

For the foregoing reasons, Plaintiff satisfies the requirements for a stay of arbitration. The arbitration agreement is void due to fraud in the factum, as Defendants' misrepresentations negated Plaintiff's consent, and unconscionable, imposing unfair terms. Judicial resolution of the Contract's validity is necessary to avoid prejudice, ensuring Plaintiff's access to remedies for Defendants' fraudulent conduct. The Court should grant the motion to stay arbitration pending these determinations.

WHEREFORE, Plaintiff Karlos Harris respectfully requests that this Court:

(A) Grant Plaintiff's Motion to Stay Arbitration;

(B) Issue an order staying any arbitration proceedings related to the Retail Installment Contract;

(C) Permit discovery to evaluate the arbitration agreement's terms;

(D) Schedule a hearing, if necessary;

(E) Grant such other relief as the Court deems just.

**Respectfully submitted,**

/s/ ~~Karlos P. Harris~~

Date: June 2, 2025

Karlos Harris
in Pro se

10

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

---

KARLOS HARRIS, an individual,
                                    Plaintiff

                                              Case No: 25-008472-CZ
                                              Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281


2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281


3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087


4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                                    Defendants.
_____/


**ORDER GRANTING**

**PLAINTIFF'S MOTION TO STAY ARBITRATION**

This matter comes before the Court on Plaintiff Karlos Harris's Motion to Stay Arbitration, filed pursuant to Michigan Court Rule (MCR) 3.602 and the Federal Arbitration Act 9 U.S.C. §§ 1–16, seeking to stay any arbitration proceedings related to the Retail Installment Contract executed on September 27, 2024, for the purchase of a 2017 Cadillac Escalade ESV (VIN: XXXXXXXXXXXXX1105) from Defendant Carvana, LLC. Having considered the motion, the memorandum in support, any responses, oral arguments, the record, and applicable law, and finding that Plaintiff has demonstrated good cause for a stay due to substantial questions regarding the Contract's validity and the arbitration agreement's enforceability under fraud in the factum and unconscionability theories, the Court hereby grants the motion as follows:

IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion to Stay Arbitration is GRANTED.

2. All arbitration proceedings related to the Retail Installment Contract, including the arbitration agreement within the Retail Purchase Agreement (Complaint, Exh. A), are STAYED pending judicial determination of the Contract's validity and the arbitration agreement's enforceability.

3. The parties are permitted to conduct discovery relevant to the arbitration agreement's terms, including but not limited to costs, venue, arbitrator selection, and Defendants' conduct in forming the Contract, as necessary to resolve issues of fraud in the factum and unconscionability.

2

4. This stay shall remain in effect until the Court resolves the validity of the Retail Installment Contract and the arbitration agreement or until further order of the Court.

5. This Order is without prejudice to Defendants' right to seek modification or dissolution of the stay upon a showing of changed circumstances or new evidence.

6. The Court retains jurisdiction to enforce this Order and to grant such further relief as may be just and equitable.

IT IS SO ORDERED.

Hon. _____            Date: June _____, 2025
      Hon.
      District Court Judge

*Jacquetta Parkinson    6/23/2025 9:51 AM    WAYNE COUNTY CLERK    Cathy M. Garrett    IN MY OFFICE    25-008472-CZ FILED*

# STATE OF MICHIGAN

### In the 3rd Judicial Circuit
### County of Wayne

_____

KARLOS HARRIS, an individual,

                       Plaintiff

                                   Case No: 25-008472-CZ
                                   Judge: Hon.Qiana Denise Lillard

1.     CARVANA, LLC
        300 E. Rio Salado Parkway, Building 1
        Tempe, AZ 85281

2.     BRIDGECREST ACCEPTANCE CORPORATION
        1720 W. Rio Salado Parkway
        Tempe, AZ 85281

3.     SILVERROCK, INC.
        PO Box 29087
        Phoenix, AZ 85038-9087

4.     DRIVE TIME AUTOMOTIVE GROUP, INC.
        1720 West Rio Salado Parkway
        Tempe, AZ 85281

                            Defendants.
_____/

## PROOF OF SERVICE

I,Karlos Harris, declare that I am the Plaintiff in this action and that on June 4, 2025, I served a true and correct copy by USPS certified mail, return receipt, and delivery restricted to the addressee (copy of return and certified receipts attached - See Exhibit A) of the following:

1) SUMMONS

2) COMPLAINT FOR DECLARATORY JUDGMENT, FRAUD, IDENTITY THEFT, BREACH OF WARRANTY, AND RESCISSION,

3)  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION,

4) MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION,

5) ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION,

6) AFFIDAVIT OF KARLOS HARRIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION,

7) PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY,

8) MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXPEDITE DISCOVERY,

9) ORDER GRANTING PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY,

10) PLAINTIFF'S MOTION TO STAY ARBITRATION,

11) MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO STAY ARBITRATION,

12) ORDER GRANTING PLAINTIFF'S MOTION TO STAY ARBITRATION

Each of these documents were served on the following Defendants:

☐   1.   CARVANA, LLC
          300 E. Rio Salado Parkway, Building 1
          Tempe, AZ 85281

☐   2.   BRIDGECREST ACCEPTANCE CORPORATION
          1720 W. Rio Salado Parkway
          Tempe, AZ 85281

☐   3.   SILVERROCK, INC.
          PO Box 29087
          Phoenix, AZ 85038-9087

☐   4.   DRIVE TIME AUTOMOTIVE GROUP, INC.
          1720 West Rio Salado Parkway
          Tempe, AZ 85281

**Self-Verification Clause**

I declare under the penalties of perjury that the statements made in this

Proof of Service are true to the best of my knowledge, information, and

belief, pursuant to MCR 1.109(D)(3)(b).

/s/ _____                                    Date: June 23, 2025

  Karlos L. Harris,
      in Pro se

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

DriveTime Automotive Group
1720 West Rio Salado
Parkway
Tempe, AZ. 85281

9590 9402 9006 4122 9687 31

2. Article Number *(Transfer from service label)*

9 0710 5270 0460 0390 43

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Reinef*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
*Reinof*   6/9

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER:** COMPLE

- Complete items 1,
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bridgecrest Acceptance Corp.
1720 W. Rio Salado Parkway
Tempe, AZ 85281

9590 9402 9006 4122 9687 48

2. Article Number *(Transfer from service label)*

589 0710 5270 0460 0390 36

A. Signature
X *Reinof*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
*Reinof*   6/9

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Carvana, LLC
300 E. Rio Salado Parkway
Bldg. 1
Tempe, AZ 85281

9590 9402 9006 4122 9687 62

2. Article Number *(Transfer from service label)*

89 0710 5270 0460 0390 50

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
*9 June*   23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

S Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Silver Rock, Inc.
PO Box 29087
Phoenix, AZ 85038-9087

9590 9402 9006 4122 9687 24

2. Article Number *(Transfer from service label)*

9589 0710 5270 0460 0383 98

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Eleanor Vanegas*
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
asar Vanegas   JUN 10 2025

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053   Domestic Return Receipt

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

---

KARLOS HARRIS, an individual,
                                   Plaintiff

                                   Case No: 25-008472-CZ
                                   Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
      300 E. Rio Salado Parkway, Building 1
      Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
      1720 W. Rio Salado Parkway
      Tempe, AZ 85281

3.    SILVERROCK, INC.
      PO Box 29087
      Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
      1720 West Rio Salado Parkway
      Tempe, AZ 85281

                                   Defendants.
_____/

**AFFIDAVIT OF NON-RECEIPT**

Jacquetta Parkinson   6/23/2025 9:51 AM   WAYNE COUNTY CLERK   Cathy M. Garrett   IN MY OFFICE   FILED   25-008472-CZ

I, Karlos Harris, being first duly sworn, hereby depose and state as follows:

1. I am the Plaintiff in the above-captioned matter, proceeding in Pro Se, and I reside at 8524 Spinnaker Way, Ypsilanti, Michigan. I submit this affidavit in support of my Motion for Prejudgment Writ of Replevin and Emergency Ex Parte Hearing filed on June 23, 2025.

2. On September 27, 2024, I purchased a 2017 Cadillac Escalade ESV (VIN: 1GYS4JKJ9HR191105) under a Retail Installment Contract with Defendant Bridgecrest Acceptance Corporation, financing $38,477.40 at a 25% APR, with scheduled monthly payments of $1,037.00.

3. On June 21, 2025, Defendant Bridgecrest, acting through Tolmite Recoveries, LLC, repossessed the subject vehicle, citing alleged delinquent payments from April through June 2025, totaling $3,111.00.

4. Under MCL 440.9614, Bridgecrest was legally obligated to provide me with reasonable advance notice of their intent to repossess and dispose of the vehicle, including a clear statement of my right to

redeem the collateral.

5. I did not receive any effective or timely notice regarding the repossession or planned disposition prior to June 21, 2025.

6. In response to my December 17, 2024 Consumer Financial Protection Bureau (CFPB) Complaint No. 241217-17490966, Bridgecrest stated that notice was sent via email to karlos@dsdt.tech and that additional information was posted on their online portal.

7. I regularly monitor my email account, including junk and spam folders, for any communications related to my accounts and legal matters. No such notice was found in my inbox, spam, or any other folder prior to the repossession date.

8. After the vehicle was repossessed, I discovered for the first time on [Insert Date of Discovery] that an email from Bridgecrest, dated [Insert Date if known], had been automatically filtered into my spam folder. I had not seen, accessed, or read this email prior to June 21,

2025.

9.  I was under no contractual or legal obligation to log in to Bridgecrest's

online portal to retrieve notifications about repossession or

disposition. Moreover, no certified mail, phone call, or other direct and

reliable communication method was used to advise me to do so.

10.    My CFPB complaint requested a cease and desist on non-written

communications. Bridgecrest acknowledged this request, restricting

their communications to email or postal mail. Knowing that email can

be subject to automated spam filtering, Bridgecrest's sole reliance on

it as a notification method was commercially unreasonable.

11.    As a result of not receiving effective notice, I was unaware of the

vehicle's repossession and the redemption amount until after June

21, 2025. This deprived me of the opportunity to redeem the vehicle

or dispute the repossession in a timely manner, in violation of my

statutory rights under MCL 440.9623.

12.   In addition, Bridgecrest's refusal to provide key financial

records—such as the MoneyNet Daily 120 Log, Currency Transaction

Report, IRS Form 1099-A, and other documents requested in my

CFPB complaint—reinforces the claim that their collection actions

were unsupported and conducted in bad faith.

13.   Based on the above facts, I affirm that no reasonable or effective

notice of repossession or disposition was provided prior to June 21,

2025. The failure to provide such notice constitutes a violation of MCL

440.9614, rendering the repossession commercially unreasonable

and supporting my request for a prejudgment writ of replevin.

**Self-Verification Clause**

I declare under the penalties of perjury that the statements made in this

Affidavit are true to the best of my knowledge, information, and belief,

pursuant to MCR 1.109(D)(3)(b).

/s/ _____                              Date: June 23, 2025

  Karlos L. Harris, Affiant

Jacquetta Parkinson   6/23/2025 9:51 AM   WAYNE COUNTY CLERK   Cathy M. Garrett   IN MY OFFICE   FILED   25-008472-CZ

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

KARLOS HARRIS, an individual,

Plaintiff

Case No: 25-008472-CZ
Judge: Hon.Qiana Denise Lillard

1.    CARVANA, LLC
300 E. Rio Salado Parkway, Building 1
Tempe, AZ 85281

2.    BRIDGECREST ACCEPTANCE CORPORATION
1720 W. Rio Salado Parkway
Tempe, AZ 85281

3.    SILVERROCK, INC.
PO Box 29087
Phoenix, AZ 85038-9087

4.    DRIVE TIME AUTOMOTIVE GROUP, INC.
1720 West Rio Salado Parkway
Tempe, AZ 85281

Defendants.

_____/

**PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF REPLEVIN AND EMERGENCY EX PARTE HEARING**

**NOW COMES** Plaintiff, Karlos Harris, in Pro Se, pursuant to Michigan Court Rules 3.105 and 3.310(B), and respectfully moves this Honorable Court for a prejudgment writ of replevin and an emergency ex parte hearing. Plaintiff seeks the immediate return of his 2017 Cadillac Escalade ESV (VIN: 1GYS4JKJ9HR191105), wrongfully repossessed on June 21, 2025, by Defendant Bridgecrest Acceptance Corporation through Tolmite Recoveries, LLC. The repossession was executed under fraud and in furtherance of an unlawful scheme in which Plaintiff's identity was stolen and used to securitize a Retail Installment Agreement without consent. Judicial intervention is urgently required to prevent the continued concealment or transfer of the property and to preserve this Court's jurisdiction. In support thereof, Plaintiff states:

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................2
INDEX OF AUTHORITIES..........................................................3
STATEMENT OF ISSUES PRESENTED....................................4
INTRODUCTION.........................................................................5
FACTUAL BACKGROUND..........................................................6
LEGAL STANDARD....................................................................9
ARGUMENT.............................................................................10
RELIEF REQUESTED...............................................................12

# INDEX OF AUTHORITIES

**Cases**

- Henry v. Dow Chem. Co.,

  473 Mich. 63, 701 N.W.2d 684 (2005)...................................................9

- Rood v. Gen. Dynamics Corp.,

  444 Mich. 107, 507 N.W.2d 591 (1993)..............................................9

- Weaver v. Ford Motor Credit Co.,

  121 Mich. App. 824, 329 N.W.2d 506 (1982).....................................11

- Jordan v. Kent Recovery Servs., Inc.,

  731 F. Supp. 652 (D. Del. 1990)....................................................9, 11

**Statutes**

- MCR 3.105…………………………………………………………………1,9

- MCR 3.310(B)...........................................................................1, 9, 12

- MCL 600.2920……………………………………………………………..9

- MCL 440.9614……………….……………………...…………………1, 11

- 15 U.S.C. § 1692f(6).....................................................................9, 11

## STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiff is entitled to a prejudgment writ of replevin under MCR 3.105 where the 2017 Cadillac Escalade ESV was repossessed pursuant to a contract alleged to be void ab initio due to fraud in the factum, identity theft, and unauthorized securitization of the agreement.

   Plaintiff answers: Yes.

   Defendants would answer: No.

2. Whether ex parte relief under MCR 3.310(B) is warranted where Plaintiff has demonstrated immediate and irreparable harm, including loss of transportation, reputational injury, and the threat of permanent deprivation of the vehicle, and where notice would risk further concealment, transfer, or disposition of the property.

   Plaintiff answers: Yes.

   Defendants would answer: No.

3. Whether repossession by Bridgecrest constituted an unlawful act due to the absence of legal authority and lack of effective notice as required under MCL 440.9614.

   Plaintiff answers: Yes.

   Defendants would answer: No.

4. Whether Defendants violated the FDCPA by attempting to enforce a void obligation without lawful interest or standing.

   Plaintiff answers: Yes.

   Defendants would answer: No.

5. Whether an emergency ex parte hearing is warranted under MCR 3.310(B) to prevent irreparable harm to Plaintiff.

   Plaintiff answers: Yes.

   Defendants would answer: No.

## INTRODUCTION

This action arises out of an orchestrated fraud perpetrated by Defendants who, without authorization, used Plaintiff's personal and financial identifiers to execute and securitize a Retail Installment Agreement under Plaintiff's name. Defendants have never produced the original instrument, nor any

assignment, endorsement, or evidentiary record establishing their lawful interest or authority to collect. Plaintiff's claims include fraud in the factum and identity theft, which, if proven, render the contract void ab initio and the security interest unenforceable.

Despite being on notice of this action and Plaintiff's federal complaint to the Consumer Financial Protection Bureau (CFPB), Bridgecrest unlawfully repossessed the vehicle. Defendants have refused to provide the original contract, the chain of title, or critical documents such as the MoneyNet Daily 120 Log, Currency Transaction Report, IRS Form 1099-A, Pooling and Servicing Agreement, or applicable SEC filings—each of which would expose the fraudulent nature of the transaction and confirm that Defendants are not the real parties in interest. An emergency hearing is necessary to stop the continuation of this fraudulent scheme and prevent further irreparable harm to Plaintiff.

## FACTUAL BACKGROUND

1. On September 27, 2024, Plaintiff allegedly purchased a 2017 Cadillac Escalade ESV for $80,405.92, financing $38,477.40 at a 25% APR

through a Retail Installment Agreement with Defendant Carvana.
Plaintiff asserts that the contract was executed without full disclosure
and under false pretenses, and that his identity was subsequently
used to securitize the note without consent.

2. Plaintiff never consented to or authorized the securitization of the
obligation. The act of using Plaintiff's identifiers to bundle, sell, or
pledge the agreement into a securitization pool constitutes identity
theft and fraud, which nullifies any claim that Bridgecrest or its
affiliates lawfully hold the note.

3. On December 17, 2024, Plaintiff filed CFPB Complaint No.
241217-17490966, requesting documentary proof of lawful collection
authority, including but not limited to the MoneyNet Daily 120 Log,
Currency Transaction Reports, IRS Form 1099-A, Pooling and
Servicing Agreement, forward flow agreements, and all relevant SEC
filings. Bridgecrest failed to provide any such records, further
evidencing the fraudulent nature of the transaction. (Exhibit A & B)

4. Plaintiff filed this civil action on June 3, 2025, alleging fraud in the factum, identity theft, and wrongful repossession. The underlying contract, if any, is void as it was created under stolen credentials and used to initiate unauthorized securitization activities.

5. Defendants were served on June 9, 2025. (Exhibit C: Proof of Service)

6. Despite actual knowledge of pending litigation and the underlying fraud allegations, Bridgecrest, through Tolmite Recoveries, LLC, repossessed the vehicle on June 21, 2025, alleging unpaid balances for April through June 2025 totaling $3,111.00.

7. No legally sufficient notice was provided prior to the repossession. Bridgecrest relied on an email filtered to Plaintiff's spam folder and an online portal Plaintiff was not obligated to monitor. No certified mail or direct contact was made. (See Affidavit of Non-Receipt)

8. Plaintiff maintains that neither Bridgecrest nor its affiliates are holders in due course or entitled to enforce the instrument. Their inability to

produce the original agreement or documentation showing continuity of ownership and interest substantiates Plaintiff's assertion that Defendants are attempting to collect a debt not owed to them.

9.  The unlawful seizure of the vehicle has caused Plaintiff severe and irreparable harm, including loss of transportation, financial instability, and damage to Plaintiff's credit and reputation, in addition to out-of-pocket losses that continue to toll.

**LEGAL STANDARD**

MCR 3.105 authorizes prejudgment replevin where the plaintiff has a superior possessory interest and the defendant is wrongfully detaining personal property. MCL 600.2920 governs civil recovery of goods taken or withheld unlawfully. Ex parte relief is appropriate under MCR 3.310(B) where immediate and irreparable harm is present and where notice may enable further dissipation of the subject matter. Henry v. Dow Chem. Co., 473 Mich. 63, 86 (2005).

Fraud in the factum vitiates a contract and extinguishes enforcement rights. Rood v. Gen. Dynamics Corp., 444 Mich. 107, 118–19 (1993). Moreover, under federal law, 15 U.S.C. § 1692f(6), repossession without a present legal right to possess constitutes an unfair practice. Jordan v. Kent Recovery Servs., Inc., 731 F. Supp. 652, 657 (D. Del. 1990). Parties who fail to produce original instruments or show continuity of interest lack enforceability.

## ARGUMENT

I. Plaintiff Maintains a Superior Right to Possession

The original contract was created using Plaintiff's stolen identifiers and securitized without lawful authority. Defendants have failed to produce the original agreement or any record of assignment evidencing their standing as lawful holder. Plaintiff has demanded documentation through both this action and a CFPB complaints, yet no chain of title, IRS Form 1099-A, Currency Transaction Report, or SEC registration has been provided. Defendants are not the real party in interest and cannot enforce a debt they are not owed.

II. Repossession Was Unlawful, Executed Through Fraud, and Outside
Judicial Authority

Bridgecrest repossessed the vehicle while knowing the contract was
disputed, the debt was unenforceable, and their authority was unverified.
The act of repossessing under color of a void contract, using identity fraud
as its basis, renders the repossession a theft rather than a lawful recovery.
The failure to provide effective notice under MCL 440.9614 only
compounds the unlawful nature of the act.

In Weaver v. Ford Motor Credit Co., 121 Mich. App. 824, 829 (1982), the
court held that failure to provide proper notification prior to the disposition of
repossessed collateral rendered the transaction commercially
unreasonable. In this case, no certified mail or direct notice was provided,
and Bridgecrest relied solely on an email that landed in Plaintiff's spam
folder and a portal Plaintiff had no duty to monitor. This deprived Plaintiff of
redemption rights and violated Michigan law.

Further, under 15 U.S.C. § 1692f(6), any entity lacking a present right to
possession commits an unfair debt collection practice. See Jordan v. Kent
Recovery Servs., Inc., 731 F. Supp. 652, 657 (D. Del. 1990). Defendants'

refusal to produce documents confirming their legal interest supports

Plaintiff's claim that the repossession was unlawful and executed without

standing.

## III. Ex Parte Relief is Necessary to Prevent Further Irreparable Harm

Plaintiff continues to suffer harm that cannot be remedied by monetary

damages alone. Without immediate intervention, the vehicle may be sold or

disposed of, further prejudicing Plaintiff's rights and preventing meaningful

redress. Given the fraudulent origin of the transaction and the proven

pattern of bad faith, notice to Defendants would likely accelerate such a

result. Emergency relief is both necessary and proper.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Schedule and grant an emergency ex parte hearing under MCR

3.310(B);

B. Issue a prejudgment writ of replevin ordering the immediate return

to Plaintiff of the 2017 Cadillac Escalade ESV (VIN:

1GYS4JKJ9HR191105);

C. Enjoin Bridgecrest and Tolmite Recoveries, LLC from further action
to transfer, sell, or conceal the vehicle;

D. Compel production of the original Retail Installment Agreement,
MoneyNet Daily 120 Log, Currency Transaction Report, IRS Form
1099-A, Pooling and Servicing Agreement, forward flow agreements,
and any applicable SEC filings or chain of title records;

E. Award such other and further relief as justice and equity may
require.

**Respectfully submitted,**

/s/ ⎰Karlos P. Harris⎱
_____                         Date: June 23, 2025

    Karlos Harris
     in Pro se

 An official website of the United States Government

 **Consumer Financial Protection Bureau** (https://www.consumerfinance.gov/)

Start a new complaint

❮ All complaints (.)

# 241217-17490966

**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 12/17/2024 | Vehicle loan or lease | Getting a loan or lease |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

After a thorough review of the contracts representing the herein transaction, it appears that there has been a misrepresentation of performance in certain terms and conditions. Pursuant to Uniform Commercial Code (UCC) §9-404, I retain the right to assert all claims and defenses against any holder or assignee of the agreements, including misrepresentation by the original party. In order to address and cure all perceived defects, please find enclosed a Set-Off Agreement that serves as an amendment to the existing Retail Installment Contract, Security Agreement, and related agreements. Pursuant to UCC Articles 3 and 9, the Truth in Lending Act (TILA, 15 U.S.C. §1601 et seq.), and Federal Reserve Act - Regulation J, I hereby tender all negotiable instruments and/or security interests created for or on my behalf as valid settlement of all outstanding balances. Furthermore, I request that 1) Any interest in any agreement, negotiable instrument, or collateral be applied under applicable law to offset the remaining balance, 2) Any overpayments of interest be

refunded to me promptly, 3) That you cease and desist all
communication, collection attempts and credit reporting efforts
with or about me and my private affairs. This formal agreement is
intended to cure all discrepancies and formalize a resolution in
accordance with applicable state and federal laws. Thank you for
your cooperation and prompt attention.

**ATTACHMENTS**

Carvana
AGREEMENT.pdf
(115.5 KB)

Carvana
Cease &
Desist.pdf
(102.7
KB)

Hide full complaint ⊖

## What product or service is your complaint about?

**PRODUCT OR SERVICE**
Vehicle loan or lease

**TYPE**
Loan

**NEW OR USED?**
Used

## What type of problem are you having?

**ISSUE**
Getting a loan or lease

**TYPE OF ISSUE**
Changes in terms mid-deal or after
closing

**HAVE YOU ALREADY TRIED TO FIX
THIS PROBLEM WITH THE
COMPANY?**
Yes

**DID YOU REQUEST INFORMATION
FROM THE COMPANY?**
No

## What happened?

After a thorough review of the contracts representing the herein transaction, it
appears that there has been a misrepresentation of performance in certain terms
and conditions. Pursuant to Uniform Commercial Code (UCC) §9-404, I retain the
right to assert all claims and defenses against any holder or assignee of the
agreements, including misrepresentation by the original party. In order to address
and cure all perceived defects, please find enclosed a Set-Off Agreement that
serves as an amendment to the existing Retail Installment Contract, Security
Agreement, and related agreements. Pursuant to UCC Articles 3 and 9, the Truth in
Lending Act (TILA, 15 U.S.C. §1601 et seq.), and Federal Reserve Act - Regulation

J, I hereby tender all negotiable instruments and/or security interests created for or on my behalf as valid settlement of all outstanding balances. Furthermore, I request that 1) Any interest in any agreement, negotiable instrument, or collateral be applied under applicable law to offset the remaining balance, 2) Any overpayments of interest be refunded to me promptly, 3) That you cease and desist all communication, collection attempts and credit reporting efforts with or about me and my private affairs. This formal agreement is intended to cure all discrepancies and formalize a resolution in accordance with applicable state and federal laws. Thank you for your cooperation and prompt attention.

☐ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

---

## What would be a fair resolution to this issue?

1) Any interest in any agreement, negotiable instrument, or collateral be applied under applicable law to offset the remaining balance 2) Any overpayments of interest be refunded to me promptly 3) That herein company or companies cease and desist all communication, collection attempts and credit reporting efforts with or about me and my private affairs.

---

**2 attachments**

View uploaded documents by clicking on the file name. Documents that pass virus scanning are typically available within 2 minutes of upload.

---

Carvana AGREEMENT.pdf (115.5 KB)

---

Carvana Cease & Desist.pdf (102.7 KB)

---

## What company is this complaint about?

**COMPANY INFORMATION**
BRIDGECREST ACCEPTANCE
CORPORATION

**LOAN NUMBER**

•••••••••••            👁

# What people are involved?

**YOUR CONTACT INFORMATION**
Karlos Harris

karlos@dsdt.tech
7342712793

8524 Spinnaker Way YPSILANTI,
Michigan 48197 United States

**YOUR PREFERRED LANGUAGE**
English

---

## ✓ Sent to company

**STATUS**
Sent to
company on
12/17/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✓ Company still working

**STATUS**
Company
response is in
progress as of
12/31/2024

The company has responded that it is still working on your issue

In some cases, companies need more time to respond. You should receive a final response within 60 days from the date we sent your complaint to the company.

---

**COMPANY'S INTERIM RESPONSE**

Bridgecrest is currently researching Mr. Karlos Harris's concerns and will be responding as soon as possible. Thank you.

# Company responded

**STATUS**

Company responded on 2/17/2025

**RESPONSE TYPE**

Closed with explanation

## Company's Response

February 17, 2025 Consumer Financial Protection Bureau Re: Complaint # 241217-17490966 To Whom It May Concern: Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Karlos Harris's concerns. Please see below for additional information. On September 27, 2024, Mr. Harris entered a Retail Installment Contract (Contract), when he purchased a 2017 Cadillac Escalade from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Harris agreed to remit monthly payments of $1,037.00 beginning October 28, 2024. Mr. Harris also agreed to finance a total of $38,477.40 with a 25% Annual Percentage Rate (APR), as outlined in the Truth in Lending Disclosures on page one of the Contract. Additionally, a credit reporting notice was presented to Mr. Harris, which he reviewed, signed, and acknowledged. This notice explained: We report all information, positive, and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default. Included in the total purchase price of the vehicle is the optional Guaranteed Asset Protection (GAP) Mr. Harris elected to purchase. This product may be cancelled at any time prior to expiration and any applicable prorated refund would be applied towards the principal balance on the account. At the time of signing, Mr. Harris was provided the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Harris asserted

he had read and fully understood the terms enclosed. Additionally, Carvana offers a Vehicle Return Program, which allows customers seven calendar days from the date of purchase to return their vehicle and cancel their Contract. This provides customers additional time to ensure they are comfortable with the terms of their purchase. Mr. Harris did not elect to return his vehicle within that time period. The APR is structured as simple interest, which means that interest accrues each day that the account is active and it is calculated based on the remaining financed balance. When a payment is made toward the account, any accrued fees and/or interest are satisfied first, and any remaining amount thereafter is applied toward the principal balance. If payments are made on time, the ratio for what is applied to interest versus principal increases in favor of the principal balance and the account will be paid off on the contracted maturity date Upon receipt of Mr. Harris's concerns, to honor his request, we placed a Cease and Desist on his account, which restricts our communication to him. We reviewed the account and confirmed that all applicable laws have been followed in the administration of the Contract and lawful reporting of the account to the CRAs. We are unable to accommodate Mr. Harris's requests. On December 30, 2024, we contacted Mr. Harris and discussed the complaint concerns and the abovementioned information. He remains dissatisfied. Bridgecrest thanks the Consumer Financial Protection Bureau for allowing us the opportunity to address this matter. Should you or Mr. Harris have any questions, please contact our Customer Relations department at 800-967-8854. Thank you, Liza N. Agency Specialist

**ATTACHMENTS**

200306437102
BC CFPB
RESPONSE.pdf
(118.1 KB)

 # Feedback requested

| STATUS | FEEDBACK DUE |
| --- | --- |
| Feedback requested on 2/17/2025 | 4/18/2025 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

 # Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

 Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-
leave/federal-holidays/#url=Overview)

More than 180 languages available.

---

An official website of the United States Government

# Bridgecrest™

February 17, 2025

Consumer Financial Protection Bureau

Re: Complaint # 241217-17490966

To Whom It May Concern:

Thank you for bringing this matter to our attention. Bridgecrest Acceptance Corporation and its subsidiaries (Bridgecrest) appreciate the opportunity to address Mr. Karlos Harris's concerns. Please see below for additional information.

On September 27, 2024, Mr. Harris entered a Retail Installment Contract (Contract), when he purchased a 2017 Cadillac Escalade from Carvana. Bridgecrest is the account servicer. At the time of purchase, Mr. Harris agreed to remit monthly payments of $1,037.00 beginning October 28, 2024. Mr. Harris also agreed to finance a total of $38,477.40 with a 25% Annual Percentage Rate (APR), as outlined in the Truth in Lending Disclosures on page one of the Contract. Additionally, a credit reporting notice was presented to Mr. Harris, which he reviewed, signed, and acknowledged. This notice explained:

> *We report all information, positive, and negative. "Negative information" means information concerning delinquencies, late payments, missed payments, or any form of default.*

Included in the total purchase price of the vehicle is the optional Guaranteed Asset Protection (GAP) Mr. Harris elected to purchase. This product may be cancelled at any time prior to expiration and any applicable prorated refund would be applied towards the principal balance on the account.

At the time of signing, Mr. Harris was provided the opportunity to review each document and ensure he understood the information within. By signing the documents, Mr. Harris asserted he had read and fully understood the terms enclosed. Additionally, Carvana offers a Vehicle Return Program, which allows customers seven calendar days from the date of purchase to return their vehicle and cancel their Contract. This provides customers additional time to ensure they are comfortable with the terms of their purchase. Mr. Harris did not elect to return his vehicle within that time period.

The APR is structured as simple interest, which means that interest accrues each day that the account is active and it is calculated based on the remaining financed balance. When a payment is made toward the account, any accrued fees and/or interest are satisfied first, and any remaining amount thereafter is applied toward the principal balance. If payments are made on time, the ratio for what is applied to interest versus principal increases in favor of the principal balance and the account will be paid off on the contracted maturity date

Upon receipt of Mr. Harris's concerns, to honor his request, we placed a Cease and Desist on his account, which restricts our communication to him. We reviewed the account and confirmed that

**Bridgecrest™**

all applicable laws have been followed in the administration of the Contract and lawful reporting of the account to the CRAs. We are unable to accommodate Mr. Harris's requests. On December 30, 2024, we contacted Mr. Harris and discussed the complaint concerns and the abovementioned information. He remains dissatisfied.

Bridgecrest thanks the Consumer Financial Protection Bureau for allowing us the opportunity to address this matter. Should you or Mr. Harris have any questions, please contact our Customer Relations department at 800-967-8854.

Thank you,

Liza N.
Agency Specialist





Jacquetta Parkinson   6/23/2025 9:51 AM   WAYNE COUNTY CLERK   Cathy M. Garrett   IN MY OFFICE   25-008472-CZ FILED

**STATE OF MICHIGAN**
**In the 3rd Judicial Circuit**
**County of Wayne**

KARLOS HARRIS, an individual,

        Plaintiff

                     Case No: 25-008472-CZ
                     Judge: Hon.Qiana Denise Lillard

1.     CARVANA, LLC
        300 E. Rio Salado Parkway, Building 1
        Tempe, AZ 85281

2.     BRIDGECREST ACCEPTANCE CORPORATION
        1720 W. Rio Salado Parkway
        Tempe, AZ 85281

3.     SILVERROCK, INC.
        PO Box 29087
        Phoenix, AZ 85038-9087

4.     DRIVE TIME AUTOMOTIVE GROUP, INC.
        1720 West Rio Salado Parkway
        Tempe, AZ 85281

                 Defendants.

_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**PREJUDGMENT WRIT OF REPLEVIN AND EMERGENCY EX PARTE**
**HEARING**

**INTRODUCTION**

Plaintiff Karlos Harris submits this Memorandum of Law in support of his Motion for Prejudgment Writ of Replevin and Ex Parte Hearing, pursuant to Michigan Court Rules 3.105 and 3.310. Plaintiff seeks the return of his 2017 Cadillac Escalade ESV (VIN: 1GYS4JKJ9HR191105), which was unlawfully repossessed by Defendant Bridgecrest Acceptance Corporation on June 21, 2025, through its agent, Tolmite Recoveries, LLC. This action was executed under fraudulent circumstances wherein Plaintiff's identity was used without consent to originate, securitize, and monetize a Retail Installment Contract.

Defendants are not the lawful holders of the note and possess no enforceable interest in the alleged obligation. Their inability to produce the original contract, chain of title, or any of the requested financial records—including but not limited to the MoneyNet Daily 120 Log, Currency Transaction Reports, IRS Form 1099-A, Pooling and Servicing Agreement, and applicable SEC filings—confirms their lack of standing. This Court's immediate intervention is warranted to prevent further irreparable harm and to preserve jurisdiction over the disputed property.

## STATEMENT OF FACTS

On September 27, 2024, Plaintiff allegedly entered into a Retail Installment Contract to finance a vehicle purchase for $80,405.92, with $38,477.40 financed at an APR of 25%, requiring monthly payments of $1,037.00. Plaintiff asserts that his personal identifiers were used without his authorization to create and securitize the contract, and that he never consented to or knowingly executed a loan agreement subject to securitization.

On December 17, 2024, Plaintiff filed CFPB Complaint No. 241217-17490966, demanding proof of lawful collection authority. Requested documents included the MoneyNet Daily 120 Log, Currency Transaction Report, IRS Form 1099-A, Pooling and Servicing Agreement, and SEC filings. Bridgecrest failed to produce any of the requested items in their February 17, 2025 response.

Plaintiff initiated this action on June 3, 2025, and Defendants were served on June 9, 2025. Despite having notice of the pending lawsuit, Bridgecrest, through Tolmite Recoveries, repossessed the vehicle on June 21, 2025, citing missed payments of $3,111.00. No effective or timely notice of repossession or disposition was provided. Bridgecrest relied on an email to

Plaintiff's address which was filtered to spam and was not seen until June 22, 2025. No mailed correspondence or certified notice was ever received. Plaintiff was not obligated to monitor any online portal for legal notification purposes.

The contract in question, if it exists, was unlawfully created, improperly securitized, and is now bifurcated such that no single entity retains the right to enforce it. As a result, any repossession activity was carried out without legal authority and in violation of state and federal law.

## LEGAL STANDARD

### Prejudgment Writ of Replevin

 Under MCR 3.105 and MCL 600.2920(1), a prejudgment writ of replevin is available where the plaintiff demonstrates a superior possessory interest and the defendant is wrongfully detaining the property. A prejudgment writ may be granted when immediate recovery is necessary to prevent harm and preserve the status quo pending adjudication.

**Ex Parte Hearing**

 MCR 3.310(B) authorizes ex parte relief where irreparable harm is likely,

no adequate remedy at law exists, and notice may result in further

prejudice. See *Henry v. Dow Chem. Co.*, 473 Mich. 63, 86 (2005).

**Fraud in the Factum**

 Fraud in the factum renders a contract void ab initio and extinguishes any

rights that may have been derived from it. See *Rood v. General Dynamics

Corp.*, 444 Mich. 107, 118–19 (1993). Contracts created through identity

theft and unauthorized securitization lack mutual assent and are not

enforceable.

**Failure to Provide Notice**

 MCL 440.9614 mandates that a secured party provide effective advance

notice of any intended disposition of collateral. Failure to do so renders any

repossession or sale commercially unreasonable. See *Weaver v. Ford

Motor Credit Co.*, 121 Mich. App. 824, 829 (1982).

**FDCPA Violations**

Under 15 U.S.C. § 1692f(6), the Fair Debt Collection Practices Act

prohibits repossession when no present right to possession exists.

Bridgecrest's actions violated this provision by acting on a void instrument

for which they were neither the holder nor the obligee. See *Jordan v. Kent*

*Recovery Servs., Inc.*, 731 F. Supp. 652, 657 (D. Del. 1990).

**Concealment of Financial Records**

Defendants' refusal to produce key financial and regulatory

documents—including IRS Form 1099-A and SEC registration

statements—raises substantial questions regarding the legitimacy of their

claim and supports the inference of fraudulent collection. See 31 U.S.C. §

5313 (Bank Secrecy Act).

**ARGUMENT**

**I. Plaintiff Retains Superior Possessory Rights**

The Retail Installment Contract was created under false pretenses using

Plaintiff's personal information, then securitized without consent. The

bifurcation of the note from the security instrument leaves Bridgecrest without standing to enforce the agreement. Defendants' failure to produce the original instrument, assignment records, or any financial logs requested in the CFPB complaint further substantiates Plaintiff's superior right to possess the vehicle.

## II. The Repossession Was Unlawful and Beyond Judicial Authority

Despite receiving proper service of this lawsuit, Bridgecrest and Tolmite proceeded to repossess Plaintiff's vehicle without legal authority. Plaintiff was never given lawful or effective notice as required under Michigan law. The actions taken were not only improper but served to remove the vehicle from this Court's jurisdiction, undermining due process and judicial integrity.

## III. Ex Parte Relief is Justified to Prevent Further Harm

Plaintiff has suffered and will continue to suffer irreparable harm through the loss of transportation, damage to credit, and economic hardship. With no adequate legal remedy available, the risk of sale or concealment by

Defendants demands immediate ex parte intervention under MCR

3.310(B). Any delay may render future relief moot.

## IV. Discovery of Financial Records is Necessary to Establish Standing

Bridgecrest's refusal to provide the requested financial documents is itself

indicative of a lack of lawful interest. Discovery of the original agreement,

servicing records, and documents evidencing securitization—including but

not limited to the Pooling and Servicing Agreement, Currency Transaction

Report, and IRS Form 1099-A—is essential to determine the true party in

interest and validate Plaintiff's fraud claims.

## CONCLUSION

Plaintiff has demonstrated that the repossession of his vehicle was

executed under fraudulent circumstances, without legal standing, and in

direct violation of applicable laws. Defendants' failure to produce critical

documents and their ongoing misrepresentations necessitate immediate

intervention by this Court. A prejudgment writ of replevin and an emergency

ex parte hearing are appropriate and necessary to return the vehicle to the

jurisdiction of the Court and prevent further irreparable harm.

**Respectfully submitted,**

/s/ _Karlos L. Harris_          Date: June 23, 2025

Karlos Harris
in Pro se

Jacquetta Parkinson   6/23/2025 9:51 AM   WAYNE COUNTY CLERK   Cathy M. Garrett   IN MY OFFICE   FILED   25-008472-CZ

# STATE OF MICHIGAN
## In the 3rd Judicial Circuit
## County of Wayne

---

KARLOS HARRIS, an individual,
                              Plaintiff

                        Case No: 25-008472-CZ
                        Judge: Hon.Qiana Denise Lillard

1.     CARVANA, LLC
        300 E. Rio Salado Parkway, Building 1
        Tempe, AZ 85281

2.     BRIDGECREST ACCEPTANCE CORPORATION
        1720 W. Rio Salado Parkway
        Tempe, AZ 85281

3.     SILVERROCK, INC.
        PO Box 29087
        Phoenix, AZ 85038-9087

4.     DRIVE TIME AUTOMOTIVE GROUP, INC.
        1720 West Rio Salado Parkway
        Tempe, AZ 85281

                       Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT WRIT OF REPLEVIN AND EMERGENCY EX PARTE RELIEF

This matter having come before the Court upon Plaintiff's Motion for Prejudgment Writ of Replevin and Emergency Ex Parte Hearing pursuant to Michigan Court Rules 3.105 and 3.310(B), and the Court having reviewed the motion, accompanying affidavit, exhibits, and legal memorandum, and being otherwise fully advised in the premises;

**IT IS HEREBY ORDERED** that Plaintiff's Motion is **GRANTED**:

**IT IS FURTHER ORDERED** that:

1. A Prejudgment Writ of Replevin shall issue immediately, directing Defendants Bridgecrest Acceptance Corporation and Tolmite Recoveries, LLC to return possession of the 2017 Cadillac Escalade ESV, VIN: 1GYS4JKJ9HR191105, to Plaintiff Karlos Harris without delay;

2. Defendants are enjoined from selling, transferring, encumbering, concealing, or otherwise disposing of the subject vehicle pending further order of this Court;

3. Defendants shall, within seven (7) days, produce and deliver to Plaintiff copies of the following documents:

   a. The original Retail Installment Agreement executed on or about

September 27, 2024;

  b. Any and all chain of title or assignment records related to the subject account;

  c. The MoneyNet Daily 120 Log;

  d. Any Currency Transaction Reports relating to the contract;

  e. IRS Form 1099-A filed in connection with the vehicle;

  f. The Pooling and Servicing Agreement, forward flow agreements, and applicable SEC filings relating to any securitization of the account.

4. The Clerk of the Court is authorized and directed to issue the Writ of Replevin forthwith upon entry of this Order;

5. This Order shall remain in effect pending a further hearing on the merits or resolution of the underlying case.

**IT IS SO ORDERED**.

Hon. _____          Date: June _____, 2025
    Hon. Qiana Denise Lillard
      Circuit Court Judge

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

KARLOS HARRIS,

      Plaintiff,

                                   Case No: 25-008472-CZ

-v-                                Hon Qiana Lillard

CARVANA, LLC, ET AL,

      Defendant(s).

_____/

      At a session of said Court held in the Coleman A. Young
      Municipal Center, Detroit, Wayne County, Michigan,
      on this: _____6/27/2025_____

      PRESENT:  _QIANA DENISE LILLARD_
                      Hon Qiana D Lillard

**ORDER GRANTING EX PARTE RELIEF PENDING HEARING ON JULY 10, 2025**

      This matter comes before the Court on Plaintiff's Motion for Prejudgment Writ of
Replevin and Emergency Ex Parte Relief. For the following reasons, the motion is granted in
part.

      Plaintiff's June 3, 2025, Complaint arises out of his September 2024 purchase of a Cadillac
Escalade from Defendant Carvana, which Plaintiff financed with a loan from Defendant Bridgecrest
Acceptance Corp, and was covered by a warranty issued by Defendant SilverRock, Inc. The complaint
also asserts claims against Defendant DriveTime Automotive Group, based on its status as "the parent
company of Bridgecrest and SilverRock."

      In terms of Liability, Plaintiff claims that Defendants failed to disclose that Plaintiff's obligations
under the loan agreement would be securitized, thereby rendering Defendants liable for breach of the
federal Truth in Lending Act, the Michigan Consumer Protection Act, the Michigan Retail Installment
Sales Act, MCL 445.901, and the federal Racketeer Influenced and Corrupt Organizations Act, and under
common law fraud and unjust enrichment theories. Plaintiff also asserts liability on these theories based
on allegations that Defendants concealed an "engine misfire" problem with the vehicle, "furnished
inaccurate loan data" to credit reporting agencies," "obstructed the return policy," and "engaged in a
"bait-and-switch" by "rescinding the contract" and "inducing temporary payments." In terms of damages,
Plaintiff claims that Defendant's conduct has or will lead to irreparable harm in the form of the denial of
"loan and apartment rental applications" due to a "100+ point credit score drop" and a "threat of vehicle
repossession," in addition to monetary damages.

      Plaintiff's June 3 complaint was accompanied a Motion for Preliminary Injunction (which sought
to bar Defendants from repossessing the Cadillac, reporting "information" related to the transaction to
credit agencies, and enforcing arbitration clause in the parties' agreements), a Motion to Expedite

Discovery, and a Motion to Stay Arbitration.  Plaintiff did not, however, follow up on these motions by filing a praecipe, nor did he otherwise contact the Court to request that the matters be considered on an ex-parte basis.

The motion currently before the Court dates to June 23, 2025, and is based on allegations that Defendants have since repossessed the Cadillac, despite the fact that, due to the securitization of the loan, Defendants no longer posses an "enforceable interest in the alleged obligation."  Thus, the motion seeks an order compelling Defendants to return the vehicle to Plaintiff.  Plaintiff also contacted the Court regarding this motion, explicitly seeking ex-parte review.

In considering this motion, the Court first notes that the Michigan Court Rules explicitly contemplate ex-parte relief in the form of a temporary restraining order.  Any relief granted on an ex-parte basis, however, cannot extend beyond 14 days of the date of the order.  MCR 2.310(B)(3).  Rather, relief beyond that period can be granted only if the opposing party is first given an opportunity to be heard, in which case relief can be granted in the form of a preliminary injunction.   In this context, it would be inappropriate for the Court to order, on an ex-parte basis, that Defendants return the vehicle to Plaintiff.

The Court is, however, willing to order interim relief in the form of a temporary restraining order barring Defendants from disposing of the vehicle prior to a hearing on the matter at which Defendants are given an opportunity to challenge Plaintiff's right to immediate possession of the vehicle.

In light of the foregoing, the Court hereby enjoins Defendants from selling, leasing, or otherwise disposing of the vehicle prior to a hearing on this matter.  Moreover, the Court shall conduct such a hearing on the matter on July 10, 2025, at 10am, in the Courtroom 1401 of the Wayne County Circuit Court, and Plaintiff must serve on Defendants notice of both this order and the hearing date no later than July 1, 2025.  The Court shall not, however, order further relief at this time.

/s/ Qiana Denise Lillard
June 27, 2025
_____
Hon Qiana D. Lillard

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | REQUEST FOR HEARING ON A MOTION (PRAECIPE) ORDER/ADJOURNMENT | CASE NO. 25-008472-CZ |
|---|---|---|

2 Woodward Avenue, Detroit MI 48226      Courtroom 1011 CAYMC      Court Telephone No: 313-224-2240

| Plaintiff name and address KARLOS HARRIS 8524 Spinnaker Way | | Defendant name and address CARVANA, LLC |
|---|---|---|
| Plaintiff's attorney,bar no.,address and telephone no. 8524 Spinnaker Way YPSILANTI ,MI,48197 | V | Defendant's attorney,bar no.,address and telephone no. |

List additional attorneys on other side

1. Motion Title:      Motion for Prejudgment Writ of Replevin and Emergency Ex Parte Hearing

2. Moving Party:      Karlos Harris      Telephone No    (734) 271-2793

3. Please place on the motion calendar for:

25-008472-CZ
FILED IN MY OFFICE
WAYNE COUNTY
CLERK
06-27-2025 11:22:55 AM
CATHY M. GARRETT
/s/ Kimberly Davis

| Judge Qiana Denise Lillard | Bar No. 64230 | Date : 7/10/2025 | Time : 10:00 AM |
|---|---|---|---|

Adj. To:_____      Adj. To:_____      Adj. To:_____

The motion will be decided [ ] without oral argument [X] with oral argument as indicated above

Comment   Please be advised this hearing is scheduled to occur in person on July 10, 2025 @ 10am.

4. I certify that I have had personal contact with I certify that I have not had personal contact wit on   6/23/2025   regarding concurrence in the relief sought in this motion and that concurrence has been denied or that I have made responsible and diligent attempts to contact counsel requesting concurrence with motion.

Date :   6/23/2025      Attorney :   Pro Se      Bar No. :

## ORDER / ADJOURNMENT

Pursuant to MCR 2.119(E)(3), the Court may dispense with oral argument, IT IS ORDERED THAT THIS MOTION IS:

[ ] ORAL ARGUMENT IS ORDERED via ZOOM on _____ at _____ am/pm

[ ] DENIED    [ ] TAKEN UNDER ADVISEMENT    A written or oral decision will be rendered by _____

[ ] GRANTED    [ ] GRANTED IN PART / DENIED IN PART    [ ] DISMISSED    [ ] IT IS FURTHER ORDERED

Date _____      _____
                                            THIRD CIRCUIT COURT JUDGE

**2011-3CC (05/2020) REQUEST FOR HEARING ON A MOTION (PRAECIPE) ORDER/ADJOURNMENT**